# EXHIBIT 12



**Domestic Claims, Inc.**
**P & C Severity Claims**
**Excess Claims**

175 Water Street, 22nd Floor
New York, New York 10038
212.458.5747 (Phone)
866.833.8968 (Fax)
leonard.romeo@aig.com (e-mail)

March 22, 2007

**VIA EMAIL AND U.S. MAIL**
Entercom Communications Corporation
401 E. City Line avenue, Suite 809
Bala Cynwyd, PA 19004-1122

Attn: John C. Donlevie
Executive Vice President

Re:    *William A. Strange, et al. v. Entercom Sacramento, LLC, et al.,*
       Sacramento County Superior Court
       Named Insured:      Entercom Communications Corp.
       Policy No.:          BE 6849213

Dear Mr. Donleve:

AIG Domestic Claims, Inc. ("AIGDC") is the claims administrator for American Home Assurance Company ("American Home"), which issued to Entercom Communications, Corp. ("Entercom") a Commercial Umbrella policy under no. BE 6849213 for the period of March 7, 2006 to March 7, 2007.

We received Entercom's tender of the entitled action, *William A. Strange, et al. v. Entercom Sacramento, LLC, et al.*, Sacramento County Superior Court ("*Strange* Action"). We also understand Entercom advised Vigilant Insurance Company ("Vigilant") of the *Strange* Action. Vigilant issued to Entercom a Commercial General Liability policy under number 3579-67-25 PHL for the period of March 7, 2006 to March 7, 2007. The Vigilant policy has a $1 million per "occurrence" limit, and we understand that Vigilant has extended a defense in the *Strange* Action to Entercom and the individual defendant employees and officers under the terms of the Vigilant policy.

We reviewed the Complaint filed in the *Strange* Action as well as additional material. Based on the material reviewed, we are writing to advise Entercom that American Home is handling the *Strange* Action under a reservation of rights under the policy and law. The basis for and nature of the reservation of rights is set forth below.

**BACKGROUND**

The *Strange* Action was filed on or about January 25, 2007, and arises out of the death of Jennifer Strange on January 12, 2007 following her participation in the "on-air radio contest known as 'Hold your Wee for a Wii'" ("contest") held by "KDND 107.9 The End". Ms. Strange and other participants in the contest competed to win a Nintendo Wii video game. It is alleged in

March 22, 2007
Page 2

the Complaint that the "winner of the contest was selected based on which contestant could consume the most water in a three-hour period without urinating."

The named defendants are Entercom Sacramento, LLC, Entercom Communications Corp.,[1] John Geary, Steve Weed, Robin Pechota, Liz Diaz, Adam Cox, Steve Maney, Patricia Sweet and Matt Carter. The *Strange* Action alleges that John Geary, Steve Weed, Robin Pechota and Liz Diaz are "employed by and officers, directors or managing agents of Entercom", and the Complaint characterizes these individuals collectively as "Managing Agents". It is further alleged that Adam Cox, Steve Maney, Patricia Sweet and Matt Carter were "at all times employees" of Entercom, and are labeled in the Complaint as "The Talent" that allegedly performed the radio program called the "Morning Rave" on which the contest was aired.

The *Strange* Action alleges that "The Talent solicited" listeners to participate in the contest. The Complaint further asserts that "Defendants, and each of them, created, devised, orchestrated, organized, arranged and publicized" the contest, including "the rules of the contest". It is also alleged that "[a]t all relevant times preceding the contest, Defendants were aware that the consumption of water to such an extent could result in physical injury or death", and that the "Defendants were specifically informed before and/or during the contest that the contestants were subject to the risk of serious illness and/or death as a result of their participation."

The Complaint asserts that Entercom and "Managing Agents" "ratified, adopted or approved" the "despicable conduct of The Talent", and "further ratified the following conduct and on-air comments made by The Talent on January 12, 2007:

<blockquote>

a.   it is possible to die from 'water poisoning';

b.   references to the Chico hazing incident;

c.   admissions that The Talent should have 'researched water intoxication before conducting the contest';

d.   contestants would be 'out of the contest' if they vomited, which would occur 'if this gets dangerous';

e.   when a nurse called in to complain on-air that drinking excess water would result in illness and possible death, The Talent responded, 'Yeah, we're aware of that,' and 'Yeah, they signed releases so we're not responsible so it's okay,' and 'if they get to the point where they have to throw up then they are out of the game before they die so that's good, right?' The Talent then sarcastically thanked the nurse for 'looking out for us';

f.   joking references to whether anyone was dying in the contestants' room;

</blockquote>

---

[1] Unless otherwise noted, Entercom Sacramento, LLC and Entercom Communications Corp. will be collectively referred to hereinafter as "Entercom".

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 3

g.    joking/laughing references to 'we've got a guy just about to die,' and that the Talent should 'make sure he signs a release';

h.    joking/sarcastic references to bringing in a stretcher for one of the contestants;

i.    joking/sarcastic references to insurance in the context of reports that contestants were feeling ill;

j.    mocking references to the decedent's distended abdomen from excess water consumption, making her look pregnant, which The Talent declared was amusing;

k.    sardonic expressions of mock sympathy with the decedent, when she complained on-air that she was feeling ill;

l.    comments to the decedent that 'This is what it feels like when you're drowning'; and

m.    mocking comments to decedent to 'get you out of your misery' by offering her a second prize of tickets to a Justin Timberlake concert.

Based on the foregoing and additional alleged acts and omissions, the Complaint alleges causes of action for wrongful death, negligence and intentional/reckless conduct, and seeks compensatory and punitive damages.

AIGDC also understands that the Federal Communication Commission ("FCC"), through a January 31, 2007 letter, advised Entercom that it is presently investigating whether, in conducting the contest, Entercom violated "its basic public interest obligations as a Commission licensee." In particular, the FCC is "investigating allegations that the Licensee may have conducted a contest that imposed a health risk on the contestants and ultimately led to the death of Jennifer Lea Strange."

### POLICY LANGUAGE

American Home issued Policy No. BE 6849213 to Entercom Communications, Corp. for the period March 7, 2006 to March 7, 2007. The policy has a $25 million "Each Occurrence" and "General Aggregate" limit, with a $10,000 "SELF-INSURED RETENTION" "Each Occurrence."

I.    INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY

A.    We will pay behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 4

**Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.[2]

The amount will pay for damage is limited as described in Section IV. Limits of Insurance.

B.     This insurance applies, only if:

   1.     the **Bodily Injury** ... is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** ... occurs during the **Policy Period**;

   . . .

E.     Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

\*        \*        \*

## III.    DEFENSE PROVISIONS

A.    We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** . . . covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

   1.     [Amended by Endorsement] the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

   2.     the damages sought because of **Bodily Injury** . . . would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

---

[2] We are not aware of any allegations potentially implicating the "**Property Damage**" or "**Personal Injury and Advertising Injury**" coverages of the American Home policy, and thus will not address these coverages in the balance of this communication. However, should Entercom disagree and contend one or more of these coverages are implicated by the claims alleged in the *Strange* Action, please contact the undersigned.

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 5

    B.     We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** . . . to which this insurance does not apply.

    . . .

    D.     Except as provided in Paragraph A above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

                \*      \*      \*

## IV.   LIMITS OF INSURANCE

    A.     The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

         1.     **Insureds**;

         2.     claims made or **Suits** brought;

         3.     persons or organizations making claims or bringing **Suits**; or

         4.     coverages provided under this policy.

    B.     The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under this policy.

    . . .

    F.     [Amended by Endorsement] This policy applies only in excess of the **Retained Limit**. If, however, the policy shown in **Schedule of Underlying Insurance** forming a part of this policy has a limit of insurance:

         1.     greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

         2.     less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

    G.     [Amended by Endorsement] If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 6

applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2. in the event of exhaustion, continue in force as underlying insurance.

. . .

M. We will not make any payment under this policy unless and until:

1. [Amended by Endorsement] the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** have been exhausted by the payment of **Loss**; or

2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

\*        \*        \*

## VI.  CONDITIONS

. . .

G.  **Duties in the Event of an Occurrence, Claim or Suit**

. . .

3. You and any other involved **Insured** must:

a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

b. authorize us to obtain records and other information;

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 7

    c.    cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

    d.    assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.    No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

       \*      \*      \*

**VII.  DEFINITIONS**

  . . .

C.    [Amended By Endorsement] **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death or mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

  . . .

M.    **Insured** means:

    1.    the **Named Insured**;

    . . .

    2.    if you are designated in the declarations as:

        . . .

        d.    an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

    . . .

    3.    your employees other than executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 8

scope of their employment by you or while performing duties related to the conduct of your business;

. . .

Notwithstanding any of the above:

. . .

b.    no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

. . .

P.    [Amended by Endorsement] **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

R.    [Amended by Endorsement] **Named Insured** means:

1.    any person or organization designated in Item 1. of the Declarations;

2.    as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%), provided that coverage provided to such organization under this paragraph does not apply to **Bodily Injury** . . . caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

. . .

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**. If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured**, under the highest applicable limit of **Scheduled Underlying Insurance**.

S.    **Occurrence** means:

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 9

1.  as respects **Bodily Injury** . . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**

. . .

T.  [Amended by Endorsement] **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

. . .

Z.  **Retained Limit** means:

1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2.  the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA.  **Scheduled Underlying Insurance** means:

1.  the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2.  automatically any renewal or replacement of any policy in Paragraph 1 above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

## RESERVATION OF RIGHTS

As a preliminary matter, the American Home policy is not implicated, if at all, unless and until the applicable limits of all "**Scheduled Underlying Insurance**" and "**Other Insurance**" are

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 10

exhausted by the payment of claims covered under the American Home policy. In this regard, the Vigilant policy issued to Entercom represents **"Scheduled Underlying Insurance"** within the meaning of the American Home policy. **"Other Insurance"** is defined in the American Home policy as including any "valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy." Thus, to the extent the American Home policy applies to Entercom's potential liability in the *Strange* Action, any other liability policy or policies providing coverage to Entercom would represent **"Other Insurance"** unless specifically purchased to be excess to the American Home policy.

The American Home policy defines **"Named Insured"** to include any organization in which Entercom Communications Corp. "maintain[ed] an interest of more than fifty percent" prior to the "inception date of this policy." To the extent Entercom Communications Corp. held such interest in Entercom Sacramento LLC prior to the "inception date of this policy," Entercom Sacramento LLC would also qualify as a **"Named Insured"** under the American Home policy. We further understand Entercom Sacramento LLC qualifies as an insured under the Vigilant policy.

The **"INSURING AGREEMENT"** language of the American Home policy requires, as applicable here, **"Bodily Injury"** to be caused by an **"Occurrence"** as these terms are defined in the policy. Thus, to the extent the allegations of the *Strange* action fail to satisfy the **"INSURING AGREEMENT"** of the policy, no coverage is provided.

The Complaint seeks an award of punitive damages. California Insurance Code § 533, which is deemed an implied exclusion, prohibits insurers from indemnifying an award of punitive damages. Thus, there is no coverage under the American Home policy for an award of punitive damage.

*     *     *

The foregoing is intended to address the issues known by American Home to date. Be advised, however, that since American Home is continuing to investigate the *Strange* Action, it reserves the right under the policy and the law to supplement this communication. Thus, nothing set forth herein should be interpreted as a relinquishment or waiver of any defense or other right which American Home may have with respect to this matter, whether specifically referenced herein or not. No action or inaction by American Home should be interpreted as an admission or concession that the policy provides coverage.

American Home reserves the right to file an action for declaratory relief to determine its rights and duties under the policy. Additionally, in the event American Home is obligated under the policy to afford a defense to any insured, American Home reserves the right to seek recovery of all defense costs incurred or, alternatively, to seek recovery for that portion of defense cost attributable to the defense of non-covered claims. In the event American Home contributes to the settlement of the *Strange* action or to the satisfaction of any judgment rendered in that action, such contribution or contributions are subject to all of the reservations of rights set forth in this communication unless such reservations are expressly waived, in writing, by American Home or AIGDC. In this regard, American Home specifically reserves the right to recover all or part of any sums paid on behalf of any insured in settlement or satisfaction of a judgment. Alternatively, in the event a settlement involves both covered and non-covered claims, American Home reserves the right to have any such settlement apportioned between covered and non-covered claims and/or to seek recovery of sums paid on behalf of any insured to settle non-covered claims. In the event the case is not resolved by settlement but instead proceeds to

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 11

judgment and American Home pays sums in complete or partial satisfaction of the judgment, American Home similarly reserves the right to have any such indemnity payments apportioned between covered and non-covered claims and/or to seek recovery of any such indemnity payments attributable to non-covered claims.

As noted, American Home has no duty to defend any "**Insured**", thus including any "**Named Insured**" in the *Strange* action unless and until the applicable limits of all "**Scheduled Underlying Insurance**" and "**Other Insurance**" are properly exhausted. However, American Home is entitled under the policy and the law to "to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply." To that end, AIGDC, on behalf of American Home, has retained the firm of Carlson, Calladine & Peterson, LLP, to participate in the defense of the *Strange* Action on behalf of Entercom and John Geary.

On behalf of American Home, AIGDC acknowledges Entercom's cooperation in regard to the investigation of the *Strange* Action. In that regard, we request Entercom continue to forward documentation germane to the *Strange* Action, including discovery, pleadings, correspondence and other material.

To the extent Entercom has any questions relating to this communication, or wishes to discuss the matter in general, please feel free to call the undersigned. Furthermore, if Entercom disagrees with any of the statements and/or information contained in this communication, please feel free to contact me.

Very truly yours,

Leonard J. Romeo
Excess Specialty Claims

cc:  Brian Block *via email*

Services Provided by Members of
American International Group, Inc.

# EXHIBIT 13

# DREYER, BABICH, BUCCOLA & CALLAHAM, LLP
## ATTORNEYS AT LAW

Roger A. Dreyer*
Joseph J. Babich*
Robert A. Buccola*
William C. Callaham*
Craig C. Sheffer
Stephen F. Davids
John W. Jefferson
Christopher W. Wood
Hank G. Greenblatt
Steven M. Campora

----------------
*Certified Specialist
in Civil Trial Advocacy
by the National Board
of Trial Advocacy

20 Bicentennial Circle
Sacramento, CA 95826
Telephone: (916) 379-3500
Facsimile: (916) 379-3599
Website: www.dbbc.com

Stanley P. Fleshman
Eliot M. Reiner
Lena L. Dalby
Joseph R. Yates
Robert B. Bale
Charles M. Barrett
Jonathan R. Hayes
Catia G. Saraiva
Eunice C. Majam
Stacey L. Roberts
Carolyn L. Katzorke
Daniel R. Del Rio
Randee M. Sandlin

July 12, 2007

Douglas Sullivan, Esq.
Folger, Levine & Kahn, LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111

Donald W. Carlson, Esq.
Carlson, Calladine & Peterson, LLP
353 Sacramento Street, 16th Floor
San Francisco, CA 94111

**Re:    *Strange v. Entercom Sacramento, LLC, et al.***

Dear Mr. Sullivan and Mr. Carlson:

This letter follows up my conversations with each of you concerning the above-referenced matter. We talked about a number of items, and I wanted to simply follow up those conversations with this correspondence.

First of all, I want to address the deposition notice I received by fax from Mr. Carlson's office. Obviously, we have not agreed to exchange deposition notices by fax. While we did receive your deposition notice the following day by mail, I am certain you are aware that we had noticed a number of depositions prior to you noticing the deposition of Mr. Strange. As a result, it is going to be my position that all of the depositions which I have noticed will need to go forward prior to the deposition of William Strange. I am happy to work with you on coordinating dates concerning these individuals if necessary, but we will not be setting Mr. Strange until these deposition dates are firm. Both Mr. Strange and I are unavailable on August 20, 2007, a date on which I told you I would be out of the country, so his deposition will need to be reset. All of the employees of Entercom Sacramento, LLC or Entercom Communications, Corp. are going to cooperate with you, so I assume there will be no difficulty getting them reset.

We had noticed all of the depositions without attempting to coordinate dates simply because there are too many law firms involved. I am hoping that you will check those dates with your respective employees and get back to me as to whether or not those dates are agreeable. I have scheduled them more than two months out in order to give everyone ample time to coordinate their schedules for the witnesses' availability. I have also copied everyone with this letter so they know that I am prepared to change those deposition dates if the witnesses require a different date. If we had attempted to coordinate these depositions by contacting everybody for available dates, they would never have gotten set.

Douglas Sullivan, Esq.
Donald W. Carlson, Esq.
July 12, 2007
Page 2

As far as Mr. Strange's deposition is concerned, I am happy to get his deposition on calendar, once all of the other depositions are confirmed. I would ask that you coordinate dates with my secretary, Gina, or my assistant, Dana. These will be your two most reliable individuals to coordinate the scheduling of all discovery in this matter.

Enclosed with this letter, you gentlemen will find a statutory demand that we have made on Entercom Sacramento, LLC for the sum of $13 million. In light of the egregious set of facts that are now readily apparent to all, we believe this demand is eminently reasonable, especially in light of the fact that it would mean a dismissal of all Defendants who have been named in this matter. This would result in a complete resolution of any and all claims the heirs might have in this matter arising out of the tragic death of Jennifer Strange. If I receive written confirmation from either of you gentlemen that your respective principals are authorizing you to accept this demand and there is an agreement to pay the settlement sum within thirty (30) days, then it will not be necessary for you to file a formal Notice of Acceptance and, thereby, have a judgment against Entercom Sacramento.

Absent receiving written acceptance of the statutory demand or a letter confirming the Defendants' principals are prepared to pay the entire sum within 30 days, the demand will no longer be available to the Defendants. I believe this offer is made in good faith given the opportunity your clients have had to conduct discovery and the extensive amount of discovery that has been completed.

Thank you for your attention to the above.

Very truly yours,

DREYER, BABICH, BUCCOLA & CALLAHAM, LLP

By ROGER A. DREYER

RAD:bjc
Enclosures

cc:     All Counsel

1  ROGER A. DREYER, ESQ. / SBN: 095462
   **DREYER, BABICH, BUCCOLA & CALLAHAM, LLP**
2  20 Bicentennial Circle
   Sacramento, CA 95826
3  Telephone:  (916) 379-3500
   Facsimile:  (916) 379-3599
4
   Attorneys for Plaintiff,
5  WILLIAM A. STRANGE, individually,
   and as Guardian *ad Litem* for RYLAND
6  STRANGE and JORIE STRANGE, minors
7  Harvey R. Levine, Esq.
   **LEVINE, STEINBERG, MILLER & HUVER**
8  550 West C Street, Suite 1810
   San Diego, CA 92101
9  Telephone: (619) 231-9449
   Facsimile: (619) 231-8638
10
   Attorneys for Plaintiff,
11 RONALD E. SIMS, as Guardian *ad Litem*
   for KEEGAN SIMS, a minor
12
13              SUPERIOR COURT OF CALIFORNIA
14                COUNTY OF SACRAMENTO
15
16 WILLIAM A. STRANGE, individually,          Case No.: 07AS00377
   and as Guardian *ad Litem* for RYLAND
17 STRANGE and JORIE STRANGE, minors;
   RONALD E. SIMS, as Guardian *ad Litem*
18 for KEEGAN SIMS, a minor,
19         Plaintiffs,                        **OFFER TO COMPROMISE**
20 v.
21 ENTERCOM SACRAMENTO, LLC,
   ENTERCOM COMMUNICATIONS,
22 CORP., JOHN GEARY, STEVE WEED,
   ROBIN PECHOTA, LIZ DIAZ, ADAM
23 COX, STEVE MANEY, PATRICIA SWEET,
   MATT CARTER and DOES 1 through 40,
24 inclusive,
25         Defendants.
26 _____
27    **TO DEFENDANT ENTERCOM SACRAMENTO, LLC AND ITS ATTORNEYS OF**
28 **RECORD:**

                                    -1-

**Offer to Compromise;**
**Notice of Acceptance of Offer to Compromise**

1     Pursuant to CCP Section 998, the heirs of Jennifer Strange (Plaintiff WILLIAM A.

2  STRANGE, individually and as Guardian ad Litem for RYLAND STRANGE and JORIE

3  STRANGE, minors; and Plaintiff RONALD E. SIMS, as Guardian ad Litem for KEEGAN

4  SIMS, a minor) offer to have judgment taken against Defendant ENTERCOM

5  SACRAMENTO, LLC as to the wrongful death claim arising out of the death of Jennifer

6  Strange on January 12, 2007, for the sum of $13,000,000, with each party to bear its own

7  costs.

8     Acceptance of this offer will result in a full and complete dismissal with prejudice

9  of all of Plaintiffs' claims against Defendants, ENTERCOM COMMUNICATIONS, CORP.,

10  JOHN GEARY, STEVE WEED, ROBIN PECHOTA, LIZ DIAZ, ADAM COX, STEVE MANEY,

11  PATRICIA SWEET and MATT CARTER arising out of the subject incident.

12     If you accept this offer, please sign and date the accompanying notice of

13  acceptance, and file the offer and notice of acceptance in the above-entitled action with

14  the Court prior to trial or within 30 days after the offer is made, whichever occurs first, or

15  else it will be deemed withdrawn.

16  DATED: 7-12-07      **DREYER, BABICH, BUCCOLA & CALLAHAM, LLP**

17

18        By: _____

19           ROGER A. DREYER

20           Attorneys for Plaintiff,
            WILLIAM A. STRANGE, individually,
            and as Guardian ad Litem for RYLAND

21           STRANGE and JORIE STRANGE, minors

22  DATED: 7-12-07      **LEVINE, STEINBERG, MILLER & HUVER**

23

24        By: _____

25           HARVEY R. LEVINE
            Attorneys for Plaintiff,

26           RONALD E. SIMS, as Guardian *ad Litem*
            for KEEGAN SIMS, a minor

27

28

-2-

1

2

3

4

5

6

7

8                              SUPERIOR COURT OF CALIFORNIA

9                                 COUNTY OF SACRAMENTO

10

11   WILLIAM A. STRANGE, individually,           Case No.: 07AS00377
     and as Guardian *ad Litem* for RYLAND
12   STRANGE and JORIE STRANGE, minors;
     RONALD E. SIMS, as Guardian *ad Litem*
13   for KEEGAN SIMS, a minor,

14            Plaintiffs,                         **NOTICE OF ACCEPTANCE OF OFFER TO**
                                                 **COMPROMISE**
15   v.

16   ENTERCOM SACRAMENTO, LLC,
     ENTERCOM COMMUNICATIONS,
17   CORP., JOHN GEARY, STEVE WEED,
     ROBIN PECHOTA, LIZ DIAZ, ADAM
18   COX, STEVE MANEY, PATRICIA SWEET,
     MATT CARTER and DOES 1 through 40,
19   inclusive,

20            Defendants.

21   _____

22       **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

23            NOTICE IS HEREBY GIVEN that Defendant, ENTERCOM SACRAMENTO, LLC,

24   accepts the offer made by the heirs of Jennifer Strange (Plaintiff WILLIAM A. STRANGE,

25   individually and as Guardian ad Litem for RYLAND STRANGE and JORIE STRANGE,

26   minors; and Plaintiff RONALD E. SIMS, as Guardian ad Litem for KEEGAN SIMS, a minor)

27   to have judgment taken for Plaintiff and against Defendant in the above-entitled action for

28   the sum of $13,000,000, each party to bear its own costs.

                                          -3-

**Offer to Compromise;**
**Notice of Acceptance of Offer to Compromise**

1    Acceptance of this offer will result in a full and complete dismissal with prejudice

2  of all of Plaintiffs' claims against Defendants, ENTERCOM COMMUNICATIONS, CORP.,

3  JOHN GEARY, STEVE WEED, ROBIN PECHOTA, LIZ DIAZ, ADAM COX, STEVE MANEY,

4  PATRICIA SWEET and MATT CARTER arising out of the subject incident.

5  DATED:                          **FOLGER LEVIN & KAHN LLP**

6

7                          By: _____

8                              Douglas Sullivan, Esq.
                               Attorneys for Defendants,
9                              ENTERCOM SACRAMENTO, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

**Offer to Compromise;**
**Notice of Acceptance of Offer to Compromise**

**PROOF OF SERVICE – CCP § 1013. 1013a. 2015.5**
**and California Rules of Court, Rule 2008**

1 | *Strange v. Entercom Sacramento, LLC, et al.*
2 | *Sacramento County Superior Case No.: 07AS00377*

3

    I, Dana Comesaña, declare that:

4

    I am a citizen of the United States and am over the age of eighteen years and not a
5 | party to the within above-entitled action. I am an employee of Dreyer, Babich, Buccola &
    Callaham, LLP and my business address is 20 Bicentennial Circle, Sacramento, California
6 | 95826.

7

    On July 12, 2007, I served the within document:

8

    **OFFER TO COMPROMISE;**
9 | **NOTICE OF ACCEPTANCE OF OFFER TO COMPROMISE**

    On the parties in said action addressed as follows:
10

    **SEE ATTACHED SERVICE LIST**
11

12 | ☐  **BY FACSIMILE MACHINE (FAX):**  On _____, 2007, at _____ a.m./p.m.
    by use of facsimile machine telephone number (916) 379-3599, I served a true
13 | copy of the aforementioned document(s) on the parties in said action by
    transmitting by facsimile machine to the numbers as set forth above. The facsimile
14 | machine I used complied with California Rules of Court, Rule 2003(3) and no error
    was reported by the machine. Pursuant to California Rules of Court, Rule 2008(e),
15 | I caused the machine to print a transmission record of the transmission, a copy of
    which is attached to this Declaration.

16 | ☒  **BY MAIL:**  I am familiar with my employer's practice for the collection and
17 | processing of correspondence for mailing with the United States Postal Service and
    that each day's mail is deposited with the United States Postal Service that same
18 | day in the ordinary course of business.   On the date set forth above, I served the
    aforementioned document(s) on the parties in said action by placing a true and
19 | correct copy thereof enclosed in a sealed envelope with postage thereon fully
    prepaid, for collection and mailing on this date, following ordinary business
20 | practices, at Sacramento, California, addressed as set forth above.

21 | ☐  **BY PERSONAL SERVICE:**   By personally delivering a true copy thereof to the office
    of the addressee above.

22 | ☐  **BY OVERNIGHT COURIER:**   By causing a true copy and/or original thereof to be
23 | personally delivered via the following overnight courier service: _____.

24 | I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct, and that this declaration was executed on July 12, 2007, at
25 | Sacramento, California.

26

27 | Dana Comesaña

28

-5-

| | |
|---|---|
| 1 | Harvey R. Levine, Esq. | Associate Counsel for Plaintiff |
| | Levine, Steinberg, Miller & Huver | KEEGAN SIMS, by and through his |
| 2 | 550 West C Street, Suite 1810 | Guardian ad Litem, RONALD E. SIMS |
| | San Diego, CA 92101 | |
| 3 | Telephone: (619) 231-9449 | |
| | Facsimile: (619) 231-8638 | |
| 4 | | |
| | James Goldberg, Esq. | Attorneys for Defendants, |
| 5 | Douglas Sullivan, Esq. | ENTERCOM SACRAMENTO, LLC, |
| | Folger Levin & Kahn LLP | ENTERCOM COMMUNICATIONS, |
| 6 | 275 Battery Street, 23rd Floor | CORP. and JOHN GEARY |
| | San Francisco, CA 94111 | |
| 7 | Telephone: (415) 986-2800 | |
| | Facsimile: (415) 986-2827 | |
| 8 | | |
| 9 | Donald W. Carlson, Esq. | |
| | Michael C. Cooper, Esq. | |
| | Carlson, Calladine & Peterson LLP | |
| 10 | 353 Sacramento Street, 16th Floor | |
| | San Francisco, CA 94111 | |
| 11 | Telephone: (415) 391-3911 | |
| | Facsimile: (415) 391-3898 | |
| 12 | | |
| 13 | Julie D. McElroy, Esq. | Attorneys for Defendant, |
| | Jacobsen & McElroy | STEVE WEED |
| 14 | 2401 American River Drive #100 | |
| | Sacramento, CA 95825 | |
| 15 | Telephone: (916) 971-4100 | |
| | Facsimile: (916) 971-4150 | |
| 16 | Bradley S. Thomas, Esq. | |
| | Mason & Thomas | |
| 17 | 2840 Fifth Street | |
| | Davis, CA 95618-7759 | |
| 18 | Telephone: (530) 757-0883 | |
| | Facsimile: (530) 757-0895 | |
| 19 | | |
| 20 | Bradley A. Post, Esq. | Attorneys for Defendant, |
| | Borton, Petrini & Conron, LLP | ROBIN PECHOTA |
| 21 | 1104 12th Street | |
| | Modesto, CA 95354 | |
| 22 | Telephone: (209) 576-1701 | |
| | Facsimile: (209) 527-9753 | |
| 23 | Andrew E. Benzinger, Esq. | Attorneys for Defendant, |
| | Lewis Brisbois Bisgaard & Smith | LIZ DIAZ |
| 24 | 2500 Venture Oaks Way, Suite 200 | |
| | Sacramento, CA 95833 | |
| 25 | Telephone: (916) 564-5400 | |
| | Facsimile: (916) 564-5444 | |
| 26 | | |
| 27 | | |
| 28 | | |

-6-

Offer to Compromise;
Notice of Acceptance of Offer to Compromise

1   Richard J. Schwab, Esq.
    Trygstad, Schwab & Trygstad
2   1880 Century Park East, Suite 1104
    Los Angeles, CA 90067
3   Telephone: (310) 552-0500
    Facsimile: (310) 552-1306
4
    Richard Charnley, Esq.                    Attorneys for Defendant,
5   Ropers, Majeski, Kohn & Bentley           ADAM COX
    515 S Flower St 11th Fl
6   Los Angeles, CA 90071
    Telephone: (213) 312-2000
7   Facsimile: (213) 312-2001

8   James Farinaro, Esq.                      Attorneys for Defendant,
    Law Offices of James Farinaro             STEVE MANEY
9   852 East 14th Street
    San Leandro, CA 94577
10  Telephone: (510) 553-1200
    Facsimile: (510) 553-1220
11
    Matthew P. Guichard, Esq.
12  Guichard, Teng & Portello, APC
    1800 Sutter Street, Suit 730
13  Concord, CA 94520
    Telephone: (925) 459-8440
14  Facsimile: (925) 459-8445

15  Phillip R. Bonotto, Esq.                  Attorneys for Defendant,
    Rushford & Bonotto, LLP                   PATRICIA SWEET
16  2277 Fair Oaks Blvd., Suite 495
    Sacramento, CA 95825
17  Telephone: (916) 565-0590
    Facsimile: (916) 565-0599
18
    Gerald Glazer, Esq.                       Attorneys for Defendant,
19  660 J Street, Suite 380                   MATT CARTER
    Sacramento, CA 95814
20  Telephone: (916) 442-3111
    Facsimile: (916) 442-6524
21
    Steven H. Schultz, Esq.
22  Demas & Rosenthal
    2331 Capitol Avenue
23  Sacramento, CA 95816
    Telephone: (916) 442-9000
24  Facsimile: (916) 441-6444

25

26

27

28

-7-

**Offer to Compromise;**
**Notice of Acceptance of Offer to Compromise**

# EXHIBIT 14



**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

Patrick Fredette
patrick.fredette@mccormickbarstow.com

CINCINNATI, OHIO OFFICE
1600 Scripps Center
312 Walnut Street
Cincinnati, Ohio 45202
Telephone (513) 762-7520
Fax (513) 762-7521

August 17, 2007

<u>**VIA FACSIMILE TO (610) 660-5620) AND E-MAIL**</u>

John Donlevie
Entercom Communications Corp.
401 City Avenue, Suite 809
Bala Cynwyd, PA 19004

Re:    *Strange et al. v. Entercom Sacramento, LLC et al.*, Sacramento County
Superior Court, State of California, Case No. 07AS00377

Dear Mr. Donlevie:

We are coverage counsel for American Home Assurance Company ("American
Home"), which insured Entercom Communications Corp. and Entercom Sacramento,
LLC ("Entercom") under a Commercial Umbrella policy under number BE 6849213
for the period March 7, 2006 to March 7, 2007.

A copy of your July 20, 2007 letter to Len Romeo of AIG Domestic Claims, Inc., was
forwarded to our attention.

We understand plaintiffs in the entitled action, *Strange et al. v. Entercom
Sacramento, LLC et al.*, Sacramento County Superior Court, State of California, Case
No. 07AS00377 ("*Strange* action"), offered, as your July 20 letter notes, "to release
all claims against all parties in exchange for the sum of $13 million."

**REDACTED**

, the obligation of an insurer to "accept
reasonable settlement offers" is measured in part by the exposure covered under the
terms of the policy.  See, e.g., *Native Sun Investment Group v. Ticor title Ins. Co.*,
189 Cal.App.3d 1265, 1269-1270 (1987) ("there is nothing [...] which requires an
insurer to indemnify a loss for which it is not liable - even if payment would be in the
best interest of its insured [...] '[o]bviously the duty of good faith and fair dealing
does not require an insurer to honor every claim presented to it'"); *Camelot by the
Bay Condominium Owners' Assoc. v. Scottsdale Ins. Co.*, 27 Cal.App.4th 33, 52
(1994) ("[t]he insurer does not, however, insure the entire range of an insured's well
being, outside the scope of and unrelated to the insurance policy, with respect to
paying third party claims.  It is an insurer, not a guardian angel"); *Blue Ridge Ins. Co.
v. Jacobson*, 25 Cal.App.4th 489, 502-503 (2001) (an "insurer only has a duty to
indemnify the insured for covered claims, and no duty to pay for uncovered claims
because the insured did not pay premiums for such coverage"); *Marie Y. v. General
Start Indemnity Co.*, 110 Cal.App.4th 928, 958 (2003) (an "insurer has a duty to
accept a reasonable settlement offer only with respect to a covered claim").

Other offices of
McCORMICK, BARSTOW, SHEPPARD
WAYTE AND CARRUTH, LLP

www.mccormickbarstow.com

FRESNO, CALIFORNIA OFFICE
5 River Park Place East
Fresno, California 93720-1501
P.O. Box 28912
Fresno, California 93729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

MODESTO, CALIFORNIA OFFICE
Centre Plaza Office Tower
1150 Ninth Street, Suite 1200
Modesto, California 95354
Telephone (209) 524-1100
Fax (209) 524-1188

LAS VEGAS, NEVADA OFFICE
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone (702) 949-1100
Fax (702) 949-1101



McCORMICK
BARSTOW LLP
ATTORNEYS AT LAW

John Donlevie
Entercom Communications Corp.
August 17, 2007
Page 2

As you know, the *Strange* action arose out of the death of Jennifer Strange, who allegedly died from a fatal consumption of water while participating in Entercom's "Hold your Wee for WII" contest. The complaint in the *Strange* action alleges "[t]he winner of the contest was selected based on which contestant could consume the most water in a three-hour period without urinating." It is further alleged in the complaint that Entercom "failed to act upon clear reports of medical symptoms from decedent that were consistent with the onset of" water poising, and Entercom's on-air staff "verbally chastised and otherwise coerced her, exhorting her to remain in the contest by threatening that she would be disqualified if she 'puked.'"

Based on the foregoing and additional allegations, the complaint alleges causes of action for wrongful death, negligence and intentional/reckless conduct, and seeks compensatory and punitive damages.

As explained in the **"Insuring Agreement"** of the American Home policy, the "insurance applies, only if [...] the **Bodily Injury** [...] is caused by an **Occurrence**." The policy defines "Occurrence" in relevant part as "an accident."

Because the **"Occurrence"** requirement is in the **"Insuring Agreement,"** it is Entercom's burden to establish an "accident." See, e.g., *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 807 (1994).

The term "accident" refers to "the *insured's* intent to commit the act giving rise to liability." *Dalrymple v. United Servs. Auto. Assn'n*, 40 Cal.App.4th 497, 521 (1995) (italics added); see, also, *Quan v. Truck Ins. Exchange*, 67 Cal.App.4th 583, 596 (1998); *Scheffler v. Allstste Ins. Co.*, 196 F. Supp. 2d 1003, 1005-1006 (C.D.Cal. 2002). Furthermore, the term "accident" refers to the nature of the act giving rise to liability, not the resulting injury. See, e.g., *Collin v. American Empire Ins. Co.*, *supra*, 21 Cal. App. 4th at 810 (California courts interpreting "occurrence" have focused exclusively on the insured's intent to perform the act which gives rise to liability, not on the insured's state of mind. If the claimant's injuries did not result from an "accident," it does not matter whether the insured expected or intended his conduct to cause any harm); *Allstate Ins. Co. v. Morgan*, 806 F.Supp. 1460, 1465 (N.D. Cal. 1992) (it is "irrelevant that the Morgans may not have intended to damage the Tromblers" because "California courts have held that a loss does not become 'accidental' simply because the insured did not intend to cause the injury").

Entercom clearly did not intend the harm that resulted from the "Hold your Wee for WII" contest. However, as outlined above, the focus in connection with satisfaction of the **"Occurrence"** requirement is on the act that resulted in the harm, not the resulting harm. Here, it is alleged the contest caused the harm, and as suggested by the term "contest," as well as the events relating to it, it appears inherently non-accidental in nature.

Further, to be covered under the American Home policy, the **"Bodily Injury"** must "be *caused by* an 'Occurrence.'" (Italics added). Specifically, the language of the American Home policy makes clear that the focus is the act, not the actor. *Dyer v. Northbrook Property & Casualty Ins. Co.*, 210 Cal.App.3d 1540, 1551 (1989). Thus, the contention Entercom's employees performed the act appears, for purposes of the **"Occurrence"** requirement, a distinction without a difference.



**McCORMICK**
**BARSTOW LLP**
ATTORNEYS AT LAW

John Donlevie
Entercom Communications Corp.
August 17, 2007
Page 3

In *Dyer*, the term "occurrence" was defined to mean "an accident, including repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 1546. The insured's assignee argued that the insured's liability was based on an "occurrence" because it was only held liable for the intentional acts of its employees under *respondeat superior*. The court disagreed, rejecting reliance on cases interpreting intentional act exclusions and the provisions of California Insurance Code § 533 and holding that where the issue was the meaning of "occurrence," the "issue was not who the policy insured but *what harm it covered*." *Id.* at 1551 (italics added); see, also, *North Atlantic Cas. and Surety Ins. Co. v. Dodson* (N.D. Cal. 1990) ("[a]n insured is not covered for acts or omissions for which it is potentially liable if the underlying suit involves only acts the nature of which are clearly excluded from coverage").[1]

In addition to what appears to be an absence of an **"Occurrence,"** the American Home policy does not cover an award of punitive damages. Insurance Code § 533; see, also, *City Products Corp. v. Globe Indemnity Co.*, 88 Cal.App.3d 31, 55 (1979) ("[i]t is apparent from the foregoing authorities that under California law the imposition of punitive damages upon a corporation is based upon its own fault, It is not imposed vicariously by the virtue of the fault of others").[2]


## REDACTED

However, be advised that American Home is continuing to review and investigate the *Strange* action, including for purposes of settlement.


---

[1] Courts in other jurisdictions have reached the same conclusion. See *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 325 (5th Cir. 2001) (where third-party's liability is related to and interdependent on other tortuous activities, ultimate issue in determining coverage is whether underlying tortuous activities are encompassed within definition of "occurrence"); *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1217 (11th Cir. 1999) (no "occurrence" for employee, thus no "occurrence" for insured employer); *Smith v. Animal Urgent Care, Inc.*, 208 W.Va 664, 668-669 (W. Va. 2000) (non-accidental nature of employee's conduct is crux of case and negligence allegations against insured employer do not alter essence of claim for purposes of coverage availability).

[2] We understand Entercom points to *Downey Venture v. LMI Ins. Co.*, 66 Cal.App.4th 478 (1998), and *Arenson v. National Automobile & Cas. Ins. Co.*, 45 Cal.2d 81 (1995), for the mistaken proposition an award of punitive damages against it will be "vicarious" and thus covered under the American Home policy. However, as a close read of *Downey Venture* and *Arenson* demonstrate, and as the court in *City Products* otherwise explained, the former cases dealt with vicarious liability for compensatory damages, not punitive damages. *City Products*, 88 Cal.App.3d at 36.



**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

John Donlevie
Entercom Communications Corp.
August 17, 2007
Page 4

Please direct all coverage related communications, and thus including any response to this communication, to my attention. Please otherwise feel free to contact me if you have any questions or you otherwise would like to discuss this communication or the matter in general.

Very truly yours,

Patrick Fredette
McCormick Barstow LLP

PF:ct
03704/00013-1129374.v1

# EXHIBIT 15



## McCORMICK BARSTOW LLP
### ATTORNEYS AT LAW

FRESNO, CALIFORNIA OFFICE
5 River Park Place East
Fresno, California 93720-1501
P.O. Box 28912
Fresno, California 93729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

# FACSIMILE TRANSMISSION

**Date:**      September 4, 2007

**To:**

| Name: | Fax No.: | Phone No.: |
|-------|----------|------------|
| Douglas W. Sullivan | 415-986-2827 | |

**From:**      Patrick Fredette

**Re:**      Strange v. Entercom Sacramento

| File No.:    03704-13 | Number of Pages, Including Cover: | |
|-----------------------|-----------------------------------|--|
| | | |

**Message:**

Other offices of
McCORMICK, BARSTOW, SHEPPARD
WAYTE AND CARRUTH, LLP

www.mccormickbarstow.com

MODESTO, CALIFORNIA OFFICE
Centre Plaza Office Tower
1150 Ninth Street, Suite 1200
Modesto, California 95354
Telephone (209) 524-1100
Fax (209) 524-1188

LAS VEGAS, NEVADA OFFICE
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone (702) 949-1100
Fax (702) 949-1101

CINCINNATI, OHIO OFFICE
1600 Scripps Center
312 Walnut Street
Cincinnati, Ohio 45202
Telephone (513) 762-7520
Fax (513) 762-7521

WARNING: THE DOCUMENT BEING TRANSMITTED IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THE COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE UNITED STATES POSTAL SERVICE.
**PLEASE IMMEDIATELY CALL THE FAX CENTER AT (559) 433-1300 (EXT. 4106)
IF THERE ARE ANY PROBLEMS DURING THIS FAX TRANSMISSION.**



**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

Patrick Fredette
patrick.fredette@mccormickbarstow.com

CINCINNATI, OHIO OFFICE
1600 Scripps Center
312 Walnut Street
Cincinnati, Ohio 45202
Telephone (513) 762-7520
Fax (513) 762-7521

September 4, 2007

<u>**SENT VIA FACSIMILE [(415) 986-2827] AND EMAIL**</u>

Douglas W. Sullivan
Folger, Levin & Kahn, LLP
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111

Re:     *Strange, et al. v. Entercom Sacramento, LLC, et al.*, Sacramento
County Superior Court Case No. 07AS00377

Dear Mr. Sullivan:

We received your correspondence of August 28, 2007, and, with all respect, are surprised by its tone and many factual inaccuracies.

We will respond in full to the correspondence by separate communication; however, at present, we write to correct Entercom's misunderstanding of American Home Assurance Company's position in relation to: (1) whether American Home declined coverage and (2) whether Entercom may settle the case without consulting American Home.

As an initial matter, your letter contains repeated references to "AIG." For clarity, be advised that American Home issued the Commercial Umbrella policy under which Entercom is insured.

First, American Home has not declined coverage. Rather, as previously articulated, American Home is proceeding under a reservation of rights.

Second, American Home has not and will not waive any provision under the policy, including the voluntary payments provision.

As stated, we will shortly respond in full to your correspondence. However, to the extent you need clarity, have any questions, or simply wish to discuss the matter, please feel free to contact me.

Very truly yours,



Patrick Fredette
McCormick Barstow LLP

PF:ct
03704/00013-1134134.v1

Other offices of
McCORMICK, BARSTOW, SHEPPARD
WAYTE AND CARRUTH, LLP

www.mccormickbarstow.com

FRESNO, CALIFORNIA OFFICE
5 River Park Place East
Fresno, California 63720-1501
P.O. Box 28912
Fresno, California 63729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

MODESTO, CALIFORNIA OFFICE
Centre Plaza Office Tower
1150 Ninth Street, Suite 1200
Modesto, California 95354
Telephone (209) 524-1100
Fax (209) 524-1188

LAS VEGAS, NEVADA OFFICE
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone (702) 949-1100
Fax (702) 949-1101