1    SUSAN K. SULLIVAN (SBN 156418)
     SEDGWICK, DETERT, MORAN & ARNOLD LLP
2    801 South Figueroa Street, 18th Floor
     Los Angeles, CA 90017
3    Telephone: (213)-426-6900
     Facsimile: (213) 426-6921
4    E-mail: susan.sullivan@sdma.com

5    MARY P. McCURDY (SBN 116812)
     CHRISTINA M. LAVANIER (233335)
6    McCURDY & FULLER LLP
     4300 Bohannon Drive, Suite 240
7    Menlo Park, CA 94025
     Telephone: (650) 618-3500
8    Facsimile: (650) 618-3599
     E-mail: mary.mccurdy@mccurdylawyers.com
9            christina.lavanier@mccurdylawyers.com

10   Attorneys for Defendant
     AMERICAN HOME ASSURANCE COMPANY

11

12                    UNITED STATES DISTRICT COURT

13        NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

14   ENTERCOM SACRAMENTO, LLC, a           CASE NO. CV 07-06493 JSW
     California Limited Liability Corporation;
15   ENTERCOM COMMUNICATIONS CORP., a      **DEFENDANT AMERICAN HOME
     Pennsylvania Corporation; and JOHN GEARY, ASSURANCE COMPANY'S
16   an individual,                        OPPOSITION TO PLAINTIFFS'
                                           MOTION FOR SUMMARY
17              Plaintiffs,                ADJUDICATION AND RULE 56(f)
                                           REQUEST**
18        v.

19   AMERICAN HOME ASSURANCE
     COMPANY, a New York Corporation,
20
                Defendant.
21

22

23

24

25

26

27

28
     27372

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................. 1

II.  FACTUAL BACKGROUND................................................................. 2

III. LEGAL ANALYSIS ......................................................................... 3

A.   Entercom's Motion For Summary Adjudication Is Premature ....................... 3

1.   Entercom Does Not State A Valid Cause Of Action For
Declaratory Relief................................................................. 3

2.   Entercom Cannot Obtain A Declaration Bearing On
Indemnity Unless And Until Its Liability Has Been Established ........ 5

3.   Entercom's Request May Result In Inconsistent Rulings ................. 6

4.   Entercom's Summary Adjudication Motion Is Premature ................. 6

B.   Entercom Has Failed To Show Liability For Damages Caused
By An "Occurrence"................................................................. 9

1.   The Occurrence Is Determined By The Act ..................................... 10

2.   All Intentional Acts Are Not Occurrences..................................... 12

3.   The Limited Exception For Damages Produced By An
"Additional, Unexpected, Independent And Unforeseen Acts"
Does Not Apply Here ......................................................... 12

4.   There Are No Allegations Or Evidence Of An "Additional
Unexpected, Independent And Unforeseen Acts"
Does Not Apply Here ......................................................... 13

5.   The Allegations And Evidence Negate Entercom's Argument
That Strange's Death Was Caused By An Additional
Unexpected, Independent And Unforeseen Acts" Does Not
Apply Here.................................................................... 14

C.   There Is No Ambiguity In The American Home Policy................................. 15

D.   Entercom Is Not Entitled To A Declaration That It Can "Control"
The Settlement .................................................................... 16

1.   Entercom Is Not Entitled To A Waiver Of The Policy Provisions.... 16

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

**AMERICAN HOME'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION
CV 07-06493 JSW**

2.   Entercom Has Not Alleged That There Is A "Reasonable
     Settlement"............................................................................................. 17

E.   Entercom Has Not Provided Competent Evidence Which Entitles
     It To Relief.............................................................................................. 18

     1.   Entercom Has Not Complied With Rule 32 ...................................... 18

     2.   The Evidence Submitted Is Not Admissible...................................... 20

IV.  CONCLUSION....................................................................................................... 20

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27372

-ii-

**AMERICAN HOME'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**
**CV 07-06493 JSW**

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Aerojet-General Corp. v. Transport Indemnity*
(1997) 17 Cal.4th 38 ................................................................ 5

*Allstate Ins. Co. v. Morgan*
 (N.D. Cal. 1992) 806 F.Supp. 1460, 1465 .......................... 9

*Anderson v. Liberty Lobby, Inc.*
(1986) 477 U.S. 242 ............................................................ 7

*Archdale v American International Speciality Lines Ins. Co.*
(2007)154 Cal.App. 449 ...................................................... 16

*Arquilla v. Int'l Ins. Co.*
(N.D. Cal 1988) .................................................................... 16

*Bay Cities Paving and Grading v. Lawyers Mutual Ins. Co.*
(1993) 5 Cal.4th 854 .......................................................... 15

*Burlington No. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*
(9th Cir. 2003) 323 F.3d 767 .............................................. 6, 7

*Buss v. Superior Court*
(1997) 16 Cal.4th 35 .......................................................... 5

*Collin v. American Empire Ins. Co.*                                          4, 9,
(1994) 21 Cal. App. 4th 787 ................................................ 10

*Crisci v. Security Ins. Co.*
(1967) 66 Cal.2d 245 .......................................................... 16

*David Kleis, Inc. v. Superior Court*
(1995) 37 Cal.App.4th 1035 ................................................ 6

*Dyer v. Northbrook Property & Casualty Ins. Co.,*
(1989) 210 Cal.App.3d 1540 .............................................. 10

*Evans v. Celotex Corp.*
(1994) Cal.App.3d 741 ........................................................ 17

*Hamilton v. Maryland Cas. Co.*
(2002) 27 Cal.4th 718 .......................................................... 4, 5

*Hangarter v. Provident Life and Acc. Ins. Co.*
(9th Cir. 2004) 373 F.3d 998 .............................................. 19

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

**AMERICAN HOME'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**
**CV 07-06493 JSW**

*Haskel, Inc. v. Superior Court*
(1995) 33 Cal.App.4th 963 ........................................................................ 6

*Hub v. Sun Valley Co., et al.*
(9th Cir. 1982) 682 F.2d 776 .................................................................... 19

*In Re Deep Vein Thrombosis*
(N.D.Cal. 2005) 356 F.Supp.2d 1055 ...................................................... 7

*Jamestown Builders, Inc. v. General Star Indemnity Company*
(1999) 77 Cal.App.4th 341 ...................................................................... 16

*Kershaw v Maryland Cas. Co*
(1959) 172 Cal.App. 2d 248 .................................................................... 16

*LensCrafters, Inc., et al. v. Liberty Mutual Fire Insurance Company, et al.,*
(N.D.Cal. 2008 Slip Op.), 2008 WL 410243 ........................................ 4, 5

*Mercado v. Allstate Ins. Co.*
(9th Cir. 2003) 340 F.3d 824 .................................................................... 4

*Merced Mutual Ins. Co. v. Mendez*
(1989) 213 Cal.App.3d 41 .................................................................. 13, 14

*Modern Development Co. v. Navigators Ins. Co.*
(2003) 111 Cal.App.4th 932 .............................................................. 12, 14

*Montrose Chemical Corp. v. Superior Court*
(1993) 6 Cal.4th 287 .................................................................................. 6

*PPG Industries, Inc. v. Transamerica Ins. Co. Inc.*
(1999) 20 Cal.4th 310 .............................................................................. 18

*Pruyn v Agricultural Ins. Co.*
(1995) 36 Cal.App.4th 500 ...................................................................... 16

*Quan v. Truck Ins. Exchange*
(1998) 67 Cal.App.4th 583 .................................................................. 9, 10

*Royal Globe v Whitaker*
(1986) 81 Cal. App.3d at 537.................................................................. 4, 9

*Sansom v. Transamerica Insurance Company*
(1981) 30 Cal.3d 220 .............................................................................. 16

*Scheffler v. Allstate Ins. Co.,*
(C.D.Cal. 2002) 196 F. Supp. 2d 1003 .................................................... 9

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

**AMERICAN HOME'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION
CV 07-06493 JSW**

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*
(1993) 12 Cal.App.4th 715 ........................................................................ 15

*Societe de Conditionnement en Aluminum v Hunter Engineering*
(C.A. Cal. 1981) 655 F.2d 938.................................................................... 3

*State Farm Fire & Casualty Co. v. Eddy*
(1990) 218 Cal.App.3d 958 ...................................................................... 14

*St. Paul Fire & Marine Ins. Co. v. Superior Court (County of Yuba)*
(1984) 161 Cal.App.3d. 1199 ................................................................ 15, 16

*Wichita Falls Office Assoc. v. Banc One Corp.*
(5th Cir.1992) 978 F.2d 915 ...................................................................... 7

## Statutes

Cal. Civ. Code §1431.2................................................................................ 17

California Insurance Code § 533 .......................................................... 10, 18

Federal Rule of Civil Procedure 32 ...................................................... 7, 19, 20

Federal Rule of Civil Procedure 56(c) ......................................................... 7

Federal Rule of Civil Procedure 56(f) ...................................................... 6, 7

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AMERICAN HOME'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**
**CV 07-06493 JSW**

# I.    INTRODUCTION

The request for summary adjudication of plaintiffs Entercom Sacramento LLC, Entercom Communications Corp. and John Geary ("Entercom") is premature, has no basis in the law or policy language and seeks relief this Court cannot grant at this time. Entercom's motion must be denied for the following reasons:

- This action is premature because there is no justiciable case or controversy between Entercom and defendant American Home Assurance Company ("American Home") unless and until there is a settlement or judgment in excess of the primary policy limits.

- Entercom cannot obtain any rulings relevant to the duty to indemnify, including a ruling that there has been an occurrence, because Entercom's liability, and the basis therefore, has not been established in the underlying action.

- Entercom's current request, if granted, might result in inconsistent rulings leading to a situation in which Entercom could be held liable for intentional conduct in the underlying action, but claim coverage nonetheless due to the premature rulings it seeks here.

- American Home is entitled to conduct discovery before the Court hears Entercom's motion as no discovery has been conducted in this case.

- Even assuming Entercom's request was not premature, Entercom has not sustained its burden of demonstrating that any alleged bodily injury was caused by an occurrence as the underlying claimants allege Entercom acted intentionally.

- Entercom is not entitled to a ruling that would eliminate the no voluntary payment provision from the policy because American Home is participating in the defense (even though as an excess carrier it is not legally obligated to do so at this point) and it has not breached any policy provisions.

- There can be no waiver of any policy provision absent a showing of a failure to accept a reasonable settlement demand and entry of an excess judgment and Entercom makes no attempt to demonstrate that it has received a reasonable settlement demand.

- Most of Entercom's supporting evidence is inadmissible under Rule 32.

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27372                                              1

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

## II.    FACTUAL BACKGROUND

On January 12, 2007, radio station KDND 107.9 FM ("KDND"), owned by Entercom Sacramento, LLC, hosted an on-air contest. Entercom Communications Corp is the parent company of Entercom Sacramento, LLC and John Geary is the station manager. (Complaint at ¶¶ 2-3.) The contest, entitled "Hold Your Wee for a Wii", required contestants to consume increasing amounts of water ("Contest"). (Complaint at ¶ 30.) The contestant who could drink the most water without urinating would win a Nintendo Wii video game system. (Complaint at ¶ 30.)

While the Contest was ongoing, the contestants began evidencing signs of physical discomfort. (Cox Depo, 282:10-11 (Exhibit B); Maney Depo., 207:1-23 (Exhibit E); Mendoza Depo., 30:12-31:1 (Exhibit F); Sweet Depo. 296:17-21 (Exhibit G), and Venegas Depo. 145:5-20 (Exhibit H)). At least one radio listener called in during the Contest and warned of the dangers of excess water consumption. (Baghaei Depo. 112:6-13 (Exhibit A); Cox Depo, 245:14-246:4 (Exhibit B) and Sweet Depo. 282:25-284:1 (Exhibit G)). Jennifer Strange died after participating in the Contest. (Complaint at ¶ 31.) On January 25, 2007, Strange's estate filed a lawsuit in Sacramento Superior Court styled *Strange, et al. v. Entercom Sacramento, LLC, et al.*, case no. 07A S 00377 ("*Strange* action") against Entercom alleging negligence and intentional and/or reckless conduct. (Complaint at ¶¶ 29 and 32.) The complaint seeks compensatory and punitive damages. Other contestants also have filed lawsuits alleging physical harm arising from the Contest. Declaration of Michael Hipwood ("Hipwood Decl.") at ¶ 9 and Exhibit K).

Vigilant Insurance, a member of the Chubb Group of Insurance Companies ("Chubb"), issued a primary policy with a $1M limit of liability to Entercom. American Home issued excess policy no. BE6849213, for the policy period March 7, 2006 to March 7, 2007, with a limit of $25M (the "American Home policy"). (Complaint at ¶¶ 20-24.)

On March 22, 2007 American Home reserved its rights regarding the *Strange* action and retained counsel to participate in the defense of the underlying action. (Declaration of Leonard Romeo ("Romeo Decl.") at ¶ 4 and Exhibit N.) At no time has American Home denied coverage, it has only reserved its rights regarding coverage. (Complaint at ¶¶ 10 and 50; Romeo Decl. at ¶¶

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

4-5; Hipwood Decl. at ¶ 7.) American Home has participated in several meetings and discussions with Entercom regarding the *Strange* action. (Romeo Decl. at ¶¶ 6-9; Hipwood Decl. at ¶¶ 3-4.) American Home has and will continue to participate in efforts to resolve the *Strange* action. (Hipwood Decl. at ¶¶ 7-8; Romeo Decl. at ¶¶ 4-14.)

In July 2007, a settlement demand for $13M was made in the *Strange* action. This demand was made only to Entercom Sacramento LLC, but included a release for all defendants and a release of the uncovered punitive damage claims. (Entercom motion at Exhibit 13.) Believing this demand to be unreasonable, American Home did not consent to settlement. Romeo Decl. at ¶ 12. On February 14, 2008 a settlement demand of $10M, which is $3M **less** than the prior demand, was made in the *Strange* action. (Hipwood Decl. at ¶ 5 and Exhibit J.) Again, the demand was made to Entercom Sacramento, LLC, but included a release for all defendants and the uncovered punitive damage claims. (Hipwood Decl. at ¶ 5.)

### III.     LEGAL ANALYSIS

#### A.     Entercom's Motion For Summary Adjudication Is Premature

##### 1.     Entercom Does Not State A Valid Cause Of Action For Declaratory Relief

In *Societe de Conditionnement en Aluminum v Hunter Engineering*, (9th Cir. 1981) 655 F.2d 938, 943, the Ninth Circuit concluded that a declaratory judgment is not appropriate when there is a "dispute of a hypothetical or abstract character" or when a party seeks "an opinion advising what the law would be in a hypothetical state of fact." Although the *Societe* court observed that the difference is necessarily one of degree without a precise test for whether such a controversy exists, the factual circumstances must show an actual substantial controversy of sufficient immediacy and reality to warrant the issuance of declaratory judgment. *Id.* at 942-943. Here, the *Societe* "general principles" establish that no such justiciable case or controversy exists.

The insuring agreement of the American Home policy provides that American Home will "pay on behalf of the insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages because of liability imposed by law because of bodily injury . . .". (Complaint at ¶ 24.) The insured bears the burden of proving that a claim falls within the basic

27372                                                3

1    scope of coverage. (*Royal Globe Ins. v. Whitaker* (1986) 181 Cal. App.3d 532, 537; *Collin v.*

2    *American Empire Insurance Company* (1994) 21 Cal. App.4th 787, 803.) Entercom's motion does

3    not contend that this provision has been met. In fact, Entercom states to the contrary by alleging

4    that the *Strange* lawsuit is continuing. (Complaint at ¶18.a.-b.) Accordingly, there has been no

5    "legal obligation to pay damages because of liability imposed by law". Without this prong of the

6    insuring agreement being met, Entercom is not entitled to a declaration of coverage.

7         Entercom's claim for declaratory relief is almost identical to the policyholder claims

8    recently rejected by the Northern District in *LensCrafters, Inc., et al. v. Liberty Mutual Fire*

9    *Insurance Company, et al.* (N.D.Cal. 2008 Slip op.) 2008 WL 410243. ("*LensCrafters*"). In

10    *Lenscrafters,* the policyholder sought declaratory relief, breach of contract regarding the duty to

11    indemnify and the duty to settle, and breach of the covenant of good faith and fair dealing, for

12    failing to accept a "reasonable settlement." *Id.* at *3. The Court indicated that the primary

13    dispositive issue was whether the carriers' alleged breach of the duty to settle was unripe because

14    no settlement or judgment in excess of the primary policy limits had been entered. *Id.* The

15    *Lenscrafter's* Court followed "the plain language of the California Supreme Court's guidance in

16    *Hamilton* that an excess judgment or settlement is prerequisite to a ripe claim for breach of the

17    duty to settle." *Id* at *4. (citing, *Mercado v. Allstate Ins. Co.* (9th Cir., 2003) 340 F.3d 824, 827);

18    *See, Hamilton v. Maryland Cas. Co.* (2002) 27 Cal.4th 718, 725 (stating, "the insured's action for

19    breach of the contractual duty to settle . . . does not mature, until a judgment in excess of the policy

20    limits has been entered against the insured.");

21         Entercom's complaint fails to allege any facts establishing that the requisite excess

22    judgment or settlement has been entered in this case. On the contrary, Entercom specifically

23    alleges that it has not settled the case. (Complaint at ¶ 18.a.-b.)

24         As the California Supreme Court stated in *Hamilton,* "a claimants action against the insurer

25    does not mature until a judgment in excess of the policy limits has been entered against the

26    insured." *Hamilton, supra* at 725. As discussed above, this has not occurred. Therefore, there is no

27    present justiciable controversy. Because Entercom fails to allege that a judgment or settlement in

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA  94025
(650) 618-3500

27372                                              4

1  excess of the underlying policy limits has been entered, Entercom fails to establish that it is

2  entitled to declaratory relief as articulated in *LensCrafters* and *Hamilton, supra.*

### 2. Entercom Cannot Obtain A Declaration Bearing On Indemnity Unless And Until Its Liability Has Been Established

Entercom apparently seeks a ruling from this Court that its *potential* liability is for bodily injury caused by an occurrence. Although Entercom does not articulate whether it seeks this ruling in connection with the duty to defend or the duty to indemnify, it clearly seeks a ruling addressing the duty to indemnify because it wants the ability to settle the case and obtain coverage for that settlement. California law is clear that Entercom cannot obtain a ruling on the duty to indemnify at this point because its liability has not been established.

The fundamental distinction between an insurer's duty to defend and its duty to indemnify is well established in California. The duty to defend runs to claims that are merely potentially covered in light of the facts alleged or otherwise disclosed, and arises as soon as tender is made and before liability is established. *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46. In contrast, the duty to indemnify runs only to claims that are actually covered in light of the facts proved. *Id.* It arises only after liability is established and as a result thereof. *Aerojet-General Corp. v. Transport Indemnity* (1997) 17 Cal.4th 38, 56. Thus, although a court can address the duty to defend before liability is established because the duty to defend is based on a potential for coverage, the duty to indemnify cannot be determined until the insured's liability has been established.

Here, the claim against Entercom is pending. Entercom's liability has not been established and, indeed, Entercom contests liability. Therefore, Entercom cannot obtain coverage determinations from this Court bearing on the duty to indemnify, such as a determination that any bodily injury for which Entercom *may* become liable was caused by an occurrence. The extent to which Entercom's liability arises out of bodily injury caused by an occurrence can only be decided after liability is established and as a result thereof. *Aerojet, supra.* This is precisely why, as set forth below, courts are repeatedly cautioned not to address indemnity issues while the underlying claims are pending.

27372

5

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

### 3.     Entercom's Request May Result In Inconsistent Rulings

The underlying *Strange* action has not been resolved. Entercom Communications Corp. and Geary intend to file a motion for summary adjudication that they have no liability because they were not involved with the contest and that punitive damages are not available under any of the claims in the *Strange* action or with respect to Entercom. (Declaration of Mary P. McCurdy ("McCurdy Decl.") at ¶ 4.)

If this Court were to rule on Entercom's motion, without a final determination in the underlying action as to the liability, there exists the possibility of inconsistent rulings. For example, if punitive damages were awarded in the underlying action this would have a bearing on the intentional nature of the conduct of Entercom and would be relevant to the insurance coverage determination of whether there was an occurrence. However, it also would be inconsistent with the ruling Entercom seeks here that its conduct constitutes an occurrence. In such a situation, would Entercom then contend it is entitled to coverage for punitive damages?

This potential for inconsistent findings is what has lead to California courts to hold that an action for declaratory relief, the outcome of which is determined by findings in an underlying action, cannot proceed. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, *David Kleis, Inc. v. Superior Court* (1995) 37 Cal.App.4th 1035, *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963.)

### 4.     Entercom's Summary Adjudication Motion Is Premature

Rule 56(f) of the Federal Rules of Civil Procedure provides that, upon a showing made by the party opposing a motion for summary judgment that such party "cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition," the court may deny or continue the motion for summary judgement in order to permit that party an opportunity to obtain necessary discovery.

The application of Rule 56(f) is particularly important in cases of very early filed summary judgment motions, such as the motion at issue in the present case. In *Burlington No. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation* (9th Cir. 2003) 323 F.3d 767

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

1    ("*Burlington Northern*"), plaintiff filed for summary judgment less than a month after the action

2    commenced. The 9th Circuit noted that the motion was technically permissible in light of the 20-

3    day limit included in FRCP Rule 56, but stated:

> Where . . . a summary judgment motion is filed so early in the
> litigation, before a party has had any realistic opportunity to pursue
> discovery relating to its theory of the case, district courts should
> grant any Rule 56(f) motion fairly freely. *Id.* at 773-774. (citing
> *Wichita Falls Office Assoc. v. Banc One Corp.* (5th Cir.1992) 978
> F.2d 915, 919 n. 4, stating a "continuance of a motion for summary
> judgment for purposes of discovery should be granted almost as a
> matter of course unless the non-moving party has not diligently
> pursued discovery of the evidence").

The United States Supreme Court suggested a similar conclusion in *Anderson v. Liberty

Lobby, Inc.* (1986) 477 U.S. 242, stating, "[Rule 56(c)] is qualified by Rule 56(f)'s provision that

*summary judgment be refused* where the nonmoving party has not had the opportunity to discover

information that is essential to his opposition." *Id* at 250, n. 5.

The Northern District of California confronted this issue *In Re Deep Vein Thrombosis*

(N.D.Cal. 2005) 356 F.Supp.2d 1055 ("*In Re DVT*"). The court highlighted the importance of

considering the timing of the motion, stating:

> [W]hen "a summary judgment motion is filed . . . early in the
> litigation, before a party has had any realistic opportunity to pursue
> discovery relating to its theory of the case, district courts should
> grant any Rule 56(f) motion fairly freely." *Id.* at 1060 (quoting
> *Burlington Northern, supra*).

American Home has not had an opportunity to conduct any discovery in this matter. Initial

disclosures have not yet taken place. Without such basic discovery, American Home cannot

completely respond to Entercom's motion. (McCurdy Decl. ¶ 2.)  American Home is entitled to

discover, among other things, what the insured intended with regard to the Contest preparation and

execution, the basis for Entercom's contention that an occurrence took place and the basis for

Entercom's position that it is entitled to waiver of the policy provisions.

Entercom takes the position that all necessary discovery has already taken place in the

*Strange* action. As discussed in more detail below regarding Federal Rule of Civil Procedure 32

("Rule 32"), American Home is entitled to conduct independent discovery.  Even if Rule 32

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA  94025
(650) 618-3500

27372                                          7

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

permitted the use of depositions from the *Strange* action, American Home needs to depose a number of individuals who have not already been deposed in the *Strange* action regarding their knowledge of the facts underlying the Strange's death. These individuals should have information relevant to Entercom's potential liability, specifically with respect to whether Entercom knew of the potential dangers associated with the Contest. Those individuals include Entercom employees and/or former employees, contestants in the Contest, Strange's co-workers and friends and individuals identified by other parties to the *Strange* action as having relevant information relevant, the Sacramento Sheriff's office and District Attorney, as well as the FCC. (McCurdy Decl. ¶ 5.)

Discovery of such facts is essential to a determination of whether an occurrence took place and to whether Entercom is entitled to coverage under the American Home policy. As Entercom's motion proceeds entirely on the theory that there was an "occurrence" and that the American Home policy provisions are presumptively waived, the facts tending to support or negate such theories are both highly relevant and necessary to American Home in responding to Entercom's motion.

Entercom provides a declaration of Dr. Juan Carlos Ayus ("Ayus") in support of its motion. (Exhibit 4 to Entercom motion.) American Home has not had an opportunity to depose Ayus. Additionally, it is American Home's understanding that neither Ayus nor any other experts have been deposed in the *Strange* action. (McCurdy Decl. ¶ 5b.)

In addition to the fact that American Home has not been able to conduct discovery, it has not been able to obtain basic information regarding the *Strange* action. American Home attempted on several occasions to obtain the court file from Sacramento Superior Court, and was informed that the complete file was not available because "the file was with the Judge, for a matter under submission". (McCurdy Decl. ¶ 3. )

Finally, Entercom contends that Chubb's provision of a defense without a reservation of rights is somehow relevant to its motion and American Home's position. While American Home does not agree with this contention, it is entitled to conduct discovery on this issue, including the

27372                                                              8

1    depositions of the relevant Chubb individuals.

**B.    Entercom Has Failed To Show Liability For Damages Caused By An "Occurrence"**

As provided in the insuring agreement of the American Home policy, the insurance applies, only if the bodily injury is caused by an "Occurrence." (Exhibit 6 to Entercom motion) The policy defines "Occurrence" in relevant part, as "an accident." (Exhibit 6 to Entercom motion.) "An intentional act is not an 'accident' within the plain meaning of the word." *Royal Globe, supra, Collin, supra* at 806. As the "Occurrence" requirement is in the insuring agreement, it is Entercom's burden to establish that there was an "accident." See, e.g., *Collin, supra,* at 807.

The term "accident" refers to "the insured's intent to commit the act giving rise to liability, not the resulting harm" *Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 596; *Scheffler v. Allstate Ins. Co.* (C.D.Cal. 2002) 196 F. Supp. 2d 1003, 1005-1006. Furthermore, the term "accident" refers to the nature of the act giving rise to liability, not the resulting injury. See, e.g., *Collin, supra,* at 810 (California courts interpreting "occurrence" have focused exclusively on the insured's intent to perform the act which gives rise to liability, not on the insured's state of mind. If the claimant's injuries did not result from an "accident," it does not matter whether the insured expected or intended his conduct to cause any harm); *Allstate Ins. Co. v. Morgan* (N.D. Cal. 1992) 806 F.Supp. 1460, 1465 (it is "irrelevant that the Morgans may not have intended to damage the Tromblers" because "California courts have held that a loss does not become 'accidental' simply because the insured did not intend to cause the injury").

Entercom contends it did not intend the harm that resulted from the "Hold your Wee for a Wii" contest. (Entercom motion at 3:27-28). However, the focus in connection with satisfaction of the occurrence requirement is on the act that resulted in the harm, not the resulting harm. Entercom's intent to harm is irrelevant. Here, it is alleged the Contest caused the harm, and as suggested by the term "Contest," as well as the events relating to it, it is alleged to be non-accidental in nature.

/ / /

/ / /

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27372

**American Home's Opposition to Plaintiffs' Motion for Summary Adjudication and Rule 56(f) Request
CV 07-06493 JSW**

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

### 1.    The Occurrence Is Determined By The Act

To obtain coverage under the American Home policy, the bodily injury" must "be *caused by* an occurrence. " (Italics added). (Entercom motion at Exhibit 6.) Specifically, the language of the American Home policy makes clear that the focus is the act, not the actor. *Dyer v. Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1551. Thus, the contention that Entercom's employees performed the act appears, for purposes of the "occurrence" requirement, a distinction without a difference. Therefore, Entercom's contention that there must have been an "occurrence" as to Geary and Entercom Communications Corp. is not substantiated.[1]    Plaintiffs' complaint in the *Strange* action does not differentiate between the defendants and alleges that all defendants, including Entercom Communications Corp. and Geary, acted intentionally.

In *Dyer*, the term "occurrence" was defined to mean "an accident, including repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 1546. The insured's assignee argued that the insured's liability was based on an "occurrence" because it was only held liable for the intentional acts of its employees under *respondeat superior.* The court disagreed, rejecting reliance on cases interpreting intentional act exclusions and the provisions of California Insurance Code § 533 and holding that where the issue was the meaning of "occurrence," the "issue was not who the policy insured but *what harm it covered.*" *Id.* at 1551 (italics added);

The result does not turn on the type of harm, but the nature of the conduct that gave rise to the harm. See, e.g., *Collin, supra* at 804. As one court commented, "[n]egligent' or not, in this case the insured's conduct alleged to have given rise to claimant's injuries is necessarily non accidental, not because any 'harm' was intended, but simply because the conduct could not be engaged in by 'accident.'" *Quan, supra* at 596.

As alleged by plaintiffs in the *Strange* action, the "Hold Your Wee" contest was held with an intent and expectation of harm. (Entercom motion at Exhibit 7, ¶ 7.) The "contest rules" state

---

[1] Geary and Entercom Communications Corp. also contend that they are not liable to plaintiffs and intend on filing a motion for summary adjudication that they have no liability because they were not involved with the contest. If correct in this position, then whether or not there was an occurrence is irrelevant.

27372                                                                                  10

1  that "Hold your Wee" is the concept of the game, and contestants will not be able to go to the

2  bathroom to be able to continue in this contest." (Romeo Decl. at Exhibit L.)

3      According to plaintiffs in the *Strange* action, the "on-air" comments of Entercom staff

4  underscored the intent and expectation of harm: "it is possible to die from water poisoning";

5  contestants would be "out of the contest" if they vomited, which would occur if "this gets

6  dangerous"; at least one listener called during the contest and informed the employees that the

7  contestants "can get sick and possibly die from water intoxication" and the employees responded,

8  "[y]eah we're aware of that. . . . They signed releases so we're not responsible.  It's okay." and "if

9  they get to the point where they have to throw up then, . . . they're out of the contest before they

10  die, so that's good, right." (Entercom motion at Exhibit 7, ¶ 18, Baghaei Depo., 121:15-17 (Exhibit

11  A); Cox Depo., 222:9-10, 226:20-22 and 251:23-24 (Exhibit B); Sweet Depo., 283:3-5, 284:22-24

12  (Exhibit G) and Williams Depo., 60:7-25 and 62:22-63:4 (Exhibit I)).

13      The "contest rules" inform contestants, among other things, "**[b]y entering this contest, all**

14  **finalists acknowledge that such participation may be potentially hazardous, and hereby**

15  **represent that he/she is physically, psychologically and medically able to participate in this**

16  **activity.**" (Romeo Decl. at Exhibit L (emphasis in original).)  The "contest rules" also require

17  "qualifiers ... to sign a release form relieving the Station and Sponsors from any and all liability

18  with respect to participation in this contest." (Id.)

19      The release form executed by Ms. Strange is entitled, "**Release For All Claims Including**

20  **Personal Injury,**" and extends to "all claims, demands, grievances, and causes of action, either

21  legal or equitable, including but not limited to, all damages of any kind incurred." (Romeo Decl. at

22  Exhibit M (Emphasis in original).)

23      The goal of the contest was to have the contestants drink excessive amounts of water

24  without discharging it.  The plaintiffs in the *Strange* action allege that the "on-air" comments,

25  among with other actions alleged in plaintiffs' complaint, prove that Entercom proceeded in a

26  highly deliberate and intentional manner, including one that expected and intended harm to result.

27  (Entercom motion at Exhibit 7, ¶¶ 17-18.)

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27372                                    11

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

### 2. All Intentional Acts Are Not Occurrences

Entercom makes the novel argument that intentional conduct must be accompanied by some "bad intent" to fall outside the definition of an "occurrence." Entercom cites to a number of cases in which coverage was denied for intentional conduct that was "inherently wrongful." Entercom concedes that intentional conduct that is inherently wrongful is not an "occurrence." American Home agrees.

However, American Home and the law of California both disagree with the inferential leap that Entercom next makes. After conceding that intentional acts that are inherently wrongful are excluded from coverage, Entercom appears to make the argument that intentional acts which are not inherently wrongful are not excluded from coverage. Essentially, plaintiffs read in a moral component to the determination of whether or not a liability-causing act is intentional or an "accident" and therefore an "occurrence." No such moral component appears in the California case law. See, e.g., *Modern Development Co. v. Navigators Ins. Co.* (2003) 111 Cal.App.4th 932, 940-944.

### 3. The Limited Exception For Damages Produced By An "Additional, Unexpected, Independent And Unforeseen Acts" Does Not Apply Here

Despite Entercom's admissions that the Contest was an intentional act, Entercom points to other alleged acts or omissions that *did not cause* Ms. Strange's death, and labels them the as "additional, unexpected, independent and unforeseen events". These alleged "events" are as follows:

1.  KDND Promotions Director, Robin Pechota Ray ("Robin Pechota"), did not research whether there were potential health risks associated with drinking water.

2.  Robin Pechota did not take action to warn the contestants that the contest was unsafe.

3.  Robin Pechota did not submit the contest to the legal department for review.

4.  No nurse or other medical professional was present for the contest.

5.  Ms. Strange did not voluntarily "drop-out" of the contest prior to consuming a fatal volume of water.

6.   Ms. Strange was encouraged to "drop out" with an offer of concert ticket, but chose to continue.

7.   Ms. Strange did not seek medical assistance after consuming a fatal volume of water.

8.   Ms. Strange's personal physiology made her susceptible to hyponatremia.

To support this argument, Entercom relies on cases explaining that the only way an accident might flow from an intentional act is if "some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. " (Entercom's motion at 16:3). This limited exception is rarely applied to create coverage and has no application here.

The exception was first articulated in *Merced,* where the court explained that the additional "unexpected happening" should be a confluence of the actions of the insured and the injured party that sued the insured. *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41. Specifically, the *Merced* court offered the following example of an "unexpected happening":

> When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury – hitting the other car- was not intended by the driver and was fortuitous. Accordingly, the occurrence resulted in injury deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury – hitting the other car – would be intentional and any resulting injury would be directly caused by the driver's intentional acts.

Entercom's motion acknowledges the *Merced* case authority, and even cites a portion of the above referenced quote. However, Entercom's motion fails to cite the last sentence of the quote. The reason for this failure is obvious. The Contest falls within the example provided by *Merced* of an intentional act which is not an occurrence.  In the underlying action, it is alleged that Ms. Strange's death was *caused by* the ingestion of excess quantities of water during the contest hosted by Entercom station KDND, not "additional, unexpected, independent and unforeseen events."

### 4.   There Are No Allegations Or Evidence Of An "Additional, Unexpected, Independent And Unforeseen Acts" Does Not Apply Here

The "additional, unexpected, independent and unforeseen event" theory has a practical

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

1   problem.  Many of the "pertinent allegations" share a common fact; namely, each precedes the

2   contest that caused Ms. Strange's death.  The failure to include safeguards when planning the

3   "Hold Your Wee for Wii" contest, while Entercom contends are non-accidental in nature, did not

4   cause the death.[2]  Instead, plaintiffs in the *Strange* action allege that the act directly responsible for

5   the injury was the ingestion of excess quantities of water during the Contest.  Thus, even if one

6   mistakenly assumes that the "additional unexpected, independent, and unforeseen" events had any

7   causative impact in relation to Ms. Strange's death, it is clear that Ms. Strange died as a result of

8   her participation in the contest Entercom designed, the latter of which would represent an

9   intervening or superseding "cause" within the meaning of *Merced, supra.*   See, e.g., *State Farm*

10  *Fire & Casualty Co. v. Eddy* (1990) 218 Cal.App.3d 958, 972.

> **5.    The Allegations And Evidence Negate Entercom's Argument That
>        Strange's Death Was Caused By An Additional, Unexpected,
>        Independent And Unforeseen Acts Does Not Apply Here**

13  Entercom argues that Ms. Pechota and KDND's lack of knowledge about the potential

14  health hazards somehow make their conduct "accidental" for purposes of the occurrence

15  definition.  In fact, plaintiffs in the *Strange* action allege that the employees of KDND were

16  informed of, witnessed, and appreciated the health risks involved in the contest. Prior to the contest

17  beginning, the "on-air" personalities discussed the death by water intoxication of a Chico State

18  University student. (Entercom motion at Exhibit 7, ¶¶ 17, 18, Cox Depo., 225:3-23 (Exhibit B),

19  Sweet Depo., 318:1-319:8 (Exhibit G).  Moreover, the station was contacted by listeners who

20  informed KDND of the risk of death. (Entercom motion at Exhibit 7, at ¶¶ 17, 18, Cox Depo.,

21  245:14-246 (Exhibit B), Sweet Depo., 282:25-284:1 (Exhibit G); Baghgei 112:6-13 (Exhibit A).

22  Finally, KDND employees actually witnessed contestants becoming physically ill. (Entercom

23  motion at Exhibit 7, ¶¶ 17, 18, Cox Depo., 282:10-11 (Exhibit B); Sweet Depo. 192:3-7 (Exhibit

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

---

[2] From the "occurrence" standpoint, the alleged failure to properly plan the contest is analogous to a business owner's failure to build his or her physical facility in compliance with ADA requirements. Entercom's contest proceeded as planned, just as the facility is built as planned.  The theory that Entercom, like the business owner, "never considered" certain matters as part of the plan is of no import on the "occurrence" analysis.  Fruition of the plan produced the harm (i.e., for Entercom, the contest; for the business owner, the physical facility), and such deliberate act is not an "occurrence." See *Modern Development Co. v. Navigators Ins. Co.* (2003) 111 Cal.App.4th 932, 940-944.

27372                                                      14

1    G); Maney Depo., 207:1-23 (Exhibit E)). The evidence in depositions taken in the *Strange* action

2    regarding contestants, other than Ms. Strange, becoming ill, contradicts Entercom's allegation that

3    Ms. Strange was unexpectedly vulnerable to hyponatremia. In fact, several contestants became ill

4    during and after the contest. (Venegas Depo., 145:5-20 (Exhibit H); Mendoza Depo., 30:12-31:1

5    (Exhibit F); Cox Depo. 282:10-11 (Exhibit B); Sweet Depo., 296:17-21 (Exhibit G); Maney Depo.

6    207:1-23 (Exhibit E); Lundgren Depo. 29:1-24; (Exhibit D)).

7    　　　　Plaintiffs in the underlying action allege the Entercom intentionally planned the contest,

8    promoted it "on-air" both before and during the events, and "created, devised, orchestrated,

9    organized, arranged and publicized each element of this contest... Defendants, and each of them,

10   determined the rules of the contest, the criteria for contest participants, the duration of the contest

11   and the contest prize. Defendants and each of them, accepted applications for the contest, and

12   screened and selected the final contestants, including decedent, Jennifer Strange." (Entercom

13   motion at Exhibit 7, ¶ 17, 18).

　　　　**C.    There Is No Ambiguity In The American Home Policy**

15   　　　　Entercom argues that because American Home's policy does not define the term

16   "accident", the policy is ambiguous and such ambiguity should be resolved in favor of Entercom.

17   This argument is without merit. Lack of a policy definition does not by itself render a term

18   ambiguous. Otherwise, every word or definition would require a further definition. (*Bay Cities*

19   *Paving and Grading v Lawyers Mutual Ins. Co.* (1993) 5 Cal.4th 854.) Unless the term "accident"

20   is otherwise defined in the policy, it is given a commonsense interpretation: i.e. an "unintentional,

21   unexpected, chance occurrence." *St. Paul Fire & Marine Ins. Co. v. Superior Court (County of*

22   *Yuba)* (1984) 161 Cal.App.3d. 1199, 1202.  California courts have confirmed the term is not

23   ambiguous. *(Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993 12 Cal.App.4th 715, 755

24   ("California law . . . equates accident with unexpected and unintended events")).

25   / / /

26   / / /

27   / / /

28

**American Home's Opposition to Plaintiffs' Motion for Summary Adjudication and Rule 56(f) Request**
**CV 07-06493 JSW**

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

### D. Entercom Is Not Entitled To A Declaration That It Can "Control" The Settlement

#### 1. Entercom Is Not Entitled To A Waiver Of The Policy Provisions.

Entercom seeks a ruling that it may take action to attempt to settle the *Strange* lawsuit on its own (with contribution from the primary carrier) and that American Home may not raise the "no voluntary payment' or "cooperation" provisions of its policy as a basis for not reimbursing Entercom for any reasonable settlement that Entercom **might** enter into in the *Strange* lawsuit.

Entercom has provided no case law to support its position that it is entitled to waive policy provisions for a prospective settlement. The cases cited by Entercom do not support the position that a carrier must waive its policy provisions when it is participating in the defense, has reserved its rights and no excess judgment or settlement has been entered. Entercom's citation to *Pruyn v Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500 confirms the insured may avoid the no voluntary payments provision only when the carrier denies coverage, the insured settles the claim and then subsequently brings an action. In *Pruyn,* the carrier denied both a defense and indemnity. In the present matter, American Home is participating in the defense and has reserved its rights. The present action is not analogous to *Pruyn* in any manner.

*Archdale v American International Specialty Lines Ins. Co.* (2007)154 Cal.App. 449, *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 245, *Kershaw v Maryland Cas. Co,* (1959) 172 Cal.App. 2d 248, *Sansom v. Transamerica Insurance Company* (1981) 30 Cal.3d 220 and *Jamestown Builders, Inc. v. General Star Indemnity Company* (1999) 77 Cal.App.4th 341, cited by Entercom, to support their position, were actions that arose **after** an excess judgment or settlement was entered.[3]

The case law cited by Entercom, at most, stands for the proposition that if Entercom settles the case it can seek contribution from American Home and, in that action, can claim the voluntary payment and cooperation clauses are waived. These cases do not stand for the proposition that Entercom can obtain a declaration on this issue prior to actual settlement of the *Strange* action.

/ / /

---

[3] Entercom also cites to *Arquilla v Int'l Ins. Co.* 1988 U.S. Dist. LEXIS 17576, 23-4 AT 23-12 (N.D. Cal., July 15, 1988). American Home has not been able to locate this case, with the given citation and case name, therefore it cannot comment on this case. Additionally, American Home cannot determine if citation to this case violates Local Rule 7.14.

27372                                                                16

1    **2.    Entercom Has Not Alleged That There Is A "Reasonable Settlement"**

2    In order to obtain the ruling they seek Entercom must prove they had an opportunity to

3    enter into a reasonable settlement. Entercom has not, nor can it, allege that there has been an

4    opportunity to settle for a "reasonable amount."

5    Liability in the underlying action is less than certain. Strange signed a liability waiver in

6    which she agreed to release several entities, including Entercom from "all claims, demands,

7    grievances, and causes of action either legal or equitable . . ." (Romeo Decl. at Exhibit M.)  The

8    contest rules provided with the waiver indicated that by signing the release, Strange acknowledged

9    that she was "physically, psychologically and medically able to participate" in the Contest. (Id. at

10    Exhibit L.)  The foregoing liability waiver and contest rules indicate a knowing participation by

11    Ms. Strange which impacts the liability issues.

12    California law provides that a defendant's liability for wrongful death is mitigated by the

13    victim's own comparative negligence. Cal. Civ. Code §1431.2. *See, Evans v. Celotex Corp.*, 194

14    Cal.App.3d 741, 238 Cal.Rptr. 259, 261 (holding, in wrongful death action, "the right to recover

15    against defendant . . . depends . . . on the liability of the defendant and the lack of comparative

16    fault of the deceased.").

17    Here, there are a number of factual allegations that Strange's own negligence may have

18    contributed to her death.  Strange's participation in the contest was voluntary and she could have

19    withdrawn from the competition at any time. (Mendoza Depo., 15:25-16:2 (Exhibit F)).  Strange

20    also knew that the winner of the contest would be the contestant who could drink the most water

21    without urinating. (Mendoza Depo., 15:13-15:21 (Exhibit F)).  Further, there are allegations that,

22    prior to the competition, Strange was warned specifically about the risk of death associated with

23    drinking large amounts of water.  During the contest, a nurse called into the radio station and

24    warned of the dangers of drinking large amounts of water. (Strange complaint ¶ 18 e.)  This

25    warning was broadcast during the Contest. (Baghaei Depo., 120:10-121:20 (Exhibit A)).  The

26    foregoing indicates that liability is not certain in the *Strange* action.

27    The liability issues have not been yet been tested by motions for summary judgment in the

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27372                                      17

**American Home's Opposition to Plaintiffs' Motion for Summary Adjudication and Rule 56(f) Request**
**CV 07-06493 JSW**

1    *Strange* action. Entercom Communications Corp. and Geary intend to file a motion for summary

2    adjudication that they have no liability because they were not involved with the contest and that

3    punitive damages are not available under any of the claims in the *Strange* lawsuit or with respect

4    to Entercom. (McCurdy Decl. at ¶ 4.)

5         Entercom's motion is focused on obtaining a ruling regarding a settlement demand that not

6    only was unreasonable, but has been superseded by a subsequent, **lower** demand. On July 12, 2007

7    plaintiffs made a settlement demand of $13M. (Entercom motion at Exhibit 14.) This demand was

8    not accepted. (Romeo Decl. at ¶ 12.) On February 14, 2008 American Home received a revised

9    settlement demand from plaintiffs' counsel in the *Strange* action. This demand is $3M **less** than the

10   first demand made by plaintiffs in the *Strange* action. (Hipwood Decl. at ¶ 5 and Exhibit J.)  The

11   fact that American Home did not pay a $13M demand, when 7 months later a demand of $10M

12   was made, is not "bad faith" entitling Entercom to waive the policy provisions.

13        American Home has not refused to discussion settlement options. As detailed in the

14   declarations of Messrs. Romeo and Hipwood, American Home has and will continue to participate

15   in any and all discussions regarding potential resolution of this matter.

16        Finally, it should be noted that the settlement demand made by plaintiffs in the *Strange*

17   action on February 11, 2008, the offer, like the prior July 2007 demand, is made to Entercom

18   Sacramento LLC, but releases claims against all defendants, including entities that are not parties

19   to this coverage action. (Hipwood Decl. at ¶ 5 and Exhibit J.)

20        Additionally, the proposed demand is as to all of the *Strange* plaintiffs claims, including

21   those for punitive damages. (Hipwood Decl. at ¶ 5 and Exhibit J). California statute and public

22   policy preclude insurers from indemnifying an insured for punitive damages or for damages

23   arising out of the insured's willful conduct. Cal. Ins. Code § 533; *PPG Industries, Inc. v.*

24   *Transamerica Ins. Co. Inc.* (1999) 20 Cal.4th 310, 314.

25   **E.    Entercom Has Not Provided Competent Evidence Which Entitles It To Relief**

26        **1.    Entercom Has Not Complied With Rule 32**

27   Entercom premises their argument for summary adjudication on evidence adduced during

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA  94025
(650) 618-3500

27372

18

**American Home's Opposition to Plaintiffs' Motion for Summary Adjudication and Rule 56(f) Request
CV 07-06493 JSW**

1  discovery in the *Strange* action. Entercom improperly maintains that this evidence is sufficient for

2  the purposes of formulating a response to their motion.  Rule 32 provides the following regarding

3  the use of deposition testimony, stating:

4         **(1) *In General.*** At a hearing or trial, all or part of a deposition may

5         be used against a party on these conditions:

6         **(A)** the party was present or represented at the taking of the

       deposition or had reasonable notice of it;
7

8         **(B)** it is used to the extent it would be admissible under the Federal

       Rules of Evidence if the deponent were present and testifying; and
9

10         **(C)** the use is allowed by Rule 32(a)(2) through (8). *See,* FRCP Rule

       32(a)(1).
11

    In relevant part, the provisions referenced in subpart (a)(1)(C), above, state:
12

13         **(8) *Deposition Taken in an Earlier Action.*** A deposition lawfully

       taken and, if required, filed in any federal- or state-court action may
14         be used in a later action involving the same subject matter between

       the same parties, or their representatives or successors in interest, to
15         the same extent as if taken in the later action. A deposition

       previously taken may also be used as allowed by the Federal Rules
16         of Evidence. *See,* FRCP Rule 32(a)(2)(8).

17      In *Hub v. Sun Valley Co., et al.* (9th Cir. 1982) 682 F.2d 776, plaintiff Hub claimed that his

18  employer fired him for an impermissible discriminatory purpose. To support this claim, Hub

19  sought to introduce deposition testimony taken in a prior state action between Hub and his

20  employer's predecessor in interest. The Court denied Hub's attempt to use the prior deposition

21  evidence on the grounds that Hub "failed to show that the deposition [evidence] relates to issues

22  common to both lawsuits." *Id.*  Under *Hub* prior deposition testimony can be used in a subsequent

23  suit involving different parties and some different issues, but it can only be used in relation to

24  issues common to both cases. *See also, Hangarter v. Provident Life and Acc. Ins. Co.* (9th Cir.

25  2004) 373 F.3d 998, 1019

26      American Home is not a party to the *Strange* action, was not present or represented at the

27  depositions that Entercom now attempts to use against American Home and had no opportunity to

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27372

19

1  cross-examine any witness.  Entercom makes no showing that the deposition evidence is being

2  used to address a common issue as between the two lawsuits. The critical issue in the present

3  action is whether or not coverage exists. Among other things, determining this issue requires an in-

4  depth investigation of the intent of the insureds, the circumstances of the actions that led to the

5  third party-decedent's death, the terms of coverage, and the positions of the responsible actors.

6  This issue is different from questions of vicarious liability and negligence, the investigation of

7  which served as the motivation for conducting the depositions that Entercom is now attempting to

8  use.

9       Rule 32 prohibits the use of the depositions from the underlying case because: (1)

10  American Home was not a party to the action nor present or represented at the depositions; and (2)

11  the issues litigated in the underlying action are not sufficiently similar to those relevant to the

12  coverage litigation to insure that the motivation for direct, cross, or re-direct examination in the

13  underlying action is the same as American Home's motivation in the present action.

14       **2.**    **The Evidence Submitted Is Not Admissible**

15       As detailed in American Home's Objections to Depositions and Declarations Submitted by

16  Plaintiffs, even if Entercom has complied with Rule 32, much of the evidence submitted is not

17  admissible pursuant to the Federal Rules of Evidence.

18       **IV.**    **CONCLUSION**

19       For all the foregoing reasons, American Home respectfully requests that the Court deny

20  Entercom's motion for summary adjudication.

21  Dated: March 7 , 2008        McCURDY & FULLER LLP

22

23                          By
                            MARY P. MCCURDY

24                              CHRISTINA M. LAVANIER
                            Attorneys for Defendant AMERICAN HOME
                            ASSURANCE COMPANY

25

26

27

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27372

**American Home's Opposition to Plaintiffs' Motion for Summary Adjudication and Rule 56(f) Request
CV 07-06493 JSW**