1   SUSAN K. SULLIVAN (SBN 156418)
    SEDGWICK, DETERT, MORAN & ARNOLD LLP
2   801 South Figueroa Street, 18th Floor
    Los Angeles, CA 90017
3   Telephone: (213)-426-6900
    Facsimile: (213) 426-6921
4   E-mail: susan.sullivan@sdma.com

5   MARY P. McCURDY (SBN 116812)
    CHRISTINA M. LAVANIER (SBN 233335)
6   McCURDY & FULLER LLP
    4300 Bohannon Drive, Suite 240
7   Menlo Park, CA 94025
    Telephone: (650) 618-3500
8   Facsimile: (650) 618-3599
    E-mail: mary.mccurdy@mccurdylawyers.com
9           christina.lavanier@mccurdylawyers.com

10  Attorneys for Defendant
    AMERICAN HOME ASSURANCE COMPANY

11

12              UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

14

15  ENTERCOM SACRAMENTO, LLC, a          CASE NO. CV 07-06493 JSW
    California Limited Liability Corporation;
16  ENTERCOM COMMUNICATIONS CORP., a     DECLARATION OF LEONARD
    Pennsylvania Corporation; and JOHN GEARY, ROMEO IN SUPPORT OF
17  an individual,                       DEFENDANT AMERICAN HOME
                                         ASSURANCE COMPANY'S
18          Plaintiffs,                  OPPOSITION TO PLAINTIFFS'
                                         MOTION FOR SUMMARY
19      v.                               ADJUDICATION AND RULE 56(f)
                                         REQUEST
20  AMERICAN HOME ASSURANCE
    COMPANY, a New York Corporation,
21
            Defendant.
22

23      I, Leonard Romeo declare:

24      1.      I am a complex director with AIG Domestic Claims, Inc. claim administrator for

25  American Home policy no. BE6849213, (hereinafter referred to as AIG Domestic Claims) issued

26  to Entercom Communications, Corp. ("Entercom")

27      2.      From January 2007 to August 2007, I was the primary person at AIG Domestic

28
    27287                          - 1 -

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

Claims responsible for handling the claims made against Entercom in the Sacramento County Superior Court lawsuit styled *Strange et al. v Entercom Sacramento, LLC,* case no. 07AS00377 ("*Strange* action").

3.    On or about January 24, 2007, I received a copy of a document entitled "'Hold Your Wee For A Wii' – Nintendo Wii Giveaway" (the "Rules").  Attached hereto as **Exhibit L** is a true and correct copy of the Rules.  Also on January 24, 2007, I received a copy of the document entitled "Release For All Claims Including Personal Injury" ("Release") which was signed by Jennifer Strange and dated January 12, 2007.  Attached hereto as **Exhibit M,** is a true and correct copy of the Release.

4.    On or about March 22, 2007 I sent a letter to Entercom advising it that AIG Domestic Claims would participate in the defense of Entercom, under a full reservation of rights.  Attached hereto as **Exhibit N** is a true and correct copy of that letter.

5.    On behalf of AIG Domestic Claims, I did not deny coverage for the *Strange* action.  Instead, I indicated that this matter was being handled under a reservation of rights.

6.    During the course of my handling the *Strange* action, John Donlevie ("Donlevie") of Entercom requested that AIG Domestic Claims participate in an attempt to obtain an early resolution of the *Strange* action.  AIG Domestic Claims agreed to participate in such efforts. I informed Donlevie of my past experience in working with plaintiffs' counsel, Roger Dreyer ("Dreyer") including in connection with a recent settlement of an unrelated action.  Based on my prior experience with Dreyer and discussions with Donlevie, Donlevie agreed that I should contact Dreyer to discuss the potential of an early resolution of the *Strange* action.

7.    I engaged Dreyer in discussions regarding potential resolution of this matter. However, as I explained to Entercom, Dreyer was not at the time prepared to engage in settlement talks, as he wanted to proceed with certain discovery, in particular the deposition of John Geary, and he was engaged in other matters. Entercom agreed that I should contact Dryer after Geary's deposition.

8.    Once I learned that Dreyer completed the contemplated discovery, I contacted

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27287

- 2 -

1   Entercom to advise that I was going to follow up with Dreyer to continue the prior discussions

2   regarding potential resolution. However, at the time, Entercom requested that I not contact Dreyer.

3   Folger Levin did not articulate a specific and meaningful reason why I should not proceed with the

4   discussions, but only that the discussions should not proceed at that time.

5       9.      Thereafter, Entercom took the position that both it and members of the Folger Levin

6   firm had to be involved in all settlement discussions with Dyer. In response, I explained that I

7   recommended continuing the preliminary discussions, as previously agreed, with Dreyer without

8   participation of Entercom's entire cast of lawyers (in-house and the Folger, Levin firm). As I

9   explained, the discussions were preliminary in nature and, as things go, would likely lead to a

10  mediation of the *Strange* action, the latter of which would involve both Entercom and members of

11  the Folger, Levin firm. However, involvement of all lawyers in the preliminary talks would, as I

12  advised, convert the talks into a liability and damage debate, and thus detract from the process.

13      10.     On July 11, 2007, in reference to the *Strange* action, I did not state that "any

14  settlement would be with 'my [American Home's] money'" and that "American Home would pay

15  '100% of any settlement'". I have never made such statements in reference to the *Strange* action.

16      11.     On July 11, 2007, I did not state that it was not my practice or "the practice of AIG

17  (including American Home) to consult with defense counsel concerning the reasonableness of any

18  settlements".

19      12.     On or about July 20, 2007, I was notified that plaintiffs in the *Strange* action had

20  issued a settlement demand to all defendants in the *Strange* action in the amount of $13M. I

21  reviewed the demand and believed it to unreasonable and thus, I did not authorize acceptance of

22  the demand.

23      13.     AIG Domestic Claims retained the law firm of Carlson, Calladine and Peterson

24  ("Carlson law firm") to participate in the defense of Entercom in the *Strange* action.

25

26      14.     At no time have I refused to discuss settlement or settlement demands with

27  Entercom.

28

27287                                   - 3 -

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

1    I declare under penalty of perjury under the laws of the State of California and the United

2    States of America that the foregoing is true and correct.

3    Executed this 7th day of March 2008, in Salt Lake City, Utah.

4

5

6                                        /S/
                                        Leonard Romeo

7    I hereby attest that I have on file all holograph signatures for any signatures indicated by a

8    "conformed" signature (/S/) within this efiled document.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27287

- 4 -

**Declaration of Leonard Romeo**
**CV 07-06493 JSW**

# EXHIBIT L

**"Hold your Wee for a Nintendo Wii "**
**Nintendo Wii Giveaway**
Valid January 8 through January 12, 2007.

To obtain a copy of these contest rules, send a self-addressed stamped envelope to: "Hold your Wee" Contest, KDND 5345 Madison Ave., Sacramento, CA 95841.

**Who Can Enter**
1. To be eligible to participate in this contest, entrants must be legal residents of California, 18 years or older with a current and valid driver's license in California.
2. Employees of Entercom Sacramento, LLC d/b/a KDND "107.9 The End" ("Station"), sister stations KRXQ, KWOD, KSSJ, KSEG, KCTC, or any other sponsors participating in this contest or entry distribution location, and their respective affiliated companies (collectively, "Sponsor") and the immediate family and household members of each are ineligible (i.e., spouses, parents, grandparents, children, grandchildren, co-habitating partners, roommates, and siblings).
3. Sponsors may require proof of age, identification, residency and/or social security number prior to delivering any prize.
4. Any person who has won a prize valued at $600.00 or more from the Station on or after November 1, 2006 will not be eligible to become a finalist in this contest.
5. Only one finalist in this contest will be eligible to participate per family and household (i.e., spouses, parents, grandparents, children, grandchildren, co-habitating partners, roommates, and siblings). The first qualified person in any family/household will be permitted to participate and any later qualified person will be disqualified.

**How to Enter**
6. **No purchase is necessary to enter.**
7. All contestants over the age of 18, and legal residents of the Sacramento metro area, wishing to participate in this contest will be encouraged to call-in to the station during "The Morning Rave" show, between the hours of 5:30 AM to 10:00 AM weekdays January 8 through 11, 2007, to enter themselves in the contest.

**How to Win**
8. On Friday, January 12, 2007, all contestants who signed up to participate in the contest will arrive at the station (5345 Madison Ave., Sacramento, CA 9584) at 6:00 AM. Contestants must wear thin shorts, a bathing suit, stretch pants or other thin clothing to prove they are not wearing an adult diaper, or any other aid, under their clothes. Upon arrival, they will be required to sign a contest participation release form, stating the contestants are participating of their own free will. **Refusal to sign this release will result in automatic disqualification (see more below).**
   This is how the contest will work: at approximately 6:30 AM, all participating contestants will be provided 8 ounces of water to drink. This will continue every 15 minutes until the contest ends. "Hold your wee" is the concept of the game, and contestants will not be able to go to the bathroom to be able to continue in this contest. Contestants can drop out of the contest at any time, and once they do, they are disqualified from winning the grand prize. The last person to be participating in this contest will be the Awarded the Nintendo Wii.
9. All qualifiers are required to sign a release form relieving the Station and Sponsors from any and all liability with respect to participation in this contest and/or the receipt and/or use of the prize during the registration process, an affidavit of eligibility and a publicity release. **Refusal to sign this release will result in automatic disqualification.**
10. **All qualifiers hereby agree to strictly follow all instructions and directions given by the Sponsor staff at the giveaway event and understand that any intentional failure to comply with the contest rules or procedures or instructions given by Sponsors at the giveaway event will result in immediate disqualification.**
11. **By entering this contest, all finalists acknowledge that such participation may be potentially hazardous, and hereby represent that he/she is physically, psychologically and medically able to participate in this activity.** Finalists assume all risks associated with participation in this contest. **Contestants also expressly consent to any physical contact that might naturally result from participation in this contest.**
12. Judges reserve the right (but do have not the obligation) to disqualify any hands-on contest participant for any reason, including, without limitation, excessive harassment of other participants, use of profanity, unhygienic habits or activities, or inappropriate touching of other participants.
13. **In no event will any "deal-making" between participants be permitted. Sponsors reserve the right to disqualify any person that it suspects has participated in or offered or accepted any type of "deal-making" with respect to this contest.**
14. In the event that a Grand Prize Winner is disqualified, for any reason, at any time, the prize will be awarded to the runner up.

**Prizes**
1 Nintendo Wii Gaming system (value: approx $250.00 retail)

30. Sponsors are not responsible for prize information or documents which are lost or misdelivered by the postal service or carrier. Sponsors are not responsible for replacing or reimbursing winners with any form of compensation for events that are canceled. All cancellations are deemed beyond the control of Sponsors. This includes, but is not limited to, event cancellations, trip schedule changes, flight cancellations, changes in travel arrangements, travel delays of any form and duration, event cancellation and delays, as well as all acts of nature, terrorism or war. Sponsors are not responsible for any expenses incurred by contest winners as a result of such cancellations.

31. Sponsors, participating retailers, and their affiliated companies and representatives (A) are not liable if the provider of any part of the prize fails to satisfy its obligations to furnish its portion of the prize (unless such party is the actual direct provider of the prize), (B) accept no responsibility or liability in connection with any injuries, losses or damages of any kind caused by or resulting from the acceptance, possession or use of any prize awarded hereunder, and (C) cannot be held liable for any lost or stolen entries, prizes or contest information.

22. The winner of this contest will be ineligible to enter any Sponsor contest for thirty days thereafter.

23. The winner may be required to show picture identification to claim the prize and to evidence proof of age, identification, and/or residency. Sponsors reserve the right to require and examine additional identification and may choose to accept or deny awarding the prize based on the identification presented.

27. There will be no substitutions or cash alternatives for prizes except at the sole discretion of Sponsors. Sponsors maintain the right to substitute a prize of similar value. No transfer or assignment of the prize is allowed.

28. The winner is responsible for paying all local, county, state and federal taxes on the prize based on the estimated retail value of the prize as set forth in these rules and will receive an IRS form 1099 for the value of all prizes received.

**Odds of Winning**

32. The odds of winning are based upon the number of entrants and shall be based on skill, not chance.

**Other Rules**

33. Sponsors are not liable if the provider of any part of the prize fails to satisfy its obligations to furnish its portion of the prize (as long as such Sponsor is not the ultimate provider of the prize). Sponsors accept no responsibility or liability, and by participating in this contest all entrants hereby release Sponsors from any responsibility or liability, in connection with any injuries, losses or damages of any kind caused by or resulting from (a) participation in the contest, (b) the acceptance, possession and/or use of any prize awarded hereunder and/or (c) any other issues that may arise due to or arising from this contest.

34. **By submitting an entry form, the entrant grants the Station, and participating sponsors, permission to use entrant's name, likeness, biographic information, photograph and voice for advertising and/or promotion purposes without notice or additional compensation (except where prohibited by law) and agrees, without additional compensation, to appear for any presentation or other activity which may include filming/audio/video/electronic or other recordings and/or interviews, as may be determined from time to time by the Sponsors.**

35. Station shall be the sole arbiters in all matters relating to the contest and the interpretation of the contest rules. Station reserves the right to change, alter or modify these rules at any time with or without written notice. Sponsors reserve the right to end or stop any contest at any time and for any reason.

36. Entry into this contests constitutes agreement by contestant to abide by these rules.

37. A copy of these complete contest rules are available at the Station studios at 5345 Madison Avenue, Sacramento, CA 95841 "Attention: "Hold your Wee Contest." Winner lists will be available after January 13, 2007 through March 31, 2007 by sending a self-addressed stamped envelope to the Station address "Attention: Give My Right Arm Winners List." This contest is subject to all applicable federal, state, local and municipal laws and regulations and is void where prohibited.

# EXHIBIT M

Entercom Sacramento

5345 Madison Avenue
Sacramento, CA 95841
Tel: 916.334.7777
Fax: 916.339.4292

## Release For All Claims Including Personal Injury

In consideration of goods and valuable consideration received and to be received, I, my heirs, assignees, legal representatives, or any other party having the capacity to represent me, do hereby release Entercom Inc.  KDND, KRXQ, KSEG, KCTC, KSSJ, KWOD, it's subsidiaries, franchises, agents, officers, directors, employees, and all other parties in interest from all claims, demands, grievances, and causes of action either legal or equitable, including but not limited to, all damages of any kind incurred by myself or by others to me for the duration outlined herein and that I am unable to amend the aforementioned arrangements, in part or in full.

**Prize:** _____

I have read and understand this agreement.

Name: JENNIFER STRANGE

Address: 3641 ASTRAL DR

City: SACRAMENTO      State: CA      Zip: 95827

Date of Birth: 10/23/78

Phone # Work: 916-955-1734      Home: 916-370-0904

Effective this date(s): 0/12/07

Signature: *Jennifer Strange*

Or Signature of authorized agent/legal guardian: _____

# EXHIBIT N



**Domestic Claims, Inc.**
**P & C Severity Claims**
**Excess Claims**

175 Water Street, 22nd Floor
New York, New York 10038
212.458.5747 (Phone)
866.833.8968 (Fax)
leonard.romeo@aig.com (e-mail)

March 22, 2007

<u>VIA EMAIL AND U.S. MAIL</u>
Entercom Communications Corporation
401 E. City Line avenue, Suite 809
Bala Cynwyd, PA 19004-1122

Attn: John C. Donlevie
Executive Vice President

Re:     *William A. Strange, et al. v. Entercom Sacramento, LLC, et al.,*
        Sacramento County Superior Court
        Named Insured:      Entercom Communications Corp.
        Policy No.:          BE 6849213

Dear Mr. Donleve:

AIG Domestic Claims, Inc. ("AIGDC") is the claims administrator for American Home Assurance Company ("American Home"), which issued to Entercom Communications, Corp. ("Entercom") a Commercial Umbrella policy under no. BE 6849213 for the period of March 7, 2006 to March 7, 2007.

We received Entercom's tender of the entitled action, *William A. Strange, et al. v. Entercom Sacramento, LLC, et al.,* Sacramento County Superior Court ("*Strange* Action"). We also understand Entercom advised Vigilant Insurance Company ("Vigilant") of the *Strange* Action. Vigilant issued to Entercom a Commercial General Liability policy under number 3579-67-25 PHL for the period of March 7, 2006 to March 7, 2007. The Vigilant policy has a $1 million per "occurrence" limit, and we understand that Vigilant has extended a defense in the *Strange* Action to Entercom and the individual defendant employees and officers under the terms of the Vigilant policy.

We reviewed the Complaint filed in the *Strange* Action as well as additional material. Based on the material reviewed, we are writing to advise Entercom that American Home is handling the *Strange* Action under a reservation of rights under the policy and law. The basis for and nature of the reservation of rights is set forth below.

<u>BACKGROUND</u>

The *Strange* Action was filed on or about January 25, 2007, and arises out of the death of Jennifer Strange on January 12, 2007 following her participation in the "on-air radio contest known as 'Hold your Wee for a Wii'" ("contest") held by "KDND 107.9 The End". Ms. Strange and other participants in the contest competed to win a Nintendo Wii video game. It is alleged in

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 2

the Complaint that the "winner of the contest was selected based on which contestant could consume the most water in a three-hour period without urinating."

The named defendants are Entercom Sacramento, LLC, Entercom Communications Corp.,[1] John Geary, Steve Weed, Robin Pechota, Liz Diaz, Adam Cox, Steve Maney, Patricia Sweet and Matt Carter. The *Strange* Action alleges that John Geary, Steve Weed, Robin Pechota and Liz Diaz are "employed by and officers, directors or managing agents of Entercom", and the Complaint characterizes these individuals collectively as "Managing Agents". It is further alleged that Adam Cox, Steve Maney, Patricia Sweet and Matt Carter were "at all times employees" of Entercom, and are labeled in the Complaint as "The Talent" that allegedly performed the radio program called the "Morning Rave" on which the contest was aired.

The *Strange* Action alleges that "The Talent solicited" listeners to participate in the contest. The Complaint further asserts that "Defendants, and each of them, created, devised, orchestrated, organized, arranged and publicized" the contest, including "the rules of the contest". It is also alleged that "[a]t all relevant times preceding the contest, Defendants were aware that the consumption of water to such an extent could result in physical injury or death", and that the "Defendants were specifically informed before and/or during the contest that the contestants were subject to the risk of serious illness and/or death as a result of their participation."

The Complaint asserts that Entercom and "Managing Agents" "ratified, adopted or approved" the "despicable conduct of The Talent", and "further ratified the following conduct and on-air comments made by The Talent on January 12, 2007:

a.      it is possible to die from 'water poisoning';

b.      references to the Chico hazing incident;

c.      admissions that The Talent should have 'researched water intoxication before conducting the contest';

d.      contestants would be 'out of the contest' if they vomited, which would occur 'if this gets dangerous';

e.      when a nurse called in to complain on-air that drinking excess water would result in illness and possible death, The Talent responded, 'Yeah, we're aware of that,' and 'Yeah, they signed releases so we're not responsible so it's okay,' and 'if they get to the point where they have to throw up then they are out of the game before they die so that's good, right?' The Talent then sarcastically thanked the nurse for 'looking out for us';

f.      joking references to whether anyone was dying in the contestants' room;

---

[1] Unless otherwise noted, Entercom Sacramento, LLC and Entercom Communications Corp. will be collectively referred to hereinafter as "Entercom".

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 3

   g.    joking/laughing references to 'we've got a guy just about to die,' and that the Talent should 'make sure he signs a release';

   h.    joking/sarcastic references to bringing in a stretcher for one of the contestants;

   i.    joking/sarcastic references to insurance in the context of reports that contestants were feeling ill;

   j.    mocking references to the decedent's distended abdomen from excess water consumption, making her look pregnant, which The Talent declared was amusing;

   k.    sardonic expressions of mock sympathy with the decedent, when she complained on-air that she was feeling ill;

   l.    comments to the decedent that 'This is what it feels like when you're drowning'; and

   m.    mocking comments to decedent to 'get you out of your misery' by offering her a second prize of tickets to a Justin Timberlake concert.

Based on the foregoing and additional alleged acts and omissions, the Complaint alleges causes of action for wrongful death, negligence and intentional/reckless conduct, and seeks compensatory and punitive damages.

AIGDC also understands that the Federal Communication Commission ("FCC"), through a January 31, 2007 letter, advised Entercom that it is presently investigating whether, in conducting the contest, Entercom violated "its basic public interest obligations as a Commission licensee." In particular, the FCC is "investigating allegations that the Licensee may have conducted a contest that imposed a health risk on the contestants and ultimately led to the death of Jennifer Lea Strange."

## POLICY LANGUAGE

American Home issued Policy No. BE 6849213 to Entercom Communications, Corp, for the period March 7, 2006 to March 7, 2007. The policy has a $25 million "Each Occurrence" and "General Aggregate" limit, with a $10,000 "SELF-INSURED RETENTION" "Each Occurrence."

I.    **INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY**

   A.    We will pay behalf of the Insured those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage or Personal Injury and Advertising Injury** to which this insurance applies or because of

March 22, 2007
Page 4

**Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.[2]

The amount will pay for damage is limited as described in Section IV. Limits of Insurance.

B.    This insurance applies, only if:

1.    the **Bodily Injury** ... is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** ... occurs during the **Policy Period**;

. . .

E.    Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

\*      \*      \*

## III.    DEFENSE PROVISIONS

A.    We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** ... covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1.    [Amended by Endorsement] the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2.    the damages sought because of **Bodily Injury** ... would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

---

[2] We are not aware of any allegations potentially implicating the "**Property Damage**" or "**Personal Injury and Advertising Injury**" coverages of the American Home policy, and thus will not address these coverages in the balance of this communication. However, should Entercom disagree and contend one or more of these coverages are implicated by the claims alleged in the *Strange* Action, please contact the undersigned.

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 5

    B.    We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury . . .** to which this insurance does not apply.

    . . .

    D.    Except as provided in Paragraph A above, we will have no duty to defend any **Suit** against the **Insured.** We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

                  *    *    *

**IV.**    **LIMITS OF INSURANCE**

    A.    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

        1.    **Insureds**;

        2.    claims made or **Suits** brought;

        3.    persons or organizations making claims or bringing **Suits**; or

        4.    coverages provided under this policy.

    B.    The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under this policy.

    . . .

    F.    [Amended by Endorsement] This policy applies only in excess of the **Retained Limit.** If, however, the policy shown in **Schedule of Underlying Insurance** forming a part of this policy has a limit of insurance:

        1.    greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

        2.    less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

    G.    [Amended by Endorsement] If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total

March 22, 2007
Page 6

applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1.  in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2.  in the event of exhaustion, continue in force as underlying insurance.

. . .

M.  We will not make any payment under this policy unless and until:

1.  [Amended by Endorsement] the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** have been exhausted by the payment of **Loss**; or

2.  the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

\*       \*       \*

VI.  **CONDITIONS**

. . .

G.  **Duties in the Event of an Occurrence, Claim or Suit**

. . .

3.  You and any other involved **Insured** must:

a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

b.  authorize us to obtain records and other information;

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 7

      c.      cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

      d.      assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

    4.      No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

              *     *     *

## VII.   DEFINITIONS

. . .

C.     [Amended By Endorsement] **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death or mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

. . .

M.     **Insured** means:

    1.      the **Named Insured**;

   . . .

    2.      if you are designated in the declarations as:

       . . .

      d.      an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

   . . .

    3.      your employees other than executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 8

scope of their employment by you or while performing duties related to the conduct of your business;

. . .

Notwithstanding any of the above:

. . .

    b.    no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

P.    [Amended by Endorsement] **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

R.    [Amended by Endorsement] **Named Insured** means:

    1.    any person or organization designated in Item 1. of the Declarations;

    2.    as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%), provided that coverage provided to such organization under this paragraph does not apply to **Bodily Injury** . . . caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

. . .

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**. If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured** under the highest applicable limit of **Scheduled Underlying Insurance**.

S.    **Occurrence** means:

March 22, 2007
Page 9

    1.     as respects **Bodily Injury** . . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions.     All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**

   . . .

T.     [Amended by Endorsement] **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

    However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

   . . .

Z.     **Retained Limit** means:

    1.     the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

    2.     the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA.     **Scheduled Underlying Insurance** means:

    1.     the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

    2.     automatically any renewal or replacement of any policy in Paragraph 1 above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

    **Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

## RESERVATION OF RIGHTS

As a preliminary matter, the American Home policy is not implicated, if at all, unless and until the applicable limits of all "**Scheduled Underlying Insurance**" and "**Other Insurance**" are

Services Provided by Members of
American International Group, Inc.

March 22, 2007
Page 10

exhausted by the payment of claims covered under the American Home policy. In this regard, the Vigilant policy issued to Entercom represents "**Scheduled Underlying Insurance**" within the meaning of the American Home policy. "**Other Insurance**" is defined in the American Home policy as including any "valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy." Thus, to the extent the American Home policy applies to Entercom's potential liability in the *Strange* Action, any other liability policy or policies providing coverage to Entercom would represent "**Other Insurance**" unless specifically purchased to be excess to the American Home policy.

The American Home policy defines "**Named Insured**" to include any organization in which Entercom Communications Corp. "maintain[ed] an interest of more than fifty percent" prior to the "inception date of this policy." To the extent Entercom Communications Corp. held such interest in Entercom Sacramento LLC prior to the "inception date of this policy," Entercom Sacramento LLC would also qualify as a "**Named Insured**" under the American Home policy. We further understand Entercom Sacramento LLC qualifies as an insured under the Vigilant policy.

The "**INSURING AGREEMENT**" language of the American Home policy requires, as applicable here, "**Bodily Injury**" to be caused by an "**Occurrence**" as these terms are defined in the policy. Thus, to the extent the allegations of the *Strange* action fail to satisfy the "**INSURING AGREEMENT**" of the policy, no coverage is provided.

The Complaint seeks an award of punitive damages. California Insurance Code § 533, which is deemed an implied exclusion, prohibits insurers from indemnifying an award of punitive damages. Thus, there is no coverage under the American Home policy for an award of punitive damage.

*    *    *

The foregoing is intended to address the issues known by American Home to date. Be advised, however, that since American Home is continuing to investigate the *Strange* Action, it reserves the right under the policy and the law to supplement this communication. Thus, nothing set forth herein should be interpreted as a relinquishment or waiver of any defense or other right which American Home may have with respect to this matter, whether specifically referenced herein or not. No action or inaction by American Home should be interpreted as an admission or concession that the policy provides coverage.

American Home reserves the right to file an action for declaratory relief to determine its rights and duties under the policy. Additionally, in the event American Home is obligated under the policy to afford a defense to any insured, American Home reserves the right to seek recovery of all defense costs incurred or, alternatively, to seek recovery for that portion of defense cost attributable to the defense of non-covered claims. In the event American Home contributes to the settlement of the *Strange* action or to the satisfaction of any judgment rendered in that action, such contribution or contributions are subject to all of the reservations of rights set forth in this communication unless such reservations are expressly waived, in writing, by American Home or AIGDC. In this regard, American Home specifically reserves the right to recover all or part of any sums paid on behalf of any insured in settlement or satisfaction of a judgment. Alternatively, in the event a settlement involves both covered and non-covered claims, American Home reserves the right to have any such settlement apportioned between covered and non-covered claims and/or to seek recovery of sums paid on behalf of any insured to settle non-covered claims. In the event the case is not resolved by settlement but instead proceeds to

March 22, 2007
Page 11

judgment and American Home pays sums in complete or partial satisfaction of the judgment, American Home similarly reserves the right to have any such indemnity payments apportioned between covered and non-covered claims and/or to seek recovery of any such indemnity payments attributable to non-covered claims.

As noted, American Home has no duty to defend any "**Insured**", thus including any "**Named Insured**" in the *Strange* action unless and until the applicable limits of all "**Scheduled Underlying Insurance**" and "**Other Insurance**" are properly exhausted. However, American Home is entitled under the policy and the law to "to participate in the defense of any Suit and the investigation of any claim to which this policy may apply." To that end, AIGDC, on behalf of American Home, has retained the firm of Carlson, Calladine & Peterson, LLP, to participate in the defense of the *Strange* Action on behalf of Entercom and John Geary.

On behalf of American Home, AIGDC acknowledges Entercom's cooperation in regard to the investigation of the *Strange* Action. In that regard, we request Entercom continue to forward documentation germane to the *Strange* Action, including discovery, pleadings, correspondence and other material.

To the extent Entercom has any questions relating to this communication, or wishes to discuss the matter in general, please feel free to call the undersigned. Furthermore, if Entercom disagrees with any of the statements and/or information contained in this communication, please feel free to contact me.

Very truly yours,

Leonard J. Romeo
Excess Specialty Claims

cc:  Brian Block *via email*