FOLGER LEVIN & KAHN LLP
Michael A. Kahn (CSB No. 057432, mkahn@flk.com)
Douglas W. Sullivan (CSB No. 088136, dsullivan@flk.com)
David P. Barton (CSB No. 221549, dbarton@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Plaintiffs ENTERCOM SACRAMENTO, LLC, ENTERCOM COMMUNICATIONS CORP., and JOHN GEARY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ENTERCOM SACRAMENTO, LLC, a California Limited Liability Corporation; ENTERCOM COMMUNICATIONS CORP., a Pennsylvania Corporation; JOHN GEARY, an individual; and on behalf of themselves and all other persons and entities similarly situated,

Plaintiffs,

v.

AMERICAN HOME ASSURANCE COMPANY, a New York Corporation,

Defendant.

Case No. CV 07 6493 JSW

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION OF ISSUES WITHOUT CONTROVERSY IN THE FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF**

Date: April 25, 2008
Time: 9:00 a.m.
Courtroom: 2, 17th Floor
Judge: Honorable Jeffrey S. White

Complaint Filed December 28, 2007

# TABLE OF CONTENTS

Page

I. AMERICAN HOME'S OPPOSITION DOES NOT ADDRESS – LET ALONE DISPUTE – NUMEROUS MATERIAL FACTS .......... 1

II. AMERICAN HOME'S FIVE LEGAL ARGUMENTS ARE WITHOUT MERIT .......... 3

A. The Entercom Parties Have Established A Ripe Claim For Declaratory Relief And This Action Is Not Premature .......... 3

B. The Entercom Parties' Motion For Summary Adjudication Is Not Premature; To The Contrary, American Home Has Long Had Access To All Relevant Information Related To This Dispute .......... 6

C. The Undisputed Evidence Establishes That The Tragic Death Of Jennifer Strange Is An "Occurrence" Covered By The AIG Excess Policy .......... 7

1. Many "Aspect[s] In The Causal Series Of Events" Leading To Ms. Strange's Death Were "Unintended" By Entercom .......... 7

2. The Allegedly Intentional Acts Were Not "Inherently Wrongful," And Thus Coverage Is Established .......... 10

D. The Undisputed Evidence Establishes That American Home Denied Coverage And Further Breached Its Obligations, Thus Entitling The Entercom Parties To Attempt To Settle The Strange Lawsuit .......... 11

E. American Home's Argument Regarding Federal Rule Of Civil Procedure 32 Is Without Merit .......... 13

## TABLE OF AUTHORITIES

Page

### CASES

*Allen v. Allstate Ins. Co.,* 656 F.2d 487 (9th Cir. 1981) ..... 12

*Archdale v. American International Speciality Lines Ins. Co.* 154 Cal. App. 4th 449 (2007) ..... 12

*Canadian Ins. Co. of Cal. v. Rusty's Island Chip Co.* 36 Cal. App. 4th 491 (1995) ..... 10

*Collins v. American Empire Ins. Co.* 21 Cal. App. 4th 787 (1994) ..... 8

*Crisci v. Security Ins. Co.* 66 Cal. 2d 425 ..... 6

*Critz v. Farmers Ins. Group, 230 Cal. App.* 2d 788 (1964) ..... 6

*Hamilton v. Maryland Cas. Co.* 27 Cal. 4th 718 (2002) ..... 4

*Hangarter v. Provident Life & Accidental Insurance Co.* 373 F.3d 998 (9th Cir. 2004) ..... 15

*Hoover v. Switlik Parachute Co.* 663 F.2d 964 (1981) ..... 14

*Hub v. Sun Valley Co.* 682 F.2d 776 (9th Cir. 1982) ..... 15

*Jafari v. EMI Ins. Cos.* 155 Cal. App. 4th 855 (2007) ..... 1, 6, 8, 11

*Jamestown Builders, Inc. v. General Star Indemnity Co.* 77 Cal. App. 4th 341 (1999) ..... 11

*Lenscrafters, Inc. v. Liberty Mutual Fire Ins. Co.* 2008 WL 410243 (N.D. Cal. 2008) ..... 4

*Lockheed Corp. v. Continental Ins. Co.* 134 Cal. App. 4th 187 (2006) ..... 3, 13

*Ludgate Ins. Co. Ltd v. Lockheed Martin Corp.* 82 Cal. App. 4th 592 (2000) ..... 3

*Marie Y v. General Star Indemnity Co.* 110 Cal. App. 4th 928 (2003) ..... 15

*Mariscal v. Old Republic Life Ins. Co.* 42 Cal. App. 4th 1617 (1996) ..... 7, 12

*Merced Mutual Ins. Co v. Mendez* 213 Cal. App. 3d 41 (1980) ..... 8

*Samson v. Transamerica Ins. Co.* 30 Cal. 3d 220 (1981) ..... 4, 11, 12, 13

*Scottsdale Ins. Co. v. Homestead land Development Co.*

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

145 F.R.D. 523 (N.D. Cal. 1992)........................................................................................ *15*

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*
12 Cal. App. 4th 715 (1993)........................................................................................ 10

*Soceite de Conditionnement en Aluminum v. Hunter Engineering*
655 F.2d 938 (9th Cir. 1981)........................................................................................ 5

*State of California v. Campbell*
138 F.3d 772 (9th Cir. 1998)........................................................................................ 7

*White v. Western Title Ins. Co.*
40 Cal. 3d 870 (1985) ........................................................................................ 0, 12

**TREATISES**

1 Witkin California Evidence,
Hearsay §§ 31-32 (4th Ed. 2000) ........................................................................................ 14

Fed. R. Civ. Proc. 32. ........................................................................................ 14

Federal Rules of Evidence Manual
§ 801.02[1][f] (9th ed. 2006)........................................................................................ 14

## I. AMERICAN HOME'S OPPOSITION DOES NOT ADDRESS – LET ALONE DISPUTE – NUMEROUS MATERIAL FACTS

In their opening papers, the Entercom Parties presented evidence establishing (a) that there were a number of unintended "aspects in the causal series of events" (*Jafari v. EMI Ins. Cos.*, 155 Cal. App. 4th 855, 899 (2007)) leading to the tragic death of Ms. Strange, such that the American Home Excess Policy (like the Chubb primary policy) affords coverage; (b) that American Home refused to respond to a Settlement Demand in the *Strange* lawsuit prior to the expiration of that Demand; (c) that after the expiration of the Demand, Patrick Fredette (whom American Home identified as its "coverage counsel") denied that the Excess Policy covered the *Strange* lawsuit and advised that American Home would not even attempt to settle the case; and (d) that Mr. Fredette simultaneously took the position that the Entercom Parties could not attempt to settle the case without violating the "no voluntary payment" provision in the Policy.

American Home's Opposition is more interesting for what it does <u>not</u> dispute than what it purports to dispute. Although the Opposition is predicated on the argument that no ripe controversy exists because American Home allegedly did not deny coverage or refuse to take action to attempt to settle the *Strange* lawsuit, the Opposition Papers never address the statements made by American Home's coverage counsel, Mr. Fredette. In fact, the Opposition Papers <u>never even mention Mr. Fredette</u> or his letters (Exs. 14-15), let alone dispute that Mr. Fredette denied coverage, advised that American Home would not attempt to settle the case, and simultaneously asserted that the Entercom Parties were not entitled to attempt to settle the case. American Home has simply ignored these material facts, and thus the requested declaratory relief should be granted. Among the facts that American Home does not dispute are the following:

- That American Home received a copy of the July 12, 2007 Settlement Demand, which expressly provided that that the demand was open for 30 days. (Ex. 13.)
- That American Home received several requests from the Entercom Parties to acknowledge and respond to the demand. (Ex. 1, ¶¶ 14-16.)
- That prior to the expiration of the Settlement Demand, American Home <u>never</u> responded to the Settlement Demand or contacted the Entercom Parties to discuss the Settlement Demand. (Ex. 1, ¶¶ 14-18.)

- That on August 17, 2007, after the expiration of the Settlement Demand, American Home's "coverage counsel," Mr. Fredette, wrote a letter (Ex. 14) explaining that American Home's refusal to respond was based solely on its position that the allegations in the *Strange* Complaint did not constitute an "occurrence" so as to give rise to coverage. (In that letter, the Entercom Parties were directed to communicate solely with Mr. Fredette regarding coverage.)

- That in subsequent communications with the Entercom Parties, Mr. Fredette again advised that American Home would not "take action on its own to settle the *Strange* lawsuit," based solely on its no coverage decision (Ex. 1, ¶ 20.)

- That Mr. Fredette further stated that the Entercom Parties could not attempt to settle the case on their own without running afoul of the "no voluntary payments" provision in the Excess Policy. (*Id.*)

- That the "investigation" conducted by Mr. Fredette consisted solely of a selective review of the allegations of the Complaint, and that Mr. Fredette's August 17, 2007 letter did not give at least as much consideration to the interest of the Entercom Parties as it did to American Home's self-interest. (Ex. 14.)

- That American Home's August 17, 2007 letter expressly acknowledged that the Entercom parties "clearly did not intend any harm." (*Id.*, p. 2.)

- That American Home's reservation of rights letter (Ex. 12) did not reserve any rights based on the exclusion in the Policy for "expected or intended" harm, and thus American Home has waived arguments based on that exclusion.

- That the coroner's report (Ex. 10) concluded that Ms. Strange's death was caused by hypernotremia, a complicated medical condition, resulting from Ms. Strange's own particular physical traits. (Ex. 4.)

- That Entercom Sacramento, LLC's employees, as laypersons without any understanding of hypernotremia, did not investigate potential health risks, did not submit the contest to the legal department for review, did not arrange for the presence of medical personnel, and did not suggest that Ms. Strange obtain medical attention after the contest. (Ex. 3; Ex. 20; Ex. 17, 106:15-21, 142:16-143:2, 144:12-16, 145:3-8, 268:20-24.)

- That as part of the contest, Ms. Strange received concert tickets for that evening, and one of the employees made arrangements to meet her at the concert that evening. (Ex. 20, pp. 3314:14-316:10.)

- That the primary carrier, Chubb, whose policy affords the same coverage as the Excess Policy, assumed defense of the *Strange* lawsuit without reserving rights and agreed to contribute its $1 million policy towards settlement. (Ex. 1, ¶¶ 9, 15.)

Rather, than deny these material, undisputed facts, American Home's Opposition Brief attempts to divert attention to other, irrelevant issues. To cite just one example, American Home

mentions in passing a District Attorney investigation regarding the contest, but fails to note that the DA issued a report stating that Ms. Strange "evidenced no symptoms which would lead a reasonable person to conclude that she was seriously ill or in danger of dying," and that the "facts and circumstances of this ill-fated event do not support the filing of criminal charges against the radio station." (Sullivan Reply Decl., Ex. 1.) Notwithstanding American Home's references to this, and other irrelevant issues, the undisputed material facts establish coverage under the Excess Policy, and that the Entercom Parties' are entitled to attempt to settle the case on their own.

## II. AMERICAN HOME'S FIVE LEGAL ARGUMENTS ARE WITHOUT MERIT

### A. The Entercom Parties Have Established A Ripe Claim For Declaratory Relief And This Action Is Not Premature.

American Home first argues that the declaratory relief claim is premature, and will not be ripe until an excess judgment or settlement has been entered in the *Strange* case. (Opp. Brief, at 4:21-23.) The assertion that the Court is without power to adjudicate the parties' contractual rights is contrary to applicable law and should be rejected for the following six reasons:

First, under California law, a declaratory relief action seeking adjudication of rights under an insurance policy is ripe as soon as an actual dispute has arisen, even if no final judgment or settlement of the underlying case has occurred. For example, in *Lockheed Corp. v. Continental Ins. Co.*, 134 Cal. App. 4th 187 (2006), the insured sought a declaration that certain pending claims by third parties were covered by excess insurance policies. The excess insurers filed demurrers, contending that no present controversy existed, because the plaintiffs "did not adequately allege actual exhaustion of the primary policies. . ., which it would have to do in order to reach the excess policies." *Id.* at 219. The Court of Appeal rejected this argument, holding that it was "unnecessary and improper for the excess insurer to insist that [the insured] plead exhaustion in order to state a cause of action for declaratory relief:"

> It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a contract and requests that the rights and duties be adjudged.

*Id.* at 221; *see Ludgate Ins. Co. Ltd v. Lockheed Martin Corp.*, 82 Cal. App. 4th 592, 606 (2000).

Here, a ripe dispute regarding the parties' rights under the Excess Policy exists. Indeed, the undisputed evidence establishes that American Home's coverage counsel, Mr. Fredette, repeatedly denied coverage, and refused to even respond to a Settlement Demand or pursue settlement on that basis. (*See e.g.,* Ex. 1, ¶¶ 17-20.) Furthermore, a separate ripe dispute exists regarding whether the "no voluntary payment" provision in the Excess Policy remains applicable, in light of American Home's breaches of its duties and Mr. Fredette's undisputed statements. *See id.; see also Samson v. Transamerica Ins. Co.*, 30 Cal. 3d 220, 238 (1981) ("if an insurer denies coverage to the insured, the insured's contractual obligation to notify the insurer ceases").

Second, the cases cited by Plaintiffs are inapplicable because they do not address claims seeking a declaration of the parties' rights and duties under an insurance contract. American Home incorrectly suggests that *Lenscrafters, Inc. v. Liberty Mutual Fire Ins. Co.*, 2008 WL 410243 (N.D. Cal. 2008) involved a motion to dismiss a "declaratory relief" claim. (Opp. Brief, at 4.) In fact, the *Lenscrafters* decision did not address the insured's claim for declaratory relief, and the insurer specifically acknowledged that it was only requesting that the court "dismiss LensCrafters' claims of breach and permit this case to continue as the declaratory relief action it is." (*See* U.S. Fire Ins. Mot. to Dismiss, at 1:16-18) (emphasis added.)[1] The other case cited by American Home, *Hamilton v. Maryland Cas. Co*, 27 Cal. 4th 718 (2002), similarly did not involve an action for declaratory relief, but instead a claim for damages for breach of contract. In *Hamilton*, unlike this case, an insurer actually accepted coverage without reservation of rights and unsuccessfully attempted to settle the case. *Id.* at 723. Despite the fact that the insurer had accepted coverage and made efforts to settle the case, the insured entered into a settlement with the plaintiff in the underlying case (without the insurer's involvement) and then assigned claims against the insurer to the plaintiff. Not surprisingly, the court held that the plaintiff could not recover from the insurer, but further stated that where, as here, there is "a denial of coverage," the policyholder is entitled "to make a reasonable non-collusive settlement without the insurer's

[1] The Entercom Parties request that the Court take judicial notice of the motion filed in the *LensCrafters* case. *See* Exhibit 1 to Request for Judicial Notice, filed concurrently herewith.

consent and to seek reimbursement of the settlement amount." *Id.* at 728.[2]

Third, American Home's arguments concerning the ripeness of a claim for "indemnity" are irrelevant. (*See* Brief, at 5.) The motion does not seek indemnity, but rather declarations that (1) there is coverage for the *Strange* lawsuit under the Excess Policy, and (2) the Entercom Parties have a right to attempt to settle the *Strange* lawsuit notwithstanding the "no voluntary payment" provision in the Policy. (Complaint, ¶¶ 62-66.) Such declaratory relief is authorized even where no judgment or settlement has been entered. *See Lockheed*, 134 Cal. App. 4th at 221.

Fourth, American Home's contention that a declaratory relief order could conceivably result in a ruling that is "inconsistent" with the *Strange* action is without support. American Home does not identify any potential inconsistency that would result from a judgment in the *Strange* lawsuit, except to speculate that the jury could conceivably award punitive damages, and to ask whether Entercom would "then contend it is entitled to coverage for punitive damages." (Opp. Brief, at 6:8-13.) However, the Entercom Parties have already conceded that there is no coverage for punitive damages, and have specifically carved out of the requested declaration any punitive damages amounts. (*See* Mot. at 4:10-13) (requesting declaration of coverage "exclusive of any punitive damages"). Moreover, as noted in footnote 2 of the Entercom Parties' Opening Brief, American Home is fully aware that, under the law, punitive damages are not available in the *Strange* lawsuit. Punitive damages are not recoverable for the wrongful death claim because there has been no criminal conviction and the DA has already closed her investigation into this matter. Similarly, punitive damages are not recoverable as part of the survivor action claims, because, *inter alia,* Ms. Strange did not incur any economic damage prior to her death and there was any involvement of an officer, director, or managing agent in the contest, a prerequisite for punitive damages.

Furthermore, American Home has not and cannot point to any potential verdict on any of the causes of action in the underlying *Strange* lawsuit that would be inconsistent with, or

---

[2] American Home also cites *Soceite de Conditionnement en Aluminum v. Hunter Engineering*, 655 F.2d 938 (9th Cir. 1981). However, that case involved a patent dispute, not rights and duties under an insurance policy.

otherwise affect, the declarations that the Entercom Parties seek. In particular, the jury will not be asked to decide the precise questions at issue in this case, including whether "any aspect in the causal series of events leading to the injury or damage" was unintended, the critical issue for determining the existence of coverage. *See* Section II.C (citing *Jafari*, 155 Cal. App. 4th at 899).

Fifth, American Home's position would mean that the declaratory relief claim would never be ripe. While the Entercom Parties "seek declarations concerning their right to try to settle the *Strange* lawsuit" (Complaint, ¶ 65), American Home contends that no declaration may be issued until the underlying *Strange* action has been fully resolved. But, of course, by the time the underlying action has been resolved, there will be no need for a declaration regarding any right to settle. In addition, American Home's position (if accepted) would severely prejudice the Entercom Parties: in the event that the Entercom parties were ultimately held liable in the *Strange* lawsuit (but there was no declaration of American Home's obligations), then Entercom would have to try to find funding for the judgment or risk execution against operating assets, and only then pursue recovery against American Home.

Sixth, American Home's position is contrary to California public policy, which encourages settlement of disputes. *See e.g., Critz v. Farmers Ins. Group*, 230 Cal. App. 2d 788, 800-01 (1964) (disapproved on other grounds *Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 433). Indeed, American Home's position not only undermines the rights of the Entercom Parties, but also the interests of the plaintiffs in the *Strange* lawsuit, who – whatever the strength of their claims against the Entercom Parties – have undeniably suffered a tragic loss.

**B. The Entercom Parties' Motion For Summary Adjudication Is Not Premature; To The Contrary, American Home Has Long Had Access To All Relevant Information Related To This Dispute.**

American Home renews its argument (previously rejected by the Court in denying the motion for an administrative order) that resolution of this motion should be delayed until additional discovery can be conducted. This request should be rejected for three reasons:

First, the *Strange* lawsuit has been pending for more than one year, and American Home has long had access to all relevant information in that case. Since the *Strange* lawsuit was filed on January 25, 2007, the Entercom Parties have made available to American Home all of the

necessary documents for its coverage analysis, including more than 30 deposition transcripts, all discovery, all pleadings, and all documents produced by the parties in the underlying lawsuit. (Ex. 1, ¶ 13.) In addition, American Home's designated counsel participated in virtually all of the depositions in this case. (Sullivan Reply Decl., ¶ 3.)

Second, American Home has failed to satisfy its burden under Federal Rule of Civil Procedure 56(f) of identifying "facts" that it believes would be obtained through discovery that are "essential" to resolution of this motion. "Rule 56(f) requires litigants to submit affidavits setting forth the particular facts expected from further discovery." *See State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Rather than identify "particular facts," American Home merely sets forth a laundry list of witnesses that it would like to depose and general subject areas of information. For example, American Home's new counsel states that she needs to depose various witnesses (most of whom have already been deposed in the underlying action) to determine if they "have information relevant to coverage" and whether they have information regarding "Entercom's potential liability." (McCurdy Decl., ¶¶ 5(c-d).) At no point does American Home's counsel identify what new, non-duplicative facts such depositions will yield.

Third, American Home's request for discovery on the issue of coverage underscores the extent to which American Home has breached its duties to the Entercom Parties, thus further showing that the Entercom Parties are entitled to the requested declaratory relief. American Home had an affirmative obligation to thoroughly investigate and complete its coverage analysis prior to the letters and communications from its "coverage counsel," and to "diligently search for evidence that supports the insureds' claim," giving the Entercom Parties' interest "at least as much as consideration as it does to its own interest." *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1620 (1996). Its failure to do so constitutes a breach of its duties, thereby entitling the Entercom Parties to attempt to settle the case on their own. *See* Section II.D, *infra*.

### C. The Undisputed Evidence Establishes That The Tragic Death Of Jennifer Strange Is An "Occurrence" Covered By The AIG Excess Policy.

#### 1. Many "Aspect[s] In The Causal Series Of Events" Leading To Ms. Strange's Death Were "Unintended" By Entercom.

As set forth in the Entercom Parties' Opening Brief, coverage under an insurance policy is

not precluded "merely because the insured acted intentionally and the victim was injured." *Merced Mutual Ins. Co v. Mendez,* 213 Cal. App. 3d 41, 50 (1980). Instead, an "accident" for purposes of the Policy at issue "exists when <u>any aspect in the causal series of events</u> leading to the injury or damage was <u>unintended</u> by the insured and a matter of fortuity." *Jafari,* 155 Cal. App. 4th at 899 (emphasis added). In response to case law establishing this definition of "accident," American Home makes three arguments, each of which is without merit:

<u>First</u>, American Home argues that the definition of "accident" set forth in *Jafari, Merced Mutual* and elsewhere constitutes a mere "limited exception" to a general rule of non-coverage. (Opp. Brief, at 12.) American Home cites no legal authority for this assertion, and its contention that the definition of "accident" is a mere exception is contradicted by numerous cases – including cases relied upon by American Home itself. *See e.g., State Farm Fire & Cas. Co.*, 218 Cal. App. 3d 958, 972 (1990) (cited at page 14 of American Home's Brief); *Collins v. American Empire Ins. Co.*, 21 Cal. App. 4th 787 (1994) (cited at page 4 of American Home's Brief).

<u>Second</u>, American Home asserts that the definition of "accident" does not apply to the death of Ms. Strange because "many" (but not all, or even a majority) of the unintended "aspects in the causal series of events" cited by the Entercom Parties occurred before the water drinking contest. According to American Home, any such unintended <u>preceding</u> "aspects" are irrelevant to the coverage determination. (Opp Brief., at 14:1-9.) Once again, American Home cites no authority for this assertion, which conflicts with unqualified statements by the California Court of Appeal that "an accident exists when <u>any aspect</u> in the causal series of events" (not just the final aspect) was unintended. *Jafari*, 155 Cal. App. 4th at 899 (emphasis added). Moreover, even if American Home's position was supported by legal authority (which it is not), American Home tacitly concedes that some of the unintended aspects in the causal series of events occurred <u>after</u> the contest began, and, in fact, several of those unintended aspects did not occur after the contest began. (*See* Opp. Brief, at 14:1-19) (merely asserting that "many" of the aspects occurred before the contest); *see also* Motion, at 17:6-18:3.)

To cite just one example, the undisputed facts (including the coroner's report) establish that Ms. Strange's susceptibility to a particular medical condition – hyponatremia – caused her

death. Hyponatremia occurs depending on a number of interrelated factors, including a person's body mass and weight, blood volume, sodium content, estrogen levels, the amount and timing of water intake, and anti-diuretic hormone levels. (*See* Ex. 10; Ex. 4, ¶¶ 7-12.) One of the cases relied upon by American Home provides that an accident exists where, as here, an unexpected medical condition contributes to the injury. In *State Farm*, 218 Cal. App. 3d at 958, the Court addressed insurance coverage where the plaintiff in the underlying action alleged that the insured caused her to contract herpes. The conduct of the insured was undeniably intentional (the insured intended to have sex with the plaintiff). Nonetheless, the court, relying upon the definition of "accident" in *Merced Mutual*, held that the record could support a finding of coverage:

> [A]lthough [the insured] performed an intentional act in having intercourse with [the plaintiff], the causal factor for the injury, his infection with the herpes virus and its transmission to [the plaintiff], was unexpected, unforeseen and independent of the intentional conduct.

*Id.* at 971-972. Similarly, here, Ms. Strange's death was caused by numerous independent, and non-intentional factors, including but not limited to Ms. Strange's physical condition.

<u>Third</u>, American Home's suggestion that employees of Entercom LLC allegedly "expected or intended" harm is contrary to American Home's prior admissions and, in any event, does not create a triable issue of fact. American Home has noted (1) that the air talent made highly offensive jokes (including in response to a listener who called in to say that contestants could "get sick and possibly die from intoxication") and statements that the contestants would first vomit and therefore be eliminated from the contest; (2) that a fraternity "hazing" event in Chico had resulted in a death; and (3) that a standard release form had referenced "personal injury" and the rules for the contest referenced "potential hazards."[3] However this evidence does not create a triable issue fact for the following reasons:

- As indicated above, there need only be a single "aspect in the causal series of events" leading to Ms. Strange's death that was unintended to give rise to coverage. Here, there were numerous such aspects.

---

[3] Further, to the extent that American Home is suggesting that the existence of the release is relevant to the <u>amount</u> of any potential settlement, that issue is not relevant to the declaratory relief sought by the Entercom Parties. *See* Section III.D, *infra.*

- In the August 17, 2007 letter, American Home's coverage counsel correctly conceded that "Entercom clearly did not intend the harm that resulted from the 'Hold Your Wee For A Wii" Contest." (Ex. 14, p. 2.)

- While the Excess Policy has an exclusion for "Bodily Injury expected or intended from the standpoint of the Insured" (Ex. 6, Endorsement 7, ¶ K), American Home did not raise this exclusion in its reservation of rights. (Ex. 12.) Having failed to do so, it cannot now rely on the exclusion to reject coverage, particularly through the backdoor of a strained reading of the "occurrence" language. *Canadian Ins. Co. of Cal. v. Rusty's Island Chip Co.*, 36 Cal. App. 4th 491, 498 (1995).

- Even if American Home were allowed to belatedly raise the Policy exclusion regarding what was "expected or intended," such expectation or intent is based on a <u>subjective</u> test. Under California law, this "expected or intended" exclusion requires proof that "the insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage," in this case, Ms. Strange's death. *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 746-48 (1993). Here, the undisputed evidence establishes the absence of such subjective expectation or intent, in that (1) the Entercom employees gave Ms. Strange tickets to a concert for that evening and made arrangements to meet her at the concert, (Ex. 20, pp. 314:19-316:19), (2) while the air talents' jokes were offensive, they did not believe there was any possibility that a contestant would die (Ex. 20, 322:20-25; Ex. 17, 110:15-24, 144:12-16, 224:12-24; Ex. B, 223:24-224:1), and (3) Ms. Strange and the other contestants were advised to drop out of the contest if they did not feel well. (Ex. 20, 319:14-320:23; *see* Ex. B, 231:18-20; Ex. D, 30:13-25; Ex. G, 318:1-320:22.)

The undisputed facts are that the employees were all laypersons who did not understand hyponatremia. Even as of this date, Entercom is unaware of any instance in which someone died from voluntarily drinking water (i.e., unlike the fraternity hazing incident in Chico, Ex. 20:1-13), other than in circumstances of excessive physical exertion (such as following a marathon). The absence of such instances underscores the highly unlikely nature of this tragedy.

**2. The Allegedly Intentional Acts Were Not "Inherently Wrongful," And Thus Coverage Is Established.**

In addition, the undisputed evidence establishes that any intentional acts by the Entercom Parties were not "inherently wrongful," and thus the Excess Policy covers the *Strange* lawsuit. American Home apparently agrees that holding a water drinking contest is <u>not</u> "inherently wrongful." (*See* Opp. Brief, at 12.) American Home instead asserts that the Entercom Parties' argument with respect to inherently wrongful conduct relies on an "inferential leap." (*Id.*) In

fact, the Entercom Parties argument is based directly on the California Court of Appeal's recent decision in *Jafari*, 155 Cal. App. 4th at 899. There, the court held that cases such as *Merced Mutual* (which denied coverage for a claim of forcible sexual assault) are distinguishable from cases that do not involve "inherently wrongful acts." *Id.* at 898-99. American Home never even mentions *Jafari* or attempts to explain how it might be inapplicable to the facts of this case.

**D. The Undisputed Evidence Establishes That American Home Denied Coverage And Further Breached Its Obligations, Thus Entitling The Entercom Parties To Attempt To Settle The *Strange* Lawsuit.**

In addition to seeking a declaration of coverage, the Entercom Parties also seek a declaration that they are entitled to attempt to reach a reasonable settlement of the *Strange* lawsuit on their own, notwithstanding the "no voluntary payments" and cooperation provisions in the Excess Policy. This requested relief is based on California law holding that, where an insurer has breached its duties or declined coverage, then the insured is entitled to attempt to settle the case on its own. *See e.g., Samson*, 30 Cal. 3d at 238. American Home's Opposition Brief is notable for the three legal and factual issues that it does not dispute:

First, American Home does not dispute that, under California law, where an insurer declines coverage or otherwise breaches its implied or express obligations, the insured is relieved of its contractual obligations – including any "no voluntary payment" provision – and may attempt to settle the case on its own. *See e.g., Jamestown Builders, Inc. v. General Star Indemnity Co.*, 77 Cal. App. 4th 341, 348 (1999). (As discussed below, American Home merely argues – incorrectly – that it is premature to issue a declaration on this issue.)

Second, American Home does not dispute that its coverage counsel, Mr. Fredette (with whom the Entercom Parties were instructed to direct communications), refused to even attempt to settle the case, based on the denial of coverage. The Opposition Papers never mention Mr. Fredette or his August 17, 2007 letter. Nor does American Home deny the following statement:

> American Home's counsel (Mr. Fredette) advised that American Home would not take action on its own to settle the *Strange* lawsuit and that . . . the death of Ms. Strange was not an "occurrence" so as to trigger coverage under the Excess Policy. Mr. Fredette also advised that American Home would not waive any policy provision (including the "no voluntary payment" provision under the Policy) in the event that that Entercom Parties tried to settle the *Strange* lawsuit on their own. Since

> the August 17 letter, American Home has failed and refused to take action on its own to try to settle the *Strange* lawsuit.

(Ex. 1, ¶ 20) (emphasis added.) Instead of disputing these statements, American Home cites declarations of other American Home representatives (who were not involved in the communications at issue, and one of whom was replaced when Mr. Fredette took over),[4] and suggests that Mr. Fredette's letter and subsequent statements were not an official denial of coverage. However, under California law, no special words are necessary to communicate a denial of coverage, and once coverage has been denied the insurer is not entitled to change its mind and reassert control over the litigation. *See e.g., Samson,* 30 Cal. 3d at 238; CALIFORNIA LIABILITY INS. PRACTICE, § 11:34 (CEB 2007).

Third, American Home does not dispute that it breached its duties under the Policy (another independent basis for permitting the Entercom Parties to control settlement) by:

- Failing to even respond to the Settlement Demand before it expired. *See Allen v. Allstate Ins. Co.*, 656 F.2d 487, 490 (9th Cir. 1981) (finding bad faith beach where "Allstate ignored the offer").

- Failing to reasonably investigate the claim. American Home does not dispute that its coverage counsel reached its "no coverage" determination (on which ground it refused to engage in settlement discussions) based solely on a selective reading of the Complaint. *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1620 (1996) (good faith requires that in "investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim")

- Taking coverage issues into account in deciding not to engage in settlement discussions. "[T]he existence of a coverage dispute, however meritorious the insurer's position is simply not a proper consideration in deciding whether to accept an offer to settle the claim against the insured." *Archdale v. American International Speciality Lines Ins. Co.*, 154 Cal. App. 4th 449, 465 (2007).

The Opposition Brief neither disputes that American Home engaged in the conduct described

---

[4] American Home also submits a declaration from Mr. Hipwood stating that American Home made an offer to the Entercom Parties – not the *Strange* Plaintiffs – in October 2007. This offer is (a) irrelevant insofar as it was not made to the plaintiffs in the underlying case, (b) inadmissible, since it was expressly made in the context of settlement discussions, and (c) a violation of California law, which provides that it is bad faith for an insurer to force an insured to compromise coverage as a condition of settlement. *See generally White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 888-89 (1985).

above, nor disputes that such conduct constitutes a breach of American Home's duties, thus entitling the Entercom Parties to attempt to settle the case on their own.

Instead of disputing the foregoing issues of law and fact, American Home contends that it is premature to issue a declaration of rights under the contract. However, as discussed above, a declaratory relief action is ripe as soon as there exists "an actual controversy relating to the legal rights and duties of the respective parties under a contract." *Lockheed Corp.*, 134 Cal. App. 4th at 221. Here, such a dispute exists because the Entercom Parties have asserted that they are entitled to attempt to settle the action notwithstanding the "no-voluntary payment" provision, while American Home disagrees. (Ex. 1, ¶ 20.) The contention that the Entercom Parties must first settle the action and then obtain a judicial resolution regarding applicability of the "no voluntary payments" provision is not supported by any legal authority and is contrary to the purpose of declaratory relief, which is to clarify the parties' obligations to each other.

American Home also argues that the Entercom Parties must prove that they previously had an opportunity to enter into a reasonable settlement of the underlying suit. However, the Entercom Parties are not seeking a declaration that any particular settlement amount is reasonable or that American Home is required to fund any particular settlement. Rather, the Entercom Parties seek a declaration of coverage and that American Home's denial of coverage and/or other breaches of its obligations entitle the Entercom Parties to attempt to reach a settlement. *Samson*, 30 Cal. 3d at 238. If, following such a declaration, the Entercom Parties succeed in reaching a settlement of the *Strange* lawsuit, and then seek to recover from American Home, it will be American Home's burden to show that any settlement reached was unreasonable. *Jamestown Builders*, 77 Cal. App. 4th at 348 (a "no-voluntary-payments provision is superseded by an insurer's antecedent breach of its coverage obligation. And the burden shifts to the insurer to show that the settlement was not reasonable or was the product of fraud or collusion.").

**E. American Home's Argument Regarding Federal Rule Of Civil Procedure 32 Is Without Merit.**

American Home's argument that Federal Rule of Civil Procedure 32 bars citation to deposition testimony from the *Strange* lawsuit should be rejected for the following six reasons:

First, even if American Home's analysis of Rule 32 were correct (which it is not, as discussed below), the excerpts from the deposition testimony are still admissible as affidavits. In *Hoover v. Switlik Parachute Co.*, 663 F.2d 964 (1981), the Ninth Circuit addressed a motion for summary adjudication in which the moving party relied on depositions taken prior to the defendant's joinder into the case. The defendant argued that use of those deposition transcripts violated Rule 32. The Ninth Circuit, however, held that the depositions were the "equivalent of affidavits" and thus were admissible under Rule 56. *Id.* at 966-967(emphasizing that "[i]t would have been pointless for [the moving party] to have the same witnesses it had deposed file affidavits when what [the moving party] had from them met all the requirements for affidavits").

Second, the issues in this case are whether American Home erred in claiming there was no coverage in the *Strange* case and whether it breached obligations in failing to review the evidence in making its coverage determination. Thus, the evidence in the underlying case (including the depositions) constitute the "operative facts" on which the issues are to be determined. Where the very issue in controversy is whether the out-of-court statements were made, then such statements are admissible. *See* 1 Witkin California Evidence, *Hearsay* §§ 31-32 (4th Ed. 2000) ("There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done" because in such instances "the words. . . are admissible not as hearsay but as original evidence"); 4 Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, Federal Rules of Evidence Manual § 801.02[1][f] (9th ed. 2006) (statements offered to prove they were made are admissible).

Third, Rule 32 provides for the admissibility of deposition testimony where "the party was present or represented at the taking of the deposition or had reasonable notice of it." Fed. R. Civ. Proc. 32. Here, the evidence establishes that counsel associated into the case by American Home itself, the Carlson law firm, received the deposition notices and attended all of the depositions cited by the Entercom Parties, and that American Home itself was also aware of the deposition schedule. (Sullivan Reply Decl. , ¶ 3, Exs. 2-3.)

Fourth, American Home's contention that the deposition testimony cited in the Entercom Parties' motion does not relate to issues "common" to both lawsuits (Opp. Brief, at 20:1-2) is

without merit. Indeed, the questions before this Court are whether the allegations and evidence in the underlying case establishes coverage under the Excess Policy. Furthermore, the existence of common issues in both lawsuits is demonstrated by the fact that American Home itself refers at length to the same depositions in its opposition papers.

<u>Fifth</u>, in insurer-insured disputes, courts frequently rely on deposition testimony from the underlying litigation. *See e.g., Scottsdale Ins. Co. v. Homestead land Development Co.*, 145 F.R.D. 523 (N.D. Cal. 1992); *Marie Y v. General Star Indemnity Co.,* 110 Cal. App. 4th 928, 936 (2003). A contrary rule would mean that an insured in a coverage dispute would be required to re-depose all witnesses in the underlying case (in this case, former employees) even where the relevant evidence has already been elicited. The cases cited by American Home – *Hub v. Sun Valley Co.,* 682 F.2d 776 (9th Cir. 1982) and *Hangarter v. Provident Life & Accidental Insurance Co.*, 373 F.3d 998 (9th Cir. 2004) – do not involve the use of deposition testimony from an underlying case in an insurance dispute.

<u>Sixth</u>, even if the Court were to accept American Home's argument that the Entercom Parties are not entitled to submit deposition testimony from the underlying litigation, the other evidence and declarations – including declarations and documentary evidence submitted by the Entercom Parties (Exs. 1-15) and deposition testimony relied upon by American Home (Exs A-I of the Lavanier Declaration),[5] establish all the material facts necessary to resolve this motion.

Dated: March 14, 2008

FOLGER LEVIN & KAHN LLP

Douglas W. Sullivan
Attorneys for Plaintiffs
ENTERCOM SACRAMENTO, LLC, ENTERCOM COMMUNICATIONS CORP., and JOHN GEARY

54007\2009\592040.1

[5] *See e.g.,* Ex. B pp. 223:24-16, 226:2-5, 231:18-20, 232:3-5, 247:7-10, 249:6-22, 283:7-9, 284:20-24; Ex. D pp. 30:13-25; Ex. G pp. 284:19-24, 318:1-320:23.