1   FOLGER LEVIN & KAHN LLP
    Michael A. Kahn (CSB No. 057432, mkahn@flk.com)
2   Douglas W. Sullivan (CSB No. 088136, dsullivan@flk.com)
    David P. Barton (CSB No. 221549, dbarton@flk.com)
3   Embarcadero Center West
    275 Battery Street, 23rd Floor
4   San Francisco, CA  94111
    Telephone: (415) 986-2800
5   Facsimile: (415) 986-2827

6   Attorneys for Plaintiffs ENTERCOM
    SACRAMENTO, LLC, ENTERCOM
7   COMMUNICATIONS CORP., and
    JOHN GEARY

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12

13   ENTERCOM SACRAMENTO, LLC, a          Case No. CV 07 6493 JSW
     California Limited Liability Corporation;
14   ENTERCOM COMMUNICATIONS             **PLAINTIFFS' OPPOSITION TO THE**
     CORP., a Pennsylvania Corporation;    **MOTION TO DISMISS**
15   JOHN GEARY, an individual; and on
     behalf of themselves and all other persons   Date:       April 25, 2008
16   and entities similarly situated,       Time:       9:00 a.m.
                                            Courtroom: 2, 17th Floor
17                    Plaintiffs,           Judge:      Honorable Jeffrey S. White

18            v.

19   AMERICAN HOME ASSURANCE            Complaint Filed:    December 28, 2007
     COMPANY, a New York Corporation,
20
                      Defendant.
21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3   I.      INTRODUCTION ................................................................................................. 1

4           A.      The Underlying Strange Lawsuit ................................................................ 1

5           B.      This Lawsuit ................................................................................................ 2

            C.      American Home's Motion To Dismiss ........................................................ 3

6   II.     ARGUMENT ...................................................................................................... 6

7           A.      The Declaratory Relief Cause Of Action Is Ripe; An Insured Is Not
                    Required To Delay Seeking A Declaration Of Rights Until After The
8                   Underlying Dispute Is Resolved ................................................................ 6

9                   1.      The Complaint Alleges A Ripe Controversy Regarding Whether
                            The Excess Policy Covers The Strange Lawsuit ........................... 8

10                  2.      The Complaint Alleges A Separate, Ripe Controversy Regarding
                            The Entercom Parties' Right, Under The Excess Policy, To Settle
11                          The Underlying Strange Lawsuit ................................................... 9

12                  3.      American Home's Position, If Adopted, Would Lead To
                            Incongruous Results .................................................................... 11

13                  4.      American Home's Position Is Contrary To Public Policy .......... 11

14          B.      The Entercom Parties Have Stated Ripe And Cognizable Claims For
                    Breach Of Contract And Breach Of The Implied Covenant Of Good Faith
                    And Fair Dealing ...................................................................................... 11

15          C.      The Entercom Parties Allege Facts Supporting Their Claim For
16                  Preliminary And Permanent Injunctive Relief ......................................... 14

17          D.      American Home's Request For An Indefinite Stay Of These Proceedings
                    Should Be Rejected .................................................................................. 16

18  III.    CONCLUSION ................................................................................................. 18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## CASES

*All World Prof. Travel Servs. v. Am. Airlines, Inc.,*
   282 F. Supp. 2d 1161 (C.D. Cal. 2003)..................................................... 15

*Allen v. Allstate Ins. Co.,*
   656 F. 2d 487 (1981).......................................................................... 10

*Archdale v. Am. Int'l Specialty Lines Ins. Co.,*
   154 Cal. App. 4th 499 (2007)............................................................. 10, 14

*Bodenheimer v. Superior Court,*
   192 Cal. App. 3d 1472 (1987).............................................................. 10

*Brandt v. Superior Court,*
   37 Cal. 3d 813 (1985) ....................................................................... 5, 14

*Colo. River Water Conservation Dist. v. United States,*
   424 U.S. 800 (1976)........................................................................... 16

*Crisci v. Security Ins. Co.,*
   66 Cal. 2d 425 ............................................................................. 10, 11

*Critz v. Farmers Ins. Group, 230 Cal. App.*
   2d 788 (1964).............................................................................. 10, 11

*Finkelstein v. 20th Century Ins. Co.,*
   11 Cal. App. 4th 926 (1992)................................................................. 13

*Garcia v. Superior Court,*
   42 Cal. App. 4th 177 (1996)................................................................. 18

*Hamilton v. Maryland Cas. Co,*
   27 Cal. 4th 718 (2002) ...................................................................... 8, 13

*Hartford v. Superior Court,*
   23 Cal. App. 4th 1774 (1994)............................................................... 14

*Haskel, Inc. v. Superior Court,*
   33 Cal. App. 4th 963 (1995)................................................................ 16

*Jafari v. EMI Ins. Cos.,*
   155 Cal. App. 4th 855 (2007)............................................................... 17

*Jamestown Builders, Inc. v. Gen. Star Indem. Co.,*
   77 Cal. App. 4th 341 (1999)................................................................ 4, 9

*Kinder v. Western Pioneer Insurance Co.,*
   231 Cal. App. 2d 894 (1965)............................................................... 10

*David Kleis, Inc. v. Superior Court,*
   37 Cal. App. 4th 1035 (1995)............................................................ 16, 17

*Lenscrafters, Inc. v. Liberty Mutual Fire Ins. Co.,*
   2008 WL 410243 (N.D. Cal. 2008)........................................................ 7, 13

*Lockheed Corp. v. Continental Ins. Co.,*
   134 Cal. App. 4th 187 (2005)............................................... 1, 3, 6, 7, 8, 11, 17

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-ii-

**TABLE OF AUTHORITIES**
(continued)

Page

*Ludgate Insurance Co., Ltd. v. Lockheed Martin Corp.,*
   82 Cal. App. 4th 592 (2000)......................................................................... 7

*Madrid v. Perot Sys. Corp.,*
   130 Cal. App. 4th 440 (2005) ..................................................................... 15

*Mariscal v. Old Republic Life Ins. Co.,*
   42 Cal. App. 4th 1617(1996)....................................................................... 10

*Montrose Chemical Corp. v. Superior Court,*
   25 Cal. App. 4th 287 (1993)................................................................... 16, 17

*Otworth v. S. Pac. Transp. Co.,*
   166 Cal. App. 3d 452 (1985)....................................................................... 13

*Pareto v. F.D.I.C.,*
   139 F. 3d 696 (9th Cir. 1998) ..................................................................... 12

*Phillips v. Isham,*
   11 Cal. App. 2d 537 (1952)......................................................................... 15

*Samson v. Transamerica Ins. Co.,*
   30 Cal. 3d 220 (1981) .................................................................................. 9

*Schwartz v. State Farm Fire & Cas. Co.,*
   88 Cal. App. 4th 1329 (2001)................................................................... 4, 13

*Soceite de Conditionnement en Aluminum v. Hunter Engineering,*
   655 F.2d 938 (9th Cir. 1981)........................................................................ 8

*Stanley v. Univ. of S. Cal.,*
   13 F. 3d 1313 (9th Cir. 1994) ..................................................................... 14

*Vander Lind v. Superior Court,*
   146 Cal. App. 358 (1983) ........................................................................... 18

*Weinberger v. Romero-Barcelo,*
   456 U.S. 305 (1982) .............................................................................. 14, 15

*Wolkowitz v. Redland Ins. Co.,*
   111 Cal. App. 4th 154 (2003)..................................................................... 13

**STATUTE**

Cal. Civ. Code § 3294(b) ................................................................................ 18

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-iii-

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS; CASE NO. CV 07 6493 JSW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

In its motion to dismiss, Defendant American Home Assurance Company ("American Home") primarily asserts – incorrectly – that an insured can never establish a ripe controversy against an excess insurer, unless an excess judgment or settlement has been reached in the underlying lawsuit.  American Home contends that no ripe claim for declaratory or other relief can be stated even where, as here, the excess insurer has denied coverage, refused to even attempt to settle the lawsuit, and simultaneously refused to allow the insured to attempt to settle the lawsuit on its own.  American Home's argument is contrary to applicable law, which provides that a ripe dispute exists whenever the insured and excess insurer have a disagreement regarding the parties' respective rights and obligations under the excess insurance policy, even if the underlying action has not yet been resolved.  *See, e.g., Lockheed Corp. v. Continental Ins. Co.*, 134 Cal. App. 4th 187 (2005) (sustaining a declaratory relief action while underlying claims were ongoing).  Accordingly, and as described in greater detail below, the motion to dismiss should be denied.

### A.    The Underlying *Strange* Lawsuit.

Plaintiffs herein, Entercom Sacramento, LLC, Entercom Communications Corp., and John Geary ("the Entercom Parties") were sued in an underlying lawsuit, *William A. Strange, individually and as Guardian Ad Litem for Ryland Strange and Jorie Strange, Minors, et al. v. Entercom Sacramento, LLC, et al.* ("the *Strange* lawsuit").  (Compl. ¶¶ 10, 29-32.)  That lawsuit stemmed from the death of Jennifer Strange following her participation in a contest held by a radio station owned by Entercom Sacramento, LLC.  (*Id.*)

The Entercom Parties promptly tendered the *Strange* lawsuit to their insurance carriers – Chubb (which issued a Primary Policy with policy limits of $1 million), and American Home (which issued an Excess Policy with policy limits of $25 million).  (Compl. ¶¶ 9-10, 33-34.)  As the primary carrier, Chubb promptly accepted the tender of defense, without a reservation of rights, in recognition of coverage.  (*Id.*)  Despite the fact that its Excess Policy provided for the identical coverage, American Home issued a reservation of rights letter.  (Compl. ¶¶ 10, 34-36.)

1   After significant discovery in the *Strange* lawsuit, the Strange Plaintiffs made a Settlement

2   Demand (dated July 12, 2007) that was open for thirty (30) days. (Compl. ¶¶ 12, 39-40.) As the

3   primary carrier, Chubb promptly agreed to contribute its primary policy limits toward a

4   settlement. (Compl. ¶¶ 12, 43.) American Home, however, refused to take any action. (Compl.

5   ¶¶ 12, 44-47.) In fact, American Home refused even to respond to the Settlement Demand before

6   its expiration (despite repeated requests by the Entercom Parties), and then sought to justify its

7   failure to respond by contending that there was no coverage under the Excess Policy, because the

8   death allegedly did not constitute an "occurrence" (as that term is used in the Excess Policy) so as

9   to trigger coverage. (Compl. ¶¶ 11, 13, 45-48.) Thereafter, American Home reiterated its

10  position that there was no coverage and, on that basis, advised that it would not take action to

11  attempt to settle the *Strange* lawsuit on its own. (Compl. ¶¶ 15, 50:12-15, 55a, 63.)

12  At the same time that American Home refused to take any action to attempt to settle the

13  *Strange* lawsuit, American Home also took the position that the Entercom Parties could not

14  attempt to settle the lawsuit on their own, asserting that such efforts would violate a "no voluntary

15  payment" provision in the policy (and thereby preclude the Entercom Parties from seeking

16  reimbursement from American Home). (Compl. ¶¶ 17, 50.) American Home's conduct placed

17  the Entercom Parties in a Catch-22 position: American Home was refusing to take action to

18  attempt to settle the case based on its contention that there was no coverage, while at the same

19  time refusing to allow the Entercom Parties to do so. (Compl. ¶¶ 17, 51.)

20  **B.   This Lawsuit.**

21  The Entercom Parties brought the instant lawsuit seeking two declarations: First, the

22  Entercom Parties seek a declaration of coverage, given American Home's erroneous assertion that

23  "the death of Jennifer Strange was allegedly not an 'occurrence' (as that term is used in the . . .

24  Excess Policy) so as to trigger coverage," and given American Home's refusal to acknowledge or

25  provide coverage. (Compl., ¶¶ 13, 55a). Second, the Entercom Parties seek a declaration that

26  they have a right to attempt to settle the *Strange* lawsuit on their own, given American Home's

27  denial of coverage and other breaches of its express and implied duties. (Compl. ¶¶ 17, 18a, 62-

28  66.)

FOLGER LEVIN & KAHN LLP
ATTORNEYS AT LAW

-2-

PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS; CASE NO. CV 07 6493 JSW

1    In addition, the instant lawsuit seeks damages for the detriment caused by American

2    Home's breach of its obligations under the Excess Policy and breach of its covenant of good faith,

3    including attorneys' fees incurred by the Entercom Parties that are attributable to American

4    Home's breaches. (Compl. ¶ 18b-c, 52-61.) Finally, the instant lawsuit seeks preliminary and

5    permanent injunctive relief against American Home, enjoining them from objecting to any

6    attempts by the Entercom Parties to enter into a reasonable settlement of the *Strange* lawsuit on

7    their own (with contribution from Chubb) and enjoining them from seeking to enforce the "no

8    voluntary payment" or "cooperation" provisions (or any other related provisions) in the Excess

9    Policy with respect to any settlement of the *Strange* lawsuit that the Entercom Parties may enter

10   into. (Compl. ¶ 18d, 67-70.)

11       **C.    American Home's Motion To Dismiss.**

12       American Home's motion to dismiss (a) mischaracterizes the Complaint, by contending

13   that the Complaint merely asserts claims for a breach of the "duty to settle" (Def.'s Br. 4:20-21);

14   (b) improperly attempts to contradict central allegations in the Complaint (which establish that

15   American Home denied coverage and on that basis refused to provide coverage or engage in any

16   settlement discussions) (Def.'s Br. 3:4-6); and (c) virtually ignores the declaratory relief claim,

17   mentioning it only in passing. (Def.'s Br. 7:13-19.) Based on its mischaracterization of the

18   Entercom Parties' claims, American Home argues that the Complaint does not establish a ripe

19   dispute, and that there can be no adjudication of the Entercom Parties' claims unless and until an

20   "excess judgment or settlement has been reached" in the underlying *Strange* lawsuit. (Def.'s Br.

21   2:4-5, 7:13-14.)

22       As discussed in greater detail in the Argument section below, American Home's motion to

23   dismiss is contrary to applicable law and should be rejected for the following <u>five</u> reasons.

24       <u>First</u>, applicable law provides that a dispute regarding the parties' rights and obligations

25   under an excess insurance policy is sufficient to establish a ripe declaratory relief cause of action,

26   even if the underlying action has not yet been resolved. *See, e.g., Lockheed Corp. v. Continental*

27   *Ins. Co.*, 134 Cal. App. 4th 187 (2005) (sustaining a declaratory relief action while underlying

28   claims were ongoing). Here, the Complaint alleges the existence of two independent, ripe

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-3-

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS; CASE NO. CV 07 6493 JSW

1    disputes regarding the terms of the Excess Policy: (a) the Complaint alleges that the parties have

2    taken conflicting positions regarding whether the Excess Policy covers the *Strange* lawsuit and

3    seeks a declaration resolving that conflict (Compl. ¶¶ 63, 65); and (b) the Complaint alleges a ripe

4    dispute regarding whether the Entercom Parties are entitled to attempt to settle the *Strange*

5    lawsuit on their own, notwithstanding the "no voluntary payment" and "cooperation" provisions

6    in the Excess Policy, given American Home's denial of coverage and other breaches of its

7    obligations.  (Compl. ¶¶ 11, 50-51, 64.)  *See Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77

8    Cal. App. 4th 341, 348 (1999) (where an insurer declines coverage or otherwise breached its

9    express and/or implied obligations under an insurance policy, the insured is relieved of its

10   contractual obligations under the policy, including any "no voluntary payment" provision).

11   Adoption of American Home's position would lead to the incongruous result that the Entercom

12   Parties' declaratory relief claim would <u>never</u> be ripe (because by the time a judgment or

13   settlement was reached in the underlying case, the request for a declaration regarding the

14   Entercom Parties' right to settle would be moot), and would be counter to California public policy

15   encouraging settlement.

16         Second, the Complaint alleges ripe claims for breach of the Excess Policy and breach of

17   the covenant of good faith and fair dealing.  An excess insurer's implied and express duties "exist

18   from the inception of the agreement with the insured."  *Schwartz v. State Farm Fire & Cas. Co.*,

19   88 Cal. App. 4th 1329, 1335 (2001).  The Complaint alleges that American Home breached its

20   duties by, *inter alia,* (a) improperly denying coverage (Compl. ¶¶ 11, 13, 14, 46, 50:12-15, 63);

21   (b) failing to cooperate in attempting to settle the *Strange* lawsuit (*Id.* at ¶¶ 11, 13, 38, 44, 48); (c)

22   failing even to respond to a settlement demand prior to its expiration based on American Home's

23   assertion that there was no coverage, even though American Home had previously acknowledged

24   that American Home would pay "100% of any settlement" (*Id.*); (d) failing to conduct a

25   reasonable and proper investigation so as to determine if there was coverage (*Id.* at ¶¶ 15, 48, 59);

26   (e) failing to and refusing to consult with the Entercom Parties and their counsel concerning the

27   Settlement Demand and instead ignoring the Demand (*id.* at ¶¶ 11, 15, 50-51, 64.); and (f)

28   prohibiting the Entercom Parties from attempting to settle the case on their own, notwithstanding

1    the foregoing breaches. (*Id.*)  As discussed in the Argument section below, applicable law

2    provides that such conduct constitutes a breach of the insurer's express and implied duties.

3         Furthermore, American Home's argument that the breach of contract claims are not ripe

4    really boils down to the contention that until such time as a final judgment or settlement is

5    reached in the underlying *Strange* case, Entercom's only damages would be speculative, future

6    damages, such that no claim for breach of contract can be stated.  However, the Entercom Parties

7    properly allege current damages resulting from American Home's breach of the Excess Policy

8    and breach of the implied covenant of good faith and fair dealing.  For example, the Complaint

9    alleges that the Entercom Parties themselves (not merely the primary insurer, Chubb) are

10    incurring additional attorneys' fees and costs (both in this litigation and in the *Strange* lawsuit) by

11    virtue of American Home's numerous breaches of contract.  (Compl. ¶ 18b.)  *See also Brandt v.*

12    *Superior Court*, 37 Cal. 3d 813, 817-18 (1985) (holding that "when an insurer's tortious conduct

13    reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it

14    follows that the insurer should be liable in a tort action for that expense").

15         Third, the Complaint properly pleads grounds for injunctive relief.  The Entercom Parties

16    properly plead facts demonstrating irreparable harm and inadequacy of legal remedy.

17    Furthermore, although American Home is incorrect in contending that the Entercom Parties must

18    also plead that the equities favor its request, the allegations nonetheless establish that the equities

19    favor the Entercom Parties.

20         Fourth, under California law, this action should not be stayed pending resolution of the

21    underlying action: American Home's request for a stay has already been rejected in connection

22    with the Court's ruling on American Home's earlier request for administrative relief.

23    Furthermore, proceeding with the declaratory relief claims will not require resolution of factual

24    questions central to the underlying suit, and the public policy that favors a stay in some instances

25    favors proceeding with the declaratory relief action here.

26                                    * * * *

27         Under applicable law, the existing disputes regarding the parties' rights under the Excess

28    Policy are ripe, and American Home's efforts to delay resolution of the disputes are effectively

1  preventing anyone from attempting to resolve the underlying *Strange* lawsuit. Thus, American

2  Home's position not only undermines the rights of the Entercom Parties, but also undermines

3  public policy favoring settlement, as well as the interests of the *Strange* Plaintiffs, who –

4  whatever the merits of their lawsuit against the Entercom Parties – have undeniably suffered a

5  tragic loss and have had their settlement demands ignored by American Home. This Court can

6  and should resolve the ripe controversies presented in the Complaint.

## II.    ARGUMENT

### A.    The Declaratory Relief Cause Of Action Is Ripe; An Insured Is Not Required To Delay Seeking A Declaration Of Rights Until After The Underlying Dispute Is Resolved.

10  American Home's primary argument in its motion to dismiss is that the Entercom Parties'

11  claims will not be ripe until after an excess judgment or settlement is reached in the underlying

12  *Strange* lawsuit. (See Def.'s Br. §§ A, B, D.) However, American Home makes this argument

13  only by ignoring or flatly contradicting the allegations of the Complaint, which establish the

14  existence of ripe disputes. Indeed, the motion virtually ignores the Entercom Parties' declaratory

15  relief cause of action, which seeks declarations that (1) there is coverage under the Excess Policy

16  for the *Strange* lawsuit, and (2) the Entercom Parties have a right to attempt to settle the *Strange*

17  lawsuit notwithstanding the "no voluntary payment" provision in the Excess Policy (by virtue of

18  American Home's denial of coverage and other breaches of American Home's duties). (Compl.

19  ¶¶ 62-66.)

20  American Home's argument – that there can be "no actual controversy between Entercom

21  and American Home until there is a final judgment or settlement" (Def.'s Br. 7:13-14) – is

22  contrary to applicable law. Under California law, a declaratory relief action seeking adjudication

23  of the rights and obligations of parties to an excess insurance policy is ripe as soon as an actual

24  dispute has arisen, even if no final judgment or settlement of the underlying case has occurred.

25  For example, in *Lockheed Corp. v. Continental Insurance Co.*, 134 Cal. App. 4th 187 (2006), the

26  insured sought a declaration that certain pending claims by third parties were covered by excess

27  insurance policies. The excess insurers filed demurrers, contending that no present controversy

28  existed because the outcome of the underlying action was unknown, so plaintiffs could "not

1   adequately allege actual exhaustion of the primary policies or that it was reasonably likely [the

2   insured] would exhaust its primary coverage, which it would have to do in order to reach the

3   excess policies." *Id.* at 219.  The Court of Appeal rejected this argument, holding that it was

4   "unnecessary and improper for the excess insurer to insist that [the insured] plead exhaustion in

5   order to state a cause of action for declaratory relief":

6                 It is the general rule that in an action for declaratory relief <u>the
                  complaint is sufficient if it sets forth facts showing the existence of</u>
7                 <u>an actual controversy</u> relating to the legal rights and duties of the
                  respective parties under a contract and requests that the rights and
8                 duties be adjudged.

9   *Id.* at 221 (emphasis added and internal citation omitted).  In so ruling, the *Lockheed* court relied

10  upon a related opinion, *Ludgate Insurance Co., Ltd. v. Lockheed Martin Corp.*, 82 Cal. App. 4th

11  592, 606 (2000), in which the Court held that "exhaustion of the underlying limits, while

12  necessary to entitle the insured to recover on the excess policy, is not necessary to create an actual

13  controversy" for purposes of a declaratory relief claim.  Therefore, in order to establish a viable

14  declaratory relief cause of action, the Entercom Parties must merely allege that a dispute has

15  arisen regarding the parties' respective rights under the Excess Policy.  The fact that the outcome

16  of the underlying action is unknown (in this case, whether there will ultimately be an judgment

17  adverse to the Entercom Parties) does not alter the fact that there is a current, ripe dispute

18  regarding the Excess Policy, which can be resolved by declaratory relief.  *See Lockheed Corp.*,

19  134 Cal. App. 4th at 221.

20         The cases cited by American Home do not involve lawsuits in which an insured is seeking

21  declaratory relief.  American Home incorrectly suggests that *Lenscrafters, Inc. v. Liberty Mutual*

22  *Fire Insurance Co.*, 2008 WL 410243 (N.D. Cal. 2008) involved a motion to dismiss a

23  "declaratory relief" claim.  (Def.'s Br. 4.)  In fact, the *Lenscrafters* decision did not address the

24  insured's claim for declaratory relief, and the insurer specifically acknowledged that it was only

25  requesting that the court "dismiss LensCrafters' claims of breach and <u>permit this case to continue</u>

26  <u>as the declaratory relief action it is</u>."  (*See* U.S. Fire Ins. Mot. to Dismiss at 1:16-18) (emphasis

27

28

1   added.)[1]  Similarly, *Hamilton v. Maryland Casualty Co.*, 27 Cal. 4th 718 (2002), did not involve

2   an action for declaratory relief, but instead a claim for damages for breach of contract.  In

3   *Hamilton*, unlike this case, an insurer <u>accepted</u> coverage without reservation of rights and

4   unsuccessfully attempted to settle the case.  *Id.* at 723.  Subsequently, the insured entered into a

5   settlement with the plaintiff in the underlying case (without the insurer's involvement) and then

6   assigned claims against the insurer to the plaintiff.  *Id.* at 722.  Not surprisingly, the court held

7   that the plaintiff could not recover for breach of contract from the insurer.  *Id.*  It further stated,

8   however, that where there is "a denial of coverage," as there is here, the policyholder is entitled

9   "to make a reasonable non-collusive settlement without the insurer's consent and to seek

10  reimbursement of the settlement amount."  *Id.* at 728.[2]  Here, the allegations of the Complaint

11  establish such a denial of coverage.  (*See e.g.,* Complaint, ¶¶ 11, 13, 46, 50: 12-15, 63.)

12          **1.      The Complaint Alleges A Ripe Controversy Regarding Whether The
                      Excess Policy Covers The *Strange* Lawsuit.**
13
             The Entercom Parties have stated a ripe declaratory relief claim regarding coverage issues.
14
    The Complaint specifically and repeatedly alleges that American Home erroneously took the
15
    "position that the Excess Policy somehow <u>does not afford coverage</u> for the *Strange* lawsuit
16
    (contrary to the position of the primary carrier, Chubb)," and that, based on its "no coverage"
17
    determination, "American Home refused to respond to a Settlement Demand that was open for
18
    thirty (30) days."  (Compl. ¶ 11; *see also id.* at ¶¶ 13, 15, 46, 50:12-15, 55a, 59a, 63.)   On that
19
    basis, the Complaint seeks a declaration concerning the Entercom Parties' right to "coverage
20
    under the Excess Policy."  *Id.* at ¶¶ 63, 65.  Thus, the Entercom Parties have stated a ripe claim
21
    for declaratory relief.  *Lockheed Corp.,* 134 Cal. App. 4th at 221 (a complaint for declaratory
22
    relief "is sufficient if it sets forth facts showing the existence of an actual controversy relating to
23
    the legal rights and duties of the respective parties under a contract").
24

25          [1] The Entercom Parties request that the Court take judicial notice of the motion filed in the
    *LensCrafters* case.  *See* Exhibit 1 to Request for Judicial Notice, filed concurrently herewith.
26
            [2] American Home also cites *Societe de Conditionnement en Aluminum v. Hunter
27  Engineering*, 655 F.2d 938 (9th Cir. 1981).  However, that case involved a patent dispute, not a
    dispute regarding rights and duties under an insurance policy.
28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

PLAINTIFFS' OPPOSITION TO THE MOTION TO
                                   DISMISS; CASE NO. CV 07 6493 JSW

**2.    The Complaint Alleges A Separate, Ripe Controversy Regarding The Entercom Parties' Right, Under The Excess Policy, To Settle The Underlying *Strange* Lawsuit.**

The Entercom Parties have also established a separate ripe dispute regarding the terms of the Excess Policy, and the Entercom Parties' right to settle the *Strange* lawsuit on their own. Because American Home denied coverage, the Entercom Parties are entitled to control settlement of the underlying *Strange* lawsuit. As alleged in the Complaint, American Home refused even to respond to the Settlement Demand in the *Strange* lawsuit on the ground that there was no coverage for that lawsuit.   (Compl. ¶¶ 11, 41-48.)  After American Home denied coverage, the Entercom Parties requested confirmation that, consistent with California law, the Entercom Parties could take control of the settlement negotiations and seek to settle the *Strange* lawsuit on their own. (*Id.* at ¶¶ 11, 49-50.)  Notwithstanding its denial of coverage, American Home nonetheless asserted that "the Entercom Parties could not resolve the *Strange* lawsuit without running the risk that American Home would not have to reimburse the Entercom Parties because of the 'no voluntary payment' provision" in the Excess Policy. *Id.*  Later, American Home again asserted that it would not attempt to settle the matter based on its position that there was no "occurrence" so as to trigger coverage. (*Id.* at ¶ 50:12-15.)

American Home's assertion that the "no voluntary payment" provision remained in effect after its denial of coverage (and refusal to respond to a settlement demand on that basis) is directly contrary to California law, under which the insured is relieved of its contractual obligations – including its obligation even to notify the insurer of settlement discussions – once the insurer declines coverage. *See, e.g., Samson v. Transamerica Ins. Co.*, 30 Cal. 3d 220, 238 (1981) ("[I]f an insurer denies coverage to the insured, the insured's contractual obligation to notify the insurer ceases.").

The Entercom Parties are also entitled to control settlement in the underlying *Strange* action for an additional, independent reason.  Under California law, where an insurer breaches its duties to the insured, the insured is entitled to attempt to settle the lawsuit, notwithstanding any "no voluntary payment" provision in the contract. *See Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 348 (1999) (a "no-voluntary payment provision is superseded

by an insurer's antecedent breach of its coverage obligation"); *Critz v. Farmers Ins. Group*, 230 Cal. App. 2d 788, 801 (1964) ("The requirement of cooperation by the policyholder assumes that the insurer has complied in good faith with the conditions of the policy," including "its obligation of good faith settlement.") (disapproved on other grounds in *Crisci v. Sec. Ins. Co.*, 66 Cal. 2d 425, 433). Here, the Complaint alleges that American Home breached the Excess Policy and the covenant of good faith and fair dealing in numerous ways, including the following:

- Failing even to respond to a settlement demand prior to its expiration. (Compl. ¶ 59b-c.) *See also Allen v. Allstate Ins. Co.*, 656 F. 2d 487, 490 (1981) (breach of duties for an insurer to "ignore" a settlement demand).

- Basing its failure even to respond to the settlement solely on the assertion that there was no coverage. (Compl. ¶¶ 13, 45-48.) *See also Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 499, 464 (2007) (holding that "the existence of a coverage dispute, however meritorious the insurer's position, is simply not a proper consideration in deciding whether to accept an offer to settle the claim against the insured.").

- After first representing to the Entercom Parties that American Home would pay "100% of any settlement" (*Id.* at ¶¶ 11, 38, 59a), American Home sought to justify its failure even to respond to the Settlement Demand by denying coverage, thereby delaying any settlement. *Id.* at ¶¶ 55, 59; *see Bodenheimer v. Superior Court*, 192 Cal. App. 3d 1472, 1475-79 (1987) (rejecting assertion that "no cause of action arises as to these matters unless and until third party claims against Plaintiffs have resulted in a final determination of liability against them," where the insured contended that the insurer "deliberately delayed settlement" and thereby breached its duty to "process the claims in a manner which will not injure the insured").

- Failing to investigate reasonably the claim and making its "no coverage" determination based solely on a selective and inaccurate reading of the allegations in the *Strange* complaint. (Compl. ¶¶ 15, 48, 59e-f.) *See also Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1620 (1996) (stating that good faith requires that "[w]hen investigating a claim, an insurance company has a duty to diligently search for evidence which supports the insured's claim")

- Failing to consult with the Entercom Parties and their counsel in connection with the settlement demand. (Compl. ¶ 38.) *See also Kinder v. Western Pioneer Insurance Co.*, 231 Cal. App. 2d 894 (1965) (holding that the insurer has a "duty of consulting qualified persons on the matter of settlement," including the attorney handling the litigation).

Having alleged these breaches, the Entercom parties have established a ripe dispute regarding

whether they are entitled to attempt to settle the *Strange* lawsuit on their own.

> **3.    American Home's Position, If Adopted, Would Lead To Incongruous Results.**

Adoption of American Home's position would mean that the Entercom Parties' declaratory relief cause of action regarding their right to settle the *Strange* action would <u>never</u> be ripe. While the Entercom Parties "seek declarations concerning their right to try to settle the *Strange* lawsuit" (Compl. ¶ 65), American Home contends that the case must be "stayed until the underlying action against the policyholder is resolved." (Def.'s Br. 8:22-23.) But, of course, by the time the "underlying action against the policyholder is resolved," there will be no need for a declaration regarding the Entercom Parties' right to settle. California law does not, as American Home contends, prohibit judicial resolution of this case, but instead provides that the controversy is ripe as soon as the dispute exists. *See Lockheed Corp.,* 134 Cal. App. 4th at 221.

In addition, American Home's position that the Entercom Parties are not entitled to declaratory relief until there is a judgment against it would also severely prejudice the Entercom Parties in the event that they were ultimately held liable in the *Strange* lawsuit. Under those circumstances, the Entercom Parties might potential have to try to find funding (including liquidating assets) for the judgment or risk execution against operating assets, and only then pursue recovery against American Home.

> **4.    American Home's Position Is Contrary To Public Policy.**

American Home's position is contrary to California public policy, which encourages settlements of disputes. *See e.g., Critz v. Farmers Ins. Group*, 230 Cal. App. 2d 788, 800-01 (1964) (disapproved on other grounds in *Crisci v. Sec. Ins. Co.*, 66 Cal. 2d 425, 433). One of the benefits of requiring insurers to attempt to settle claims against policyholders (and subsequently litigate coverage disputes) is to facilitate settlement.

> **B.    The Entercom Parties Have Stated Ripe And Cognizable Claims For Breach Of Contract And Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

American Home similarly argues that the Entercom Parties' claims for breach of contract and breach of the implied covenant are premature. In asserting that these claims are not ripe,

1   American Home makes <u>two</u> general arguments, both of which are without merit.

2       <u>First</u>, American Home fundamentally mischaracterizes the Entercom Parties' claims and

3   improperly seeks to contradict the allegations of the Complaint.  American Home incorrectly

4   contends that the "gravamen of Entercom's breach of contract claim focuses on American

5   Home's alleged breach of the duty to settle." (Def.'s Br. 4:20-21.)  In fact, as discussed above,

6   the Complaint alleges that American Home breached its express and implied duties by, *inter alia,*

7   (a) improperly denying coverage; (b) failing even to respond to a settlement demand prior to its

8   expiration based on the assertion that there was no coverage, even though American Home had

9   previously acknowledged that American Home would pay "100% of any settlement;" (c) failing

10  to conduct a reasonable and proper investigation so as to determine if there was coverage; (d)

11  failing to cooperate with the Entercom Parties in attempting to settle the *Strange* lawsuit; (e)

12  failing to and refusing to consult with the Entercom Parties and their counsel concerning the

13  Settlement Demand; and (f) prohibiting the Entercom Parties from attempting to settle the case on

14  their own, notwithstanding the foregoing breaches. (*See e.g.,* Comp., ¶¶ 13, 17, 45-48, 55, 59.)[3]

15      Furthermore, in mischaracterizing the Entercom Parties' claims, American Home

16  improperly contradicts the factual allegations of the Complaint, contrary to the standard

17  governing motions to dismiss. *See Pareto v. F.D.I.C.*, 139 F. 3d 696, 699 (9th Cir. 1998).  In

18  particular, American Home inaccurately asserts "that American Home has not declined coverage .

19  . . ." (Def.'s Br. 3:5-6.)  The Complaint, however, <u>repeatedly</u> asserts that American Home denied

20  coverage. (*See e.g.,* Complaint, ¶¶ 11, 13, 46, 50:12-15, 63.)

21      American Home's improper attempt to contradict the allegations of the Complaint for

22  purposes of its motion to dismiss is particularly without merit in light of the evidence submitted

23  in connection with the Entercom Parties' motion for summary adjudication.  In the motion for

24  summary adjudication, the Entercom Parties presented undisputed evidence establishing that

25  American Home's "coverage counsel" advised (a) that there was no coverage for the *Strange*

26

---

27  [3] Legal authorities establishing that such conduct breached American Home's duties to the Entercom Parties are set forth in section II(A)(2), *supra.*

28

1  lawsuit, (b) that, given this denial of coverage, American Home would not attempt to settle the

2  case, and (c) that the Entercom Parties could not attempt to settle the case on their own.  (*See e.g.*,

3  Dash Decl., ¶ 20, submitted with motion for summary adjudication.)  American Home did not

4  dispute these facts regarding American Home's "coverage counsel's" denying of coverage.  Thus,

5  not only the allegations of the Complaint, but also the undisputed evidence establish that

6  American Home breached its obligations.  *See Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal.

7  App. 4th 1329, 1335 (2001) (noting that an excess insures owes duties to the insured "from the

8  inception of the agreement with the insured, and <u>rejecting</u> contention "that, simply because a

9  condition precedent to a particular obligation – the obligation to pay – has not yet occurred, the

10  insurer is relieved from the implied covenants that inhere in *every* contract.")[4]

11      <u>Second</u>, American Home incorrectly contends that the Entercom Parties have not alleged

12  the existence of cognizable damages.  In making this argument, American Home relies

13  exclusively on cases involving <u>not</u> the type of breaches discussed above (and alleged in the

14  Complaint), but rather breaches of the duty to settle, in which the only claimed damages consisted

15  of amounts that the insured claimed should be devoted to settlement and/or unknown amounts by

16  which a potential future judgment could exceed a settlement demand.[5]

17      Here, the Entercom Parties are <u>not</u>, at this time, seeking to recover damages for the

18  amount of any future settlement or the amount by which a potential future judgment may exceed

19  the settlement demand.  Rather, the Entercom Parties allege that it "has incurred and continues to

20  incur" legal fees "in defending the *Strange* lawsuit, <u>above the amounts reimbursed by Chubb</u>,"

21  the primary insurer.  (Compl. ¶ 18b.) (Emphasis added).

22      American Home is aware that the primary insurer, Chubb, is only paying a portion of the

23  _____

24  [4] American Home also incorrectly states that "[n]owhere in Entercom's complaint does it
   state a specific provision of the policy which it believes was violated." (Def.'s Br. 4:4-5.)  In fact,

25  the Complaint quotes the relevant portions of the Excess Policy at length (Compl., ¶¶ 23-27), and
   further attaches the entire Excess Policy to the Complaint.  *See Otworth v. S. Pac. Transp. Co.*,

26  166 Cal. App. 3d 452, 458-59 (1985).

   [5] *See Lenscrafters, Inc.*, 2008 WL 410243 at *5; *Hamilton*, 27 Cal. 4th at 718; *Finkelstein

27  v. 20th Century Ins. Co.*, 11 Cal. App. 4th 926 (1992); *Wolkowitz v. Redland Ins. Co.*, 111 Cal.
   App. 4th 154 (2003).

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS; CASE NO. CV 07 6493 JSW

1   attorneys' fees paid to the Entercom Parties' counsel in the underlying action, and that Entercom

2   is paying the remainder of the fees.  Under California law, additional fees incurred by the insured

3   in defending against a claim against a policy holder by reason of the insurer's breach of contract

4   are recoverable.  *See Archdale,* 154 Cal. App. 4th at 465 ("an "insurer who denies coverage . . . is

5   liable for the full amount which will compensate the insured for the detriment caused by the

6   insurer's breach of the express and implied obligation s of the contract").[6]

7       In addition, the Entercom Parties have alleged that they are suffering damages in the form

8   of the attorneys' fees and costs incurred in pursuing this lawsuit against American Home.

9   (Compliant, ¶¶ 18b, 56, 60.)  Again, such attorneys' fees constitute cognizable consequential

10  damages.  *Brandt v. Superior Court*, 37 Cal. 3d 813, 817-18 (1985) (holding that "when an

11  insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the

12  benefits due under a policy, it follows that the insurer should be liable in a tort action for that

13  expense").[7]

14      **C.    The Entercom Parties Allege Facts Supporting Their Claim For Preliminary
        And Permanent Injunctive Relief.**

15

16      The Entercom Parties plead sufficient facts to support a claim for preliminary and

17  permanent injunctive relief.  To state a claim for injunctive relief, the plaintiff must plead facts

    satisfying just two elements, "irreparable injury and the inadequacy of legal remedies."

18  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, (1982) (emphasis added) ("The Supreme

19
    Court has repeatedly held that the basis for injunctive relief in the federal courts has always been

20  irreparable injury and the inadequacy of legal remedies"); *see also Stanley v. Univ. of S. Cal.*, 13

21  F. 3d 1313, 1320 (9th Cir. 1994).  The Entercom Parties have alleged facts supporting both

22  elements, and American Home's argument to the contrary should be rejected for <u>two</u> reasons:

23

24          [6] This distinguishes this case from the case cited by American Home, in which <u>all</u> of the
        insured's litigation expenses were being paid by an insurer.  *See Hartford v. Superior Court*, 23
25      Cal. App. 4th 1774, 1781 (1994) (cited at page 6 of American Home's brief).

26          [7] American Home argues that the Entercom Parties have not sufficiently specified
        consequential damages attributable to the breaches of American Home's duties.  However, the
27      Complaint specifically alleges that the Entercom Parties have incurred the additional attorneys'
        fees described above as a consequence of American Home's breaches.

28

1    First, contrary to American Home's claim that "Entercom fails to allege any facts

2    establishing that American Home is involved in harmful conduct," the Entercom Parties plead

3    specifically that "[a]bsent such injunctive relief, there will be irreparable harm in that the

4    Entercom Parties will lose unique opportunities to reach a reasonable settlement with the Strange

5    family and the reputations of the Entercom Parties will be further damaged in the community."

6    (Compl. ¶ 70.) (emphasis added.)  The Complaint not only alleges that American Home has

7    breached its duties by improperly ignoring settlement demands in the past (Compl. ¶¶ 11, 50-51),

8    but also that as a result of American Home's actions, the Entercom Parties "will lose unique

9    opportunities to reach a reasonable settlement with the Strange family" in the future (given that

10   the *Strange* lawsuit is ongoing).  (Compl. ¶ 70.)  Thus, the Complaint alleges continuing harm.

11   *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 463 (2005) (stating that "[i]njunctive relief is

12   appropriate only when there is a threat of continuing misconduct.").  Here, it is alleged that

13   American Home refuses to attempt to settle the *Strange* lawsuit.  (Compl. ¶¶ 50:12-15, 59a-d.)

14   Furthermore, the alleged facts—loss of opportunity to settle and harm to reputation—show that

15   legal, monetary remedies would be inadequate to compensate the Entercom Parties. *All World*

16   *Prof. Travel Servs. v. Am. Airlines, Inc.*, 282 F. Supp. 2d 1161, 1176 (C.D. Cal. 2003) (denying

17   defendant's motion to dismiss because facts alleged in Complaint established insufficiency of

18   legal remedies).

19        Second, American Home's position that the Entercom Parties must plead that the balance

20   of the equities favors the Entercom Parties' position is contrary to applicable law.  As noted

21   above, to state a claim for injunctive relief, a plaintiff must allege only irreparable injury and facts

22   showing the inadequacy of legal remedies. *See Weinberger*, 456 U.S. at 312.  American Home

23   confuses the pleading requirements for an injunction with factors considered by the court in

24   deciding whether to actually issue an injunction.  Indeed, the case cited by American Home,

25   *Phillips v. Isham*, 11 Cal. App. 2d 537 (1952), did not involve the adequacy of the pleading, but

26   rather whether the lower court properly granted an injunction.  *Id.* (Stating, "It is the general rule

27   in this state that while the right to injunctive relief under proper circumstances is well established,

28   its issuance is largely discretionary with the court and depends upon a consideration of all the

1    equities between the parties."). Moreover, even though the Entercom Parties were not required to

2    plead facts regarding the "balance of the equities," the Complaint does in fact show that the

3    equities favor the Entercom Parties, stating, for example, that "American Home's assertion of the

4    'no voluntary payment' provision, while at the same time contending there was no coverage,

5    put[s] the Entercom Parties in a 'Catch-22': American Home [refuses] to take action to resolve

6    the *Strange* lawsuit and at the same time prevent[s] the Entercom Parties from doing so either."

7    (Compl. ¶ 51.)

8         **D.    American Home's Request For An Indefinite Stay Of These Proceedings**
            **Should Be Rejected.**
9

10        American Home asserts that this lawsuit — and in particular, resolution of the coverage

11    dispute — should be stayed <u>indefinitely</u> until the underlying *Strange* lawsuit has been fully

12    resolved.  (Def.'s Br. 9) (requesting that the "coverage action" not proceed.)  This Court has

13    already rejected American Home's request for a stay in denying American Home's Motion for

14    Administrative Relief.  (Order Denying Motions for Administrative Relief, 1-2.)  The Court

15    should again refuse to stay this action for the following <u>four</u> reasons.

16        <u>First</u>, the request for a stay disregards authorities providing that federal courts have a

17    "virtually unflagging obligation" to exercise the jurisdiction conferred upon them, and may only

18    abstain from hearing an action for damages (by, for example, issuing a stay) under "exceptional

19    circumstances."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813

20    (1976).  Furthermore, American Home's request for a stay is procedurally improper insofar as it

21    is not supported by a single piece of evidence favoring its position and it does not establish that

22    "extraordinary circumstances" support such a stay.  As noted in BENDER'S FEDERAL PRACTICE

23    FORMS (2007), a motion to stay a state court proceeding should be accompanied by an "Affidavit

24    in Support of Motion to Stay." *Id.* at 12-231 (proving a template for such an affidavit).

25        <u>Second</u>, the authorities relied upon by American Home are inapplicable.   In each of the

26    cases cited by American Home, the <u>insured</u>, not the insurer, requested a stay of the declaratory

27    relief proceedings. *Montrose*, 25 Cal. App. 4th at 906-07; *David Kleis, Inc.*, 37 Cal. App. 4th at

28    1035; *Haskel, Inc.*, 33 Cal. App. 4th at 1038.  Those courts explicitly acknowledged that the stay

1    was intended to <u>protect the insured</u> from prejudice (for example, to protect the insured from

2    having to "fight a two-front war, doing battle with the plaintiffs in the third party litigation while

3    at the same time devoting its money and its human resource to litigating coverage issues with its

4    carriers"). *Montrose*, 25 Cal. App. 4th at 909-10. Here, the insured has not requested a stay, and

5    the key depositions have already been taken in the underlying *Strange* lawsuit. American Home

6    contends that the case must be "stayed until the underlying action against the policyholder is

7    resolved." (Def.'s Br. 8:22-23.) But by the time the "underlying action against the policyholder

8    is resolved," there will be no need for a declaration regarding the Entercom Parties' right to settle.

9    Therefore, in this case, the policy considerations that sometimes counsel in favor of a stay,

10   counsel against it.

11        <u>Third</u>, in recognition of these different policy considerations, California courts resolve

12   coverage disputes prior to resolution of the underlying claim where the <u>insured</u> seeks a

13   declaration of rights. *See generally Lockheed Corp.*, 134 Cal. App. 4th 187. Just as in *Lockheed*

14   *Corporation*, the insured in this case seeks declaratory judgment in order to protect their rights,

15   and cannot wait until the underlying action has been resolved in order to do so without suffering

16   prejudice, as discussed above.

17        <u>Fourth</u>, contrary to American Home's contentions, the coverage questions raised in the

18   Entercom Parties' declaratory relief action do not "turn[] on facts to be litigated in the underlying

19   third party action." *David Kleis, Inc.*, 37 Cal. App. 4th at 1044. American Home has not and

20   cannot point to <u>any</u> potential verdict on any of the causes of action in the underlying *Strange*

21   lawsuit that would be inconsistent with, or otherwise affect, the declarations that the Entercom

22   Parties seek. The jury in the *Strange* lawsuit will not be asked to decide the precise questions at

23   issue in <u>this</u> case. For example, a key issue in determining coverage is whether "any aspect in the

24   causal series of events leading to the injury or damage" was unintended. *Jafari v. EMI Ins. Cos.*,

25   155 Cal. App. 4th 855, 899 (2007). The jury in *Strange* will not have to undertake this analysis of

26   each aspect of the causal series of events leading to Ms. Strange's death. In addition, the issue of

27   punitive damages as it relates to the present action does not turn on facts to be litigated in the

28   *Strange* matter. The Entercom Parties have already conceded that there is no coverage for

punitive damages, and have specifically carved out of the requested declaration any punitive

damages amounts.  (*See* Def.'s Br. at 4:10-13.) (requesting declaration of coverage "exclusive of

any punitive damages").[8]

### III.    CONCLUSION

For the foregoing reasons, the Entercom Parties respectfully submit that Defendant's

Motion to Dismiss should be denied.  However, if the court has concerns with the sufficiency of

any particular allegations, the Entercom Parties would respectfully request leave to amend, as

additional allegations of fact would establish that the Entercom Parties stated a claim.  Indeed, the

Entercom Parties' Motion for Summary Adjudication currently on file establishes not only that

they have stated a claim, but that they are entitled to the declarations requested as a matter of law.

Dated: March ___, 2008

FOLGER LEVIN & KAHN LLP

Douglas W. Sullivan
Attorneys for Plaintiffs
ENTERCOM SACRAMENTO, LLC, ENTERCOM
COMMUNICATIONS CORP., and JOHN GEARY

54007\2009\593033.4

---

[8] In the *Strange* lawsuit, the Entercom Parties intend to move for summary adjudication
that the *Strange* Plaintiffs are not entitled to punitive damages for numerous reasons, including
(1) punitive damages are not allowed under California law for wrongful death claims without a
criminal conviction, *Vander Lind v. Superior Court*, 146 Cal. App. 358, 364 (1983), and (2) under
California law, punitive damages are not allowed on the survivor action claims (the only other
causes of action) because Ms. Strange did not incur any "economic damages" prior to her death.
*Garcia v. Superior Court*, 42 Cal. App. 4th 177 (1996).  Moreover, no officer, director or
managing agent of Entercom Sacramento, LLC was involved with the Contest, a prerequisite for
punitive damages.  Cal. Civ. Code § 3294(b).