1  SUSAN K. SULLIVAN (SBN 156418)
   SEDGWICK, DETERT, MORAN & ARNOLD LLP
2  801 South Figueroa Street, 18th Floor
   Los Angeles, CA  90017
3  Telephone:  (213)-426-6900
   Facsimile:  (213) 426-6921
4  E-mail:  susan.sullivan@sdma.com

5  MARY P. MCCURDY (SBN 116812)
   CHRISTINA M. LAVANIER (SBN 233335)
6  McCURDY & FULLER LLP
   4300 Bohannon Drive, Suite 240
7  Menlo Park, CA 94025
   Telephone:  (650) 618-3500
8  Facsimile:   (650) 618-3599
   E-mail:  mary.mccurdy@mccurdylawyers.com
9          christina.lavanier@mccurdylawyers.com

10 Attorneys for Defendant
   AMERICAN HOME ASSURANCE COMPANY

11

12              UNITED STATES DISTRICT COURT

13    NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

14

15 ENTERCOM SACRAMENTO, LLC, a          CASE NO. CV 07-06493 JSW
   Delaware Limited Liability Corporation;
16 ENTERCOM COMMUNICATIONS CORP., a     **REQUEST FOR JUDICIAL NOTICE**
   Pennsylvania Corporation; and JOHN GEARY,  **REGARDING AMERICAN HOME'S**
17 an individual,                       **MOTION TO DISMISS**

18              Plaintiffs,             **Date:        April 25, 2008**
                                        **Time:        9:00 a.m.**
19        v.                            **Courtroom:  2, 17th Floor**
                                        **Judge:      Honorable Jeffrey S. White**
20 AMERICAN HOME ASSURANCE
   COMPANY, a New York Corporation,     **Complaint Filed:  December 28, 2007**
21
                Defendant.
22

         In response to the Court's Notice of Tentative Ruling and Questions for Hearing,

23 Defendant American Home Assurance Company hereby requests that this Court take judicial

24 notice pursuant to Federal Rule of Evidence 201 of the following:

25       1.      On October 2, 2007, in *LensCrafters, Inc, et al.. v. Liberty Mutual Fire Insurance*

26 *Company* Case No. C-07-2853, United States District Court for the Northern District of California,

27

28 28186

---

**Request For Judicial Notice Regarding American Home's Motion To Dismiss**
**CV 07-06493 JSW**

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA  94025
(650) 618-3500

1  Oakland Division, plaintiffs Lenscrafters, Inc. and EYEXAM of California filed a first amended

2  complaint, attached hereto as Exhibit 1.

3         2.      On October 19, 2007, in *LensCrafters, Inc., et al.. v. Liberty Mutual Fire Insurance*

4  *Company* Case No. C-07-2853, United States District Court for the Northern District of California,

5  Oakland Division, defendant Markel American Insurance Company filed a Motion to Dismiss

6  LensCrafters' Second and Third Claims for Relief, attached hereto as Exhibit 2.

7         3.      On January 8, 2008 in *LensCrafters, Inc. v. Liberty Mutual Fire Insurance*

8  *Company* Case No. C-07-2853, United States District Court for the Northern District of California,

9  Oakland Division, plaintiffs LensCrafters, Inc. and EYEXAM of California filed a Memorandum

10 of Points and Authorities in Opposition to Motions to Dismiss Second and Third Claims for Relief

11 Filed By Markel American Insurance Company, United States Fire Insurance Company and

12 Westchester Fire Insurance Company, attached hereto as Exhibit 3.

13

14 Dated:  April 24, 2008                         McCURDY & FULLER, LLP

15                                                */Mary P. McCurdy/*_____

16                                                MARY P. McCURDY
                                                 Attorneys for Defendant

17                                                AMERICAN HOME ASSURANCE
                                                 COMPANY

18

19

20

21

22

23

24

25

26

27

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA  94025
(650) 618-3500

28186

# EXHIBIT 1

RICHARD DeNATALE (California Bar No. 121416)
CELIA M. JACKSON (California Bar No. 124508)
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
Email:  richard.denatale@hellerehrman.com
Email:  celia.jackson@hellerehrman.com

Attorneys for Plaintiffs
LENSCRAFTERS, INC. and EYEXAM OF
CALIFORNIA, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LENSCRAFTERS, INC.; and EYEXAM OF CALIFORNIA, INC.;<br><br>                    Plaintiffs,<br><br>    v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY; and WESTCHESTER FIRE INSURANCE COMPANY,<br><br>                    Defendants. | Case No.:  C-07-2853 SBA<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs LensCrafters, Inc. and EYEXAM of California, Inc. (together, "LensCrafters") allege as follows:

## INTRODUCTION

1.    Defendants are insurers that sold LensCrafters primary, umbrella and/or excess insurance policies, the material terms of which are described below.  Those policies contain a duty to indemnify LensCrafters.  Pursuant to the implied covenant of good faith and fair dealing, defendants also have a duty to accept reasonable offers to settle claims.

2.    This action arises out of defendants' refusal and failure to indemnify LensCrafters and settle claims with respect to a putative class action lawsuit captioned *Melvin Gene Snow, et al. v. LensCrafters, Inc., et al.*, San Francisco Superior Court Case No. CGC-02-40554 (the "*Snow* Action").  In 2004, LensCrafters brought an action against Liberty Mutual Fire Insurance Company ("Liberty Mutual") and Executive Risk Specialty Insurance Company ("ERSIC") in the Northern District of California, Case No. C 04-1001 SBA, concerning insurance coverage for the *Snow* Action.  In that prior action, this Court found that Liberty Mutual  and ERSIC had a duty to defend the *Snow* Action.  The prior coverage action did not resolve the question of the insurers' duty to indemnify and the duty to settle.

3.    After several years of litigation in the *Snow* Action, the parties have reached a reasonable settlement that is contingent on approval and funding by defendants.  Although LensCrafters has requested that defendants accept the settlement, in accordance with the terms of their respective insurance policies, they have refused to do so.  Defendants' failure and refusal to acknowledge their indemnity obligation and agree to accept and fund a reasonable settlement have prevented LensCrafters from settling the *Snow* Action.  Defendants have therefore breached their duties under the policies.

4.    There is a present, active controversy between LensCrafters and its insurers concerning the insurers' duty to indemnify LensCrafters for and their duty to settle the *Snow* Action, and a dispute among the defendants themselves as to which insurer(s) must fund the settlement.  Therefore, LensCrafters brings this action for a declaration of the rights, duties and responsibilities of the parties under defendants' insurance policies.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

**THE PARTIES**

5.     Plaintiff LensCrafters, Inc. is an Ohio corporation with its principal place of business in Ohio.

6.     Plaintiff EYEXAM of California, Inc., fka EyeMed, Inc. ("EYEXAM") is a California corporation with its principal place of business in California.

7.     LensCrafters is informed and believes, and thereon alleges, that defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") is a Massachusetts corporation with its principal place of business in Massachusetts.

8.     LensCrafters is informed and believes, and thereon alleges, that defendant Executive Risk Specialty Insurance Company ("ERSIC") is a Connecticut corporation with its principal place of business in Connecticut.

9.     LensCrafters is informed and believes, and thereon alleges, that defendant United States Fire Insurance Company ("U.S. Fire") is a Delaware corporation with its principal place of business in New Jersey.

10.    LensCrafters is informed and believes, and thereon alleges, that defendant Markel American Insurance Company ("Markel") is a Virginia corporation with its principal place of business in Wisconsin.

11.    LensCrafters is informed and believes, and thereon alleges, that defendant Westchester Fire Insurance Company ("Westchester") is a New York corporation with its principal place of business in Pennsylvania.

**JURISDICTION**

12.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201.  There is complete diversity of citizenship between LensCrafters and defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

13.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, because the alleged events and/or omissions giving rise to this Complaint are alleged to have occurred in this District.

3

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

**FACTUAL ALLEGATIONS**

14.    Each of the defendants issued one or more policies of insurance to LensCrafters, the material terms of which are alleged below.  The policies are not being attached to this Complaint because of their bulk and because it would be wasteful and burdensome for the Court and the parties.

15.    LensCrafters has complied with all terms and conditions precedent of defendants' policies and is entitled to the benefit of insurance provided by them.

**The Liberty Mutual Policies**

16.    Liberty Mutual issued to LensCrafters the following Commercial General Liability policies (collectively, the "Liberty Mutual Policies"):

- Policy No. TB2-681-004130-038, effective February 1, 1998 to February 1, 1999;

- Policy No. RG2-681-004130-039, effective February 1, 1999 to February 1, 2000;

- Policy No. RG2-681-004130-030, effective February 1, 2000 to February 1, 2001;

- Policy No. RG2-681-004130-031, effective February 1, 2001 to February 1, 2002;

- Policy No. RG2-681-004130-032, effective February 1, 2002 to February 1, 2003;

- Policy No. RG2-681-004130-033, effective February 1, 2003 to February 1, 2004;

- Policy No. RG2-681-004130-034, effective February 1, 2004 to February 1, 2005;

- Policy No. RG2-681-004130-035, effective February 1, 2005 to February 1, 2006.

17.    LensCrafters, Inc. and EYEXAM are each a named insured under the Liberty Mutual Policies.  The Liberty Mutual Policies provide, *inter alia*, that Liberty Mutual "will

4

pay those sums that [LensCrafters] becomes legally obligated to pay as damages" because of "personal injury." The term "personal injury" is defined to include "injury. . . arising out of . . . [the] [o]ral or written publication of material that violates a person's right of privacy." Each of the Liberty Mutual Policies has limits of liability for personal injury of $3 million for each occurrence and $6 million in the aggregate.

### The ERSIC Policy

18.    ERSIC issued a Managed Care Organization Errors and Omissions Liability policy, Policy No. 8167-2076, effective November 12, 2001 to November 12, 2002 (the "ERSIC Policy"), which provides coverage to EYEXAM and LensCrafters, Inc.

19.    The ERSIC Policy provides coverage for "any Loss which the Insured is legally obligated to pay as a result of any Claim. . . ." The term "Loss" is defined to include "any monetary amount which an Insured is legally obligated to pay as a result of a Claim." The term "Claim" is defined as "any written notice received by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful Act." The term "Wrongful Act" is defined, *inter alia,* to mean "any actual or alleged act, error or omission in the performance of, or any failure to perform, Medical Information Protection by any Insured Entity or by any Insured Person acting within the scope of his or her duties or capacity as such . . . ." The term "Medical Information Protection" is defined as "maintaining the confidentiality of information regarding Medical Services and limiting the release or use of such information in conformance with requirements of law." The ERSIC Policy has limits of liability of $3 million for each Claim or Related Claims and $3 million in the aggregate.

### The U.S. Fire Policies

20.    U.S. Fire issued to LensCrafters the following Commercial Umbrella Policies (collectively, the "U.S. Fire Policies"):

- Policy No. 553-058755-2, effective February 1, 1998 to February 1, 1999;
- Policy No. 553-068740-7, effective February 1, 1999 to February 1, 2000;
- Policy No. 553-076092-8, effective February 1, 2000 to February 1, 2001.

LensCrafters, Inc., is a named insured under the U.S. Fire Policies.

5

21.    The U.S. Fire Policies provide that U.S. Fire "will pay on behalf of the 'Insured' those sums in the excess of the 'Retained Limit' which the 'Insured' by reason of liability imposed by law . . . shall become legally obligated to pay as damages for: 'Personal Injury' caused by an 'Occurrence' committed during the Policy Period."  The term "Personal Injury" is defined as "oral, written, televised, videotaped or electronic publication of material that violates a person's right of privacy."  Each of the U.S. Fire Policies has limits of liability for personal injury coverage of $25 million in excess of the retained limit for each occurrence and in the aggregate.

**The Markel Policy**

22.    Markel issued to LensCrafters a Commercial Umbrella Liability Policy, Policy No. CU-GA-1345-01, effective February 1, 2001 to February 1, 2002 (the "Markel Policy").  LensCrafters, Inc. and EYEXAM are each a named insured under the Markel Policy.

23.    The Markel Policy provides coverage, pursuant to Endorsement No. 4, for "Personal Injury" to the same extent such insurance is provided by "a policy listed in the Schedule of Underlying Insurance, and then only to the extent provided by such policy or policies."  The Schedule of Underlying Insurance lists "Liberty Mutual Ins. Policy No. RG2 681001430030 [sic] 02/01/01 to 02/01/02."  The Markel Policy has limits of liability for personal injury coverage of $15 million per occurrence and in the aggregate in excess of the limits of the underlying insurance.

**The Westchester Policies**

24.    Westchester issued to LensCrafters an Excess Umbrella Policy, Policy No. MEA-675648, effective February 1, 2001 to February 1, 2002 (the "Westchester Excess Policy").  The Westchester Excess Policy is excess to the Markel Policy, follows form to that policy in terms of its coverage and the named insureds, and provides coverage for "that amount of loss which exceeds the amount of loss payable by [the Markel Policy]."  The Westchester Excess Policy has limits of $10 million per occurrence and in the aggregate in excess of the Markel Policy.

6

25.     Westchester also issued to LensCrafters the following Commercial Umbrella Policies (collectively the "Westchester Umbrella Policies"; the Westchester Excess Policy and the Westchester Umbrella Policies are collectively referred to as the "Westchester Policies")):

- Policy No. CUA-150963, effective February 1, 2002 to February 1, 2003;
- Policy No. CUA-706488, effective February 1, 2003 to February 1, 2004;
- Policy No. CUW-774410, effective February 1, 2004 to February 1, 2005;
- Policy No. CUW-785695, effective February 1, 2005 to February 1, 2006.

LensCrafters, Inc. and EYEXAM are each a named insured under the Westchester Umbrella Policies.

26.     The Westchester Umbrella Policies provide that Westchester "will pay on behalf of the 'Insured' those sums in the excess of the 'Retained Limit' which the 'Insured' by reason of liability imposed by law . . . shall become legally obligated to pay as damages for: 'Personal Injury' arising out of an 'Occurrence'" during the policy period.  The term "personal injury" is defined to include injury arising out of "oral or written publication of material that violates a person's right of privacy . . . ."  Each of the Westchester Umbrella Policies has limits of liability for personal injury of $25 million in excess of the retained limit per occurrence and in the aggregate.

### Defense and Settlement of the *Snow* Action

27.     The *Snow* Action was originally filed against LensCrafters, Inc. and other entities on March 12, 2002 on behalf of a putative class.  The Second Amended Complaint ("SAC"), which is the current operative complaint, was filed on or about April 15, 2003.  At present, the two defendants in the *Snow* Action are LensCrafters, Inc. and EYEXAM.

28.     Among other things, the SAC alleges that LensCrafters disclosed private medical information of the putative plaintiff class, in violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*, thus violating the privacy rights of the putative plaintiff class.  The purported disclosures of private medical information is alleged to have occurred during the periods of defendants' policies described

in this Complaint.

29.     LensCrafters gave timely notice of the *Snow* Action to defendants. LensCrafters also requested that Liberty Mutual and ERSIC defend the *Snow* Action.  These insurers agreed to pay defense costs under a reservation of rights.  After payment of certain defense costs, however, both insurers then contended that they had no further duty to defend.

30.     On March 11, 2004, LensCrafters brought an action against Liberty Mutual in the Northern District of California, Case No. C 04-1001 SBA, for breach of contract and declaratory relief regarding Liberty Mutual's duty to defend and indemnify LensCrafters (the "Coverage Action").  On July 26, 2004, LensCrafters amended the complaint to add ERSIC as a defendant.  In the course of the Coverage Action, the parties filed cross-motions for summary judgment regarding Liberty Mutual's and ERSIC's respective obligations to defend LensCrafters.

31.     The Court, in an Order dated January 20, 2005, held that both Liberty Mutual and ERSIC had a duty to defend LensCrafters with respect to the *Snow* Action.  The Court further held  that the allegations in the *Snow* Action regarding disclosures of private medical information constituted "publication[s] of material that violate[] a person's right of privacy" as covered by the policies.

32.     By stipulation of the parties, LensCrafters' claims for indemnity alleged in the Coverage Action were dismissed without prejudice on grounds that they were unripe for adjudication at that time because the *Snow* Action was still being litigated.  The Stipulation and Order dismissing the indemnity claims provided that any party in the case could file a new action to adjudicate the dismissed claims, that such action must be filed in the Federal District Court for the Northern District of California, and that the parties consented to exclusive jurisdiction and venue of such an action in this Court.

33.     On November 22, 2005, the Court entered an Amended Judgment in the Coverage Action in favor of LensCrafters and against Liberty Mutual and ERSIC regarding the duty to defend.  Liberty Mutual has appealed from that judgment, and that appeal is

8

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF
THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

currently pending before the Ninth Circuit.

34.     As a result of a mediation in the *Snow* Action held on April 27, 2007 and subsequent negotiations, the parties to the *Snow* Action have agreed to a reasonable settlement contingent on the approval and funding by defendants.  The settlement is for less than the total limits of the defendant insurers' policies.

35.     A further mediation was held on July 26, 2007 to ask defendants to accept and fund the settlement.  The Superior Court hearing the *Snow* Action ordered defendants to attend that mediation.  While the other defendants appeared at the mediation, U.S. Fire refused to appear, in violation of the Court's order.

36.     The mediation on July 26 was unsuccessful.  Despite LensCrafters' request that defendant insurers agree to settle the *Snow* Action, and pay for the settlement under the indemnity provisions of their policies, defendants refused to do so.

37.     Defendant insurers have raised several purported coverage defenses and have taken contrary and conflicting positions about which of them must pay, about which policies must exhaust their limits of liability first, and about what their respective total limits of liability are for the *Snow* Action.  Defendants' refusal to acknowledge their indemnity obligations and their duty to settle the *Snow* Action for an amount within policy limits, and their disputes about which insurers must pay and in what order, has prevented the settlement of the *Snow* Action.  A present controversy exists with respect to defendants' obligations to indemnify LensCrafters, to settle the *Snow* Action, and to pay for a settlement in the *Snow* Action, and with respect to the parties' respective rights and obligations under the various insurance policies identified and described in this Complaint.

38.     Defendant insurers have breached their duty under the policies to settle the *Snow* Action by refusing to accept and fund a reasonable settlement within policy limits.  Defendants' actions have exposed LensCrafters to further litigation and the risk of a judgment in excess of policy limits.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

### FIRST CLAIM FOR RELIEF:
### DECLARATORY JUDGMENT RE
### DEFENDANTS' DUTY TO INDEMNIFY

39.     LensCrafters repeats and incorporates the allegations of paragraphs 1 through 38.

40.     Defendants have a duty under the terms of their respective insurance policies to indemnify LensCrafters in full for all legal liabilities they may incur in connection with the *Snow* Action.  The duty to indemnify includes the duty to fund a reasonable settlement.

41.     Defendants have each failed to honor and refused to accept their duty to indemnify LensCrafters by refusing to agree to settle and fund the settlement of the *Snow* Action.  Accordingly, LensCrafters seeks a declaration of rights concerning the duties of each insurer, concerning the applicable limits of liability of each defendant's policy for the *Snow* Action, and concerning which policies must pay and in what amounts.  LensCrafters further seeks a declaration that defendants and each of them have an obligation under their respective policies to settle the *Snow* Action and indemnify LensCrafters for such settlement, or to pay all legal liabilities that LensCrafters may incur in the future as a consequence of the *Snow* Action should it not be settled now.

42.     By reason of the foregoing, an actual and justiciable controversy presently exists between LensCrafters and defendants concerning their duty to indemnify LensCrafters in connection with the *Snow* Action.

### SECOND CLAIM FOR RELIEF:
### BREACH OF CONTRACT RE DEFENDANTS'
### DUTY TO INDEMNIFY AND DUTY TO SETTLE

43.     LensCrafters repeats and incorporates the allegations of paragraphs 1 through 38.

44.     Defendants have a duty to accept a reasonable settlement offer within policy limits.  This duty is implied in every insurance policy as part of the covenant of good faith and fair dealing.  LensCrafters has negotiated a reasonable settlement with the plaintiffs in the *Snow* Action, contingent on approval and funding by defendants.  At a mediation on

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

July 26, 2007, LensCrafters asked defendants to accept and fund that settlement to resolve the *Snow* Action and to limit LensCrafters' exposure to a judgment in excess of the settlement amount. Defendants refused. Defendants thereby breached their duty to LensCrafters by failing to indemnify LensCrafters and accept the settlement.

45.     As a direct and proximate result of defendants' breach of contract, defendants have deprived LensCrafters of the benefit of their policies, for which substantial amounts in premiums were paid. As a direct and proximate result of defendants' acts, LensCrafters has been damaged in an amount that is to be proved at trial and that is in excess of the jurisdictional requirements of this Court.

**THIRD CLAIM FOR RELIEF:**
**TORTIOUS BREACH OF THE COVENANT**
**OF GOOD FAITH AND FAIR DEALING AGAINST**
**DEFENDANTS U.S. FIRE, MARKEL AND WESTCHESTER**

46.     LensCrafters repeats and incorporates the allegations of paragraph 1 through 38.

47.     Implied in each of the U.S. Fire Policies, the Markel Policy, and the Westchester Policies is a covenant of good faith and fair dealing by the insurer that it will act in good faith and deal fairly with its insured; that it will do nothing to interfere with the right of its insured to receive the benefits of the insurance policy; that it will place the interests of its insured before its own interests; that it will exercise diligence, good faith and fidelity in safeguarding its insured's interests; that it will deal ethically with its insured and will fairly and adequately inform its insured with respect to the nature and scope of its insurance coverage.

48.     U.S. Fire has breached the implied covenant of good faith and fair dealing by, among other things:

(a)     Willfully disobeying a court order that directed U.S. Fire to attend a mediation session at which LensCrafters sought to settle the *Snow* Action;

(b)     Wrongfully and unreasonably denying coverage for the *Snow* Action;

11

(c) Failing to accept a reasonable settlement of the *Snow* Action within its policy limits, thereby exposing LensCrafters to further litigation and potential liability above the limits of the U.S. Fire Policies;

(d) Refusing to settle the *Snow* Action based on improper considerations concerning alleged coverage defenses and allocation issues;

(e) Failing to respond to a reasonable settlement demand;

(f) Failing to adequately investigate the claims in the *Snow* Action, LensCrafters' potential liability and the reasonableness of the settlement;

(g) Engaging in tactics designed to harass LensCrafters and obstruct LensCrafters' efforts to settle the *Snow* Action and obtain funding from its other insurers;

(h) Placing its own interests above those of LensCrafters for the purpose of retaining and utilizing money that should have been spent on settling the *Snow* Action;

(i) Refusing to communicate with LensCrafters regarding the settlement; and

(j) Compelling LensCrafters to initiate this litigation in order to obtain the rights and benefits to which it is entitled under the U.S. Fire Policies.

49. Markel has breached the implied covenant of good faith and fair dealing by, among other things:

(a) Wrongfully and unreasonably denying coverage for the *Snow* Action;

(b) Failing to accept a reasonable settlement of the *Snow* Action within its policy limits, thereby exposing LensCrafters to further litigation and potential liability above the limits of the Markel Policy;

(c) Refusing to settle the *Snow* Action based on improper considerations concerning alleged coverage defenses and allocation issues;

(d) Failing to respond to a reasonable settlement demand;

12

(e)    Failing to adequately investigate the claims in the *Snow* Action,
LensCrafters' potential liability and the reasonableness of the
settlement;

(f)    Placing its own interests above those of LensCrafters for the purpose of
retaining and utilizing money that should have been spent on settling
the *Snow* Action; and

(g)    Compelling LensCrafters to initiate this litigation in order to obtain the
rights and benefits to which it is entitled under the Markel Policy.

50.    Westchester has breached the implied covenant of good faith and fair dealing
by, among other things:

(a)    Wrongfully and unreasonably denying coverage for the *Snow* Action;

(b)    Failing to accept a reasonable settlement of the *Snow* Action within its
policy limits, thereby exposing LensCrafters to further litigation and
potential liability above the limits of the Westchester Policies;

(c)    Refusing to settle the *Snow* Action based on improper considerations
concerning alleged coverage defenses and allocation issues;

(d)    Failing to adequately investigate the claims in the *Snow* Action,
LensCrafters' potential liability and the reasonableness of the
settlement;

(e)    Placing its own interests above those of LensCrafters for the purpose of
retaining and utilizing money that should have been spent on settling
the *Snow* Action; and

(f)    Compelling LensCrafters to initiate this litigation in order to obtain the
rights and benefits to which it is entitled under the Westchester
Policies.

51.    U.S. Fire, Markel and Westchester, in breach of the implied covenant of good
faith and fair dealing, acted unreasonably in committing the wrongful acts alleged above for
the purpose of withholding from LensCrafters the rights and benefits to which it is entitled

13

under these defendants' policies.

52.    By reason of the wrongful conduct alleged herein, LensCrafters has sustained damages in an amount yet to be determined including, but not limited to, attorneys fees, related expenses and costs incurred in obtaining coverage under defendants' policies.

53.    The wrongful conduct of defendants alleged herein was done with a conscious disregard of LensCrafters' rights and with the intent to vex, injure or annoy LensCrafters, such as to constitute oppression, fraud or malice under California Civil Code section 3294, thereby entitling LensCrafters to punitive damages in an amount appropriate to punish or set an example of these defendants.

WHEREFORE, LensCrafters requests this Court to enter a judgment as follows:

1.    With respect to the First Claim for Relief, a declaration that defendants have a duty under the terms and conditions of their policies to indemnify LensCrafters in full for all legal liabilities that may be incurred in connection with the *Snow* Action, and must accept and fund any reasonable settlement of that action, subject only to the limits of liability set forth in the various policies; or if defendants fail to accept and fund a reasonable settlement within policy limits, that they are liable for the full amount of any liability incurred by LensCrafters even if it exceeds their policy limits;

2.    With respect to the Second Claim for Relief, damages according to proof at the time of trial, plus interest;

3.    With respect to the Third Claim for Relief, an award of actual and consequential damages according to proof at trial and interest allowed by law; punitive damages; and attorneys' fees and related expenses incurred in obtaining coverage as permitted by *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985);

4.    With respect to all Claims for Relief:

a.    LensCrafters' costs of suit incurred herein; and

b.    for such other, further, and/or different relief as the Court may deem just and proper.

14

DATED:  October 2, 2007                HELLER EHRMAN LLP


                                       By /s/ Richard DeNatale_____
                                            Richard DeNatale

                                       Attorneys for Plaintiffs
                                       LENSCRAFTERS, INC. and EYEXAM OF
                                       CALIFORNIA, INC.

1

## DEMAND FOR JURY TRIAL

2        Plaintiffs LensCrafters, Inc. and EYEXAM of California, Inc. hereby demand trial

3 by jury.

4

DATED:  October 2, 2007            HELLER EHRMAN LLP

5

6

7                                   By */s/ Richard DeNatale*

8                                      Richard DeNatale

9                                   Attorneys for Plaintiff
                                    LENSCRAFTERS, INC. and EYEXAM OF
10                                  CALIFORNIA, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

1    IRENE K. YESOWITCH  State Bar #111575
     CHIP COX  State Bar #159681
2    LONG & LEVIT LLP
     465 California Street, Suite 500
3    San Francisco, CA  94104
     TEL: (415) 397-2222  FAX: (415) 397-6392
4    iyesowitch@longlevit.com
     ChipC@longlevit.com
5

6    Attorneys for Defendant
     MARKEL AMERICAN INSURANCE COMPANY
7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11   LENSCRAFTERS, INC.; and EYEXAM OF          CASE No. CV-07-2853 SBA
     CALIFORNIA, INC.,
12                                              **MOTION TO DISMISS
                            Plaintiffs,         LENSCRAFTERS' SECOND AND
13                                              THIRD CLAIMS FOR RELIEF**
              vs.
14                                              Date:     January 22, 2007
     LIBERTY MUTUAL FIRE INSURANCE              Time:     1:00 P.M.
15   COMPANY; EXECUTIVE RISK                    Courtroom: 3
     SPECIALTY INSURANCE COMPANY;              Judge:    Hon. Saundra B. Armstrong
16   UNITED STATES FIRE INSURANCE
     COMPANY; MARKEL AMERICAN
17   INSURANCE COMPANY; and
     WESTCHESTER FIRE INSURANCE
18   COMPANY,

19                          Defendants.

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

                                                (No. CV-04-01001 SBA)

              MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

# TABLE OF CONTENT

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................ | 2 |
| II. | SUMMARY OF ARGUMENT ............................................................ | 2 |
| III. | PLAINTIFF'S FIRST AMENDED COMPLAINT ................................. | 3 |
| IV. | LENSCRAFTERS' SECOND AND THIRD CLAIMS ARE NOT CLAIMS UPON WHICH RELIEF CAN BE GRANTED UNDER OHIO OR CALIFORNIA LAW ...................................................................... | 5 |
| V. | LENSCRAFTERS' CLAIM FOR BREACH OF THE DUTY TO SETTLE HAS NOT ALLEGED THE REQUIRED EXCESS JUDGMENT AGAINST LENSCRAFTERS ................................................................................. | 6 |
| VI. | CONCLUSION ..................................................................................... | 10 |

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

# TABLE OF AUTHORITIES

## CASES

*Accord, D.H. Overmyer Telecasting Co., Inc. v. American Home Assurance Co.,*
29 Ohio App.3d 31, 502 N.E.2d 694 (1986) .......................................................................6

*Aerojet-General Corp. v. Transport Indemnity Co.,*
17 Cal.4th 38, 58 (1997) ...................................................................................................10

*Calich v. Allstate Ins. Co.,*
2004 Ohio 1619; 2004 Ohio App. LEXIS 1439 (2004) ....................................................6

*Camelot by the Bay Condominium Owners' Ass'n v. Scottsdale Ins. Co.,*
27 Cal.App.4th 33, 48 ........................................................................................................9

*Chitlik v. Allstate Ins. Co.,*
34 Ohio App.2d 193, 198 ...................................................................................................6

*Downing v. Strauch,*
265 F.3d 994, 1005 (9th Cir. 2001) ...................................................................................5

*Finkelstein v. 20th Century Ins. Co.,*
11 Cal.App.4th 926, 929-930 (1992) ..............................................................................8, 9

*Hamilton v. Maryland Casualty Co.,*
27 Cal.4th 718, 725 (2002) ................................................................................................8

*Henegan v. Merchants Mut. Ins. Co.,*
31 AD2d 12, 294 NYS2d 547 (1st Dept. 1968) ...............................................................6

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach (In re American
Continental Corp./Lincoln Savings & Loan Securities Litigation),*
102 F.3d 1524, 1537 (9th Cir. 1996) .................................................................................5

*Maduka v. Sunrise Hospital,*
375 F.3d 909,911 (9th Cir. 2004) ......................................................................................5

*Ohio Bar Liability Ins. Co. v. Hunt,*
152 Ohio App.3d 224, 232 .................................................................................................6

*RLI Ins. Co. v. CNA Casualty of California,*
141 Cal.App.4th 75 (2006) ..............................................................................................8, 9

*Roldan v. Allstate Ins. Co.,*
149 AD2d 20, 544 NYS2d 359 (2nd Dept. 1989) ............................................................6

*Romstadt v. Allstate Ins. Co.,*
59 F.3d 608, 615 (6th Cir. 1995) .....................................................................................6, 7

*Safeco Ins. Co. v. Superior Court,*
71 Cal.App.4th 782, 788 (1999) ......................................................................................8, 9

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

ii

(No. CV-04-01001 SBA)

*Travelers Ins. Co. v. Lesher,*
   187 Cal.App.3d 169, 186 (1986)...........................................................................................10

*Van Winlkle v. Allstate Ins. Co.,*
   290 F.Supp.2d 1158, 1162 (C.D. Cal. 2003)...............................................................5

*Washington Mutual Bank v. Superior Court,*
   24 Cal.4th 906, 920 (2001) ...........................................................................................5

*Western Mining Council v. Watt,*
   643 F.2d 618, 624 (9th Cir. 1981)..................................................................................5

*Wolkowitz v. Redland Ins. Co.,*
   112 Cal.App.4th 154, 162 ...............................................................................................8

**STATUTES**

California Code of Civil Procedure § 2860................................................................10

California Code of Civil Procedure § 877.6..............................................................8

**RULES**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...........................................1

DOCS\S6560-012\540154.V1

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

iii

(No. CV-04-01001 SBA)

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 22, 2007 at 1:00 p.m. in courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, 3rd Floor, Oakland, California, Defendant Markel American Insurance Company will move to dismiss the second and third claims for relief in the First Amended Complaint filed by plaintiffs LensCrafters, Inc. and Eyexam of California, Inc.

This Motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff's second claim for relief: breach of contract re defendants' duty to indemnify and duty to settle, and plaintiffs third claim for relief: tortuous breach of the covenant of good faith and fair dealing, as alleged in plaintiffs' First Amended Complaint, both fail to state a claim upon which relief can be granted.

This motion is based on the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and on such further argument and evidence as the Court may consider at the hearing of this motion.

Dated: October 19, 2007

LONG & LEVIT LLP

By _____
CHIP COX
Attorneys for Defendant
MARKEL AMERICAN
INSURANCE COMPANY

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

(No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Markel American Insurance Company has substantial, good faith concerns regarding the reasonableness of the proposed settlement in *Snow*.  Markel also objects to the efforts of plaintiffs LensCrafters, Inc. and Eyexam of California, Inc. (hereinafter collectively "LensCrafters") to withhold from Markel relevant information regarding the proposed settlement in *Snow*, and deprive Markel of its right to seek reimbursement or subrogation of any settlement amounts paid by Markel, and thereby coerce Markel into waiving its rights as the price of participating in the proposed settlement in *Snow*.

Unfortunately, these issues cannot be adequately addressed by motion to dismiss.  So Markel will address the issue that is appropriate to address by motion to dismiss: whether LensCrafters can state a claim upon which relief can be granted without an excess judgment in *Snow*.  Nonetheless, in the circumstances of this action it would be inappropriate to infer that by this motion Markel implicitly concedes any of the facts alleged by LensCrafters.  While that is typically the standard for a motion to dismiss, that standard is particularly applicable in this action.  *Even if* all of the facts alleged by LensCrafters were true, LensCrafters has not and cannot state a claim upon which relief can be granted for breach of the duty to settle *Snow*.

## II.    SUMMARY OF ARGUMENT

As LensCrafters alleges and readily admits, there is no judgment in *Snow*.  In both of its claims for bad faith failure to settle, LensCrafters alleges that Markel breached its duty to settle and thereby exposed LensCrafters to "the risk of a judgment in excess of policy limits."  Both Ohio and California law require the insured suffer an excess judgment before it can assert a claim for bad faith failure to settle.  Until an excess judgment is issued, an insured has suffered only "the risk" of an excess judgment, and there is no claim for relief from those "damages."  Consequently, LensCrafters cannot allege a claim for breach of the duty to settle *Snow*, because no excess judgment has been entered against LensCrafters in *Snow*.  LensCrafters' second and third claims for relief should be dismissed.

/ / /

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

(No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

### III.    PLAINTIFF'S FIRST AMENDED COMPLAINT

In its First Amended Complaint, LensCrafters alleged this coverage action arises out of defendants' refusal and failure to indemnify LensCrafters and settle claims made in a putative class action lawsuit captioned *Melvin Gene Snow et al. v. LensCrafters, Inc. et al.,* San Francisco Superior Court Case No. CGC-02-40554. (First Amended Complaint ("FAC") ¶2.) *Snow* was originally filed against LensCrafters and other entities on March 12, 2002. (FAC ¶27.) The Second Amended Complaint in *Snow* alleges, among other things, that LensCrafters disclosed private medical information of the putative class members, in violation of California's Confidentiality of Medical Information Act, violating the privacy rights of the class members. (FAC ¶28.)

Defendant Liberty Mutual allegedly issued Commercial General Liability insurance policies to LensCrafters effective February 1, 1998 to February 1, 1999 and renewed annually thereafter to February 1, 2006. (FAC ¶16.) In 2005, this Court issued an order in *LensCrafters, Inc. v. Liberty Mutual Fire Insurance Company*, U.S.D.C. (N.D. Cal.) case No. C-04-01001 SBA that both Liberty Mutual and Executive Risk Specialty Insurance Company ("ERSIC") had a duty to defend LensCrafters in *Snow*. The Court held that the allegations in *Snow* regarding the disclosure of confidential medical information constituted the publication of material that violated a person's right of privacy and asserted potentially covered claims under the Liberty Mutual and ERSIC policies. (FAC ¶31.)

Defendant Markel American Insurance Company issued Commercial Umbrella Liability Policy No. CU-GA-1345-01 to LensCrafters effective February 1, 2001 to February 1, 2002. (FAC ¶22.)

LensCrafters alleged that at a mediation in *Snow* on April 27, 2007 and in subsequent negotiations, the parties in *Snow* agreed to a reasonable settlement contingent on the approval and funding by the defendant insurance carriers. The settlement is allegedly for less than the total limits of the defendant insurers' policies. (FAC ¶34.)

/ / /

/ / /

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

3

(No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

1    The defendant insurers allegedly refused LensCrafters' request that defendants agree to

2    settle *Snow* and pay for the settlement under the indemnity provisions of their policies. (FAC

3    ¶36.) Defendants have raised several purported coverage defenses and allegedly taken contrary

4    and conflicting positions about which of them must pay, which policies must exhaust their limits

5    of liability first, and their respective total limits of liability for *Snow*. Defendants' refusal to

6    acknowledge their indemnity obligations and their duty to settle *Snow*, their disputes about which

7    insurers must pay and in what order, have allegedly prevented the settlement of *Snow*. (FAC

8    ¶37.) LensCrafters contends that defendants have breached their duty to settle *Snow* by refusing

9    to accept and fund a reasonable settlement within their policy limits, exposing LensCrafters to

10   further litigation and the risk of a judgment in excess of policy limits. (FAC ¶38.)

11   On the basis of these allegations, LensCrafters asserts their second claim for relief:  breach

12   of contract re defendants' duty to indemnify and duty to settle, and their third claim for relief:

13   tortious breach of the covenant of good faith and fair dealing. LensCrafters contends that

14   defendants have a duty to accept a reasonable settlement offer within policy limits. (FAC ¶44.)

15   LensCrafters contends they negotiated a reasonable settlement in *Snow*, contingent on approval

16   and funding by defendants. (FAC ¶44.) Defendants' alleged refusal to accept and fund that

17   settlement in *Snow* and limit LensCrafters' exposure to a judgment in excess of the settlement

18   amount is allegedly a breach of defendants' duty to indemnify plaintiffs and settle *Snow*. (FAC

19   ¶44.)

20   LensCrafters contends that Markel has breached its implied covenant of good faith and

21   fair dealing by wrongfully and unreasonably denying coverage for *Snow*; failing to accept a

22   reasonable settlement of *Snow*, thereby exposing LensCrafters to further litigation and potential

23   liability above the limits of the Markel policy; refusing to settle *Snow* based on improper

24   considerations concerning alleged coverage defenses and allocation issues; failing to respond to a

25   reasonable settlement demand; failing to adequately investigate the claims in *Snow* and the *Snow*

26   settlement; placing its interests about those of LensCrafters for the purpose of retaining and

27   utilizing money that should have spent to settle *Snow*; and compelling LensCrafters to initiate this

28   litigation to obtain the rights and benefits to which they are entitled under the Markel policy.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

4

(No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

(FAC ¶49.)  LensCrafters contends that by reason of this allegedly wrongful conduct, they have sustained damages in an amount yet to be determined, including, but not limited to, attorneys' fees, related expenses and costs incurred obtaining coverage under Markel's policy.

## IV.    LENSCRAFTERS' SECOND AND THIRD CLAIMS ARE NOT CLAIMS UPON WHICH RELIEF CAN BE GRANTED UNDER OHIO OR CALIFORNIA LAW

Dismissal of LensCrafters' second and third claim for relief is appropriate if it appears LensCrafters cannot allege facts that would entitle it to relief under those claims. *Maduka v. Sunrise Hospital*, 375 F.3d 909,911 (9th Cir. 2004).  Although factual allegations in the First Amended Complaint are accepted as true for purposes of this motion to dismiss, the Court need not assume the truth of legal conclusions merely because they are alleged in the First Amended Complaint. *Western Mining Council v. Watt*, 643 F.2d 618, 624 ((9th Cir. 1981).  Furthermore, the Court is permitted to consider other pleadings and admitted facts in the record of this action in deciding Markel's motion to dismiss. *See, Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach (In re American Continental Corp./Lincoln Savings & Loan Securities Litigation)*, 102 F.3d 1524, 1537 (9th Cir. 1996)(ample authority to recognize court records in related or underlying cases with direct relation to the matters at issue).

The law governing this motion is determined by California's choice of law rules. *Downing v. Strauch*, 265 F.3d 994, 1005 (9th Cir. 2001).  California applies the governmental interest analysis, *Van Winlkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162 (C.D. Cal. 2003), but, "a separate conflict of laws inquiry must be made with respect to each issue in the case." *Washington Mutual Bank v. Superior Court*, 24 Cal.4[th] 906, 920 (2001).  The first consideration is whether the laws of the different states conflict. *Van Winkle*, 290 F.Supp.2d at 1163.

The two states with an interest in LensCrafters' claims against Markel are California and Ohio. (New York law may apply to some issues of contract interpretation not relevant to this motion.)  coverage The Markel policy was issued to Luxottica U.S. Holdings Corporation in Cincinnati Ohio; the claims against LensCrafters in *Snow* are venued in California.  With respect to LensCrafters' claim for breach of the duty to settle, both Ohio and California are in substantial agreement on the need for an excess judgment to assert a claim for bad faith failure to settle.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

5

(No. CV-04-01001 SBA)

## V.    LENSCRAFTERS' CLAIM FOR BREACH OF THE DUTY TO SETTLE HAS NOT ALLEGED THE REQUIRED EXCESS JUDGMENT AGAINST LENSCRAFTERS

Regardless of whether their claims sound in contract or tort, and regardless of whether their claims are decided under Ohio or California law, LensCrafters' second and third claims alleging that Markel refused a reasonable settlement offer lack a required element to state a cause of action: an judgment in *Snow* in excess of policy limits.[1]

Ohio law requires the insured suffer an excess judgment to assert a claim for bad faith failure to settle. *Calich v. Allstate Ins. Co.*, 2004 Ohio 1619; 2004 Ohio App. LEXIS 1439 (2004), *appeal denied*, 103 Ohio St.3d 1409, 812 N.E.2d 1290; *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995). *Accord*, *D.H. Overmyer Telecasting Co., Inc. v. American Home Assurance Co.*, 29 Ohio App.3d 31, 502 N.E.2d 694 (1986)("before an injured person can maintain an action against the tortfeasor's insurer, the insured person must obtain a judgment against the insured"); *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 198 (settlement does not provide injured party right to assert claim against insurer). *But see*, *Ohio Bar Liability Ins. Co. v. Hunt*, 152 Ohio App.3d 224, 232 ("OBLIC has not cited any Ohio authority, not have we found any, requiring the existence of an excess judgment as a predicate for a cause of action for bad faith").

Calich sought coverage from Allstate Insurance Company for a consent judgment made without Allstate's consent. *Calich*, 2004 Ohio App. LEXIS 1439, at **5. Calich offered to settle her claim for Allstate's policy limits, and when Allstate refused her offer, the insured made an agreement with Calich for a consent judgment, and assigned his claims against Allstate. *Calich*, 2004 Ohio App. LEXIS 1439, at **6. Following the consent judgment and assignment, Calich filed a complaint against Allstate and alleged it had acted in bad faith. *Calich*, 2004 Ohio App. LEXIS 1439, at **7.

///

---

[1] New York law, if applicable, would also impose the same standard. *Henegan v. Merchants Mut. Ins. Co.*, 31 AD2d 12, 294 NYS2d 547 (1st Dept. 1968)("an insured is damaged ... upon entry of the excess final judgment in the damage suit case"); *Roldan v. Allstate Ins. Co.*, 149 AD2d 20, 544 NYS2d 359 (2nd Dept. 1989)(bad faith cause of action accrues at time of entry of judgment in underlying action).

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

6                                    (No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

V.    **LENSCRAFTER'S CLAIM FOR BREACH OF THE DUTY TO SETTLE HAS NOT ALLEGED THE REQUIRED EXCESS JUDGMENT AGAINST LENSCRAFTERS**

Regardless of whether their claims sound in contract or tort, and regardless of whether their claims are decided under Ohio or California law, LensCrafters' second and third claims alleging that Markel refused a reasonable settlement offer lack a required element to state a cause of action: an judgment in *Snow* in excess of policy limits.[1]

Ohio law requires the insured suffer an excess judgment to assert a claim for bad faith failure to settle. *Calich v. Allstate Ins. Co.*, 2004 Ohio 1619; 2004 Ohio App. LEXIS 1439 (2004), *appeal denied*, 103 Ohio St.3d 1409, 812 N.E.2d 1290; *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995). *Accord, D.H. Overmyer Telecasting Co., Inc. v. American Home Assurance Co.*, 29 Ohio App.3d 31, 502 N.E.2d 694 (1986)("before an injured person can maintain an action against the tortfeasor's insurer, the insured person must obtain a judgment against the insured"); *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 198 (settlement does not provide injured party right to assert claim against insurer). *But see, Ohio Bar Liability Ins. Co. v. Hunt*, 152 Ohio App.3d 224, 232 ("OBLIC has not cited any Ohio authority, not have we found any, requiring the existence of an excess judgment as a predicate for a cause of action for bad faith").

*Calich* sought coverage from Allstate Insurance Company for a consent judgment made without Allstate's consent. *Calich*, 2004 Ohio App. LEXIS 1439, at **5. Calich offered to settle her claim for Allstate's policy limits, and when Allstate refused her offer, the insured made an agreement with Calich for a consent judgment, and assigned his claims against Allstate. *Calich*, 2004 Ohio App. LEXIS 1439, at **6. Following the consent judgment and assignment, Calich filed a complaint against Allstate and alleged it had acted in bad faith. *Calich*, 2004 Ohio App. LEXIS 1439, at **7.

/ / /

---

[1] New York law, if applicable, would also impose the same standard. *Henegan v. Merchants Mut. Ins. Co.*, 31 AD2d 12, 294 NYS2d 547 (1st Dept. 1968)("an insured is damaged ... upon entry of the excess final judgment in the damage suit case"); *Roldan v. Allstate Ins. Co.*, 149 AD2d 20, 544 NYS2d 359 (2nd Dept. 1989)(bad faith cause of action accrues at time of entry of judgment in underlying action).

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

6                                          (No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

The Ohio Court of Appeals reversed a judgment in favor of Calich on her claim for bad

faith failure to settle, because no excess judgment had been entered against Allstate's insured.

> (I)mplicit in bringing an action against an insurer for bad faith with respect to settling a claim within policy limits, is a requirement that there be an excess judgment against the insured.

> In cases where an excess judgment has not been adjudicated, an agreed judgment between the insured and a third party is unenforceable against an insurer.  Therefore, it follows, that where the insurer has refused to settle a case, an injured third party cannot sue the insurer directly, or via assignment, for bad faith refusal to settle in the absence of an adjudicated excess judgment against the insured.

*Calich*, 2004 Ohio App. LEXIS 1439, at **4-5 (citations omitted).

The dissent in *Calich* noted the prior decision in *Hunt* held an insured could assert a claim

for bad faith failure to settle without a judgment in excess of applicable policy limits, *Calich*,

2004 Ohio App. LEXIS 1439, at **15-18, and on that basis concluded that Ohio law was

unsettled.  2004 Ohio App. LEXIS 1439, at **18.  The Ohio Supreme Court subsequently denied

review of *Calich*, however, and affirmed the decision in favor of Allstate.  *Calich*, 812 N.E.2d at

1290.

Romstadt sought coverage from Allstate Insurance Company for an agreed judgment

under an assignment from Allstate's insured.  *Romstadt*, 59 F.3d at 610.  Romstadt had offered to

settle his claim for policy limits, which Allstate initially rejected.  *Romstadt*, 59 F.3d at 610.

Romstadt then accepted an agreed judgment and an assignment of the insured's claims against

Allstate.  *Romstadt*, 59 F.3d at 610.

The district court granted summary judgment for Allstate, which the United States Court

of Appeals for the Sixth Circuit affirmed.  "(U)nder Ohio law, implicit in bringing an action

against an insurer for bad faith with respect to settling a claim within policy limits, is a

requirement that there be an excess judgment against the insured."  *Romstadt*, 59 F.3d at 611.

After reviewing prior decisions from Ohio state courts, the court concluded that "under Ohio law,

where the insurer has not refused to *defend* the insured, but has only refused to *settle* the case, an

injured third party cannot sue the insurer directly, or via assignment, for bad faith refusal to settle

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

7

(No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

1    in the absence of an *adjudicated* excess judgment against the insured." *Romstadt*, 59 F.3d at 615

2    (emphasis in original).

3        California law applies a substantially similar standard, which also precludes LensCrafters'

4    claim for breach of the duty to settle as a matter of law. *Hamilton v. Maryland Casualty Co.*, 27

5    Cal.4th 718, 725 (2002)(assignment of claim for bad faith failure to settle is not operative "and the

6    claimant's action against the insurer does not mature, until a judgment in excess of the policy

7    limits has been entered against the insured"); *RLI Ins. Co. v. CNA Casualty of California*, 141

8    Cal.App.4th 75 (2006)(settlement by excess insurer after primary insurer refused allegedly

9    reasonable settlement offer within primary insurer's policy limits did not support equitable

10   subrogation claim for bad faith); *Wolkowitz v. Redland Ins. Co.*, 112 Cal.App.4th 154, 162

11   ("essential element of a cause of action for breach of the implied covenant based on the refusal to

12   settle is resulting damages"); *Safeco Ins. Co. v. Superior Court*, 71 Cal.App.4th 782, 788

13   (1999)("cause of action for bad faith refusal to settle arises only after a judgment has been

14   rendered in excess of the policy limits"); *Finkelstein v. 20th Century Ins. Co.*, 11 Cal.App.4th 926,

15   929-930 (1992)(no cause of action for bad faith failure to settle absent judgment in excess of

16   policy limits, even though insured contributed to settlement); *Doser v. Middlesex Mutual Ins. Co.*,

17   101 Cal.App.3d 883, 891-892 (1980) (settlement before any excess judgment issued cannot

18   support claim for bad faith failure to settle).

19       The standard has been applied by California courts in a wide variety of circumstances to

20   deny liability for an insurer's alleged failure to accept a reasonable settlement offer, absent an

21   excess judgment. In *Hamilton*, the California Supreme Court held that an order confirming the

22   settlement was made in good faith under California Code of Civil Procedure § 877.6 did not cure

23   the lack of an excess judgment, and did not permit Hamilton to bring action for breach of the duty

24   to settle. *Hamilton*, 27 Cal.4th at 734. Similarly, a bankruptcy court order approving a settlement

25   and allowing a claim against the bankruptcy estate did not cure the lack of an excess judgment

26   and could not support a claim for bad faith failure to settle. *Wolkowitz*, 112 Cal.App.4th at 158,

27   166. A settlement paid in part by an excess insurer after the primary insurer refused an allegedly

28   reasonable settlement offer within the primary insurer's policy limits could not support a claim

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

8                    (No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

1   against the primary insurer for bad faith failure to settle, because there was no excess judgment.

2   *RLI Ins. Co.*, 141 Cal.App.4th at 82 ("without an excess judgment, the primary insurer's refusal to

3   settle is not actionable"). A stipulated judgment, paid in part by one insurer, with the claim

4   against another insurer for the balance of the settlement assigned to the plaintiff could not support

5   a claim for bad faith failure to settle. *Safeco*, 71 Cal.App.4th at 789. A settlement funded in part

6   by the insured, with an assignment of the insured's claim against his insurer for the remainder of

7   the settlement, could not support a claim for bad faith. "Since there was no judgment in excess of

8   the policy limits, appellants cause of action never matured." *Finkelstein*, 11 Cal.App.4th at 930.

9   Nor does a claim for bad faith failure to settle filed while the underlying action is still pending

10  state a cause of action. *Doser*, 101 Cal.App.3d at 892.

11      As in Ohio, there was a decision by the California Court of Appeals, decided before the

12  California Supreme Court issued *Hamilton*, which asserted that a plaintiff could assert a claim for

13  bad faith failure to settle without an excess judgment. *Camelot by the Bay Condominium*

14  *Owners' Ass'n v. Scottsdale Ins. Co.*, 27 Cal.App.4th 33, 48. That discussion of the duty to settle

15  is dicta, however, as the court ultimately concluded Scottsdale did not breach its good faith duty

16  to settle. *Camelot by the Bay*, 27 Cal.App.4th at 53-54. That dicta was "overruled" by the

17  California Supreme Court in *Hamilton*.

18      In its motion for leave to file its First Amended Complaint, LensCrafters argued that all it

19  was required to do was plead that it suffered damages. Were it required to plead its alleged

20  damages in more detail, LensCrafters explained that it would allege that its damages are its

21  continued defense of *Snow* with all of its attendant costs. There are several shortcomings with

22  this argument. First, that same argument was inherently present in every decision discussed

23  above, because in every case the insured was compelled to continue litigation when the allegedly

24  reasonable settlement demand was refused by the insurer, yet in none of those decisions was the

25  inherent cost of continuing to defend the underlying action recognized as potential damages

26  caused by the insurer's refusal to accept the settlement demand.

27      Second, while a plaintiff can generally plead damages, it must plead a claim that *could*

28  support a cause of action for bad faith. There must be at least a possibility of damages caused by

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

9

(No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

1   Markel's alleged refusal to accept an allegedly reasonable settlement offer.  As LensCrafters

2   noted in their First Amended Complaint, however, this Court previously held Liberty Mutual had

3   a duty to defend *Snow* under the Liberty Mutual policies.  (FAC ¶ 31.)  That duty includes the

4   obligation to provide sufficient resources to fund a "reasonable and necessary" defense, *Aerojet-*

5   *General Corp. v. Transport Indemnity Co.*, 17 Cal.4[th] 38, 58 (1997), by competent defense

6   counsel.  *Travelers Ins. Co. v. Lesher*, 187 Cal.App.3d 169, 186 (1986).  LensCrafters does not

7   allege, and Markel does not understand LensCrafters to imply, that Liberty Mutual has breached

8   that duty.  Rather, it appears LensCrafters means to refer, at least in part, to the additional defense

9   costs it has chosen to incur by selecting "independent counsel" with hourly rates higher than those

10  paid by Liberty Mutual "in the ordinary course of business in the defense of similar actions in the

11  community."  California Civil Code § 2860 (c)(limiting insurer's obligation to pay fees of

12  independent counsel selected by insured).  Those are not "damages" caused by Markel's alleged

13  refusal to accept an allegedly reasonable settlement offer, and they were voluntarily incurred by

14  LensCrafters when they choose to pay defense counsel more than Liberty Mutual pays to defend

15  similar actions.

16       Ohio and California law are in substantial agreement on this point: a cause of action for

17  breach of the duty to settle has not "matured" under California law absent an excess judgment,

18  and an excess judgment is a requirement for a claim for bad faith failure to settle under Ohio law.

19  There is admittedly no excess judgment in *Snow*, and no claim for bad faith failure to settle *Snow*

20  can be alleged.

21  **VI.   CONCLUSION**

22       Markel has and will continue to seek information from LensCrafters regarding the

23  proposed settlement in *Snow*, which Markel requires to determine the reasonableness of the

24  proposed settlement.  Without LensCrafters' disclosure of that information, however, Markel is

25  unreasonably prevented from ascertaining the reasonableness of the proposed settlement, and

26  prevented from participating in the settlement on an informed basis.  As Markel's efforts to

27  investigate the proposed settlement continue, LensCrafters should not be permitted to leverage its

28  efforts to coerce Markel to participate in the settlement by waiving its right to seek

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

10

(No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

1    reimbursement or subrogation by prematurely asserting a bad faith claim that is not recognized

2    under Ohio or California law.

3         An excess judgment is required to assert a claim for bad faith failure to settle.

4    LensCrafters' efforts to characterize as "damages" the defense costs it allegedly incurs in addition

5    to the "reasonable and necessary" defense provided by Liberty Mutual is an effort to circumvent

6    the requirement, and the exception would quickly swallow the rule. Every party to civil litigation

7    suffers *some* detriment from defending a claim in litigation, even if they are being fully defended

8    by a primary insurance carrier. LensCrafters' contention that these additional defense costs are

9    caused by Markel's failure to accept an allegedly reasonable settlement offer, rather than by the

10   initiation of the *Snow* litigation, or perhaps by Liberty Mutual's failure to "fully" defend

11   LensCrafters, is an effort to manufacture causation that should not be recognized, as a matter of

12   law. LensCrafters' claims fail to state a claim for bad faith failure to settle under both Ohio and

13   California law, and for these reasons, Markel respectfully asks the Court grant its motion to

14   dismiss the second and third claims for relief in LensCrafters' First Amended Complaint.

15   Dated:  October 19, 2007                     LONG & LEVIT LLP

16

17                                     By _____

18                                        CHIP COX
                                          Attorneys for Defendant
19                                        MARKEL AMERICAN
                                          INSURANCE COMPANY

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

11                                    (No. CV-04-01001 SBA)

MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF

**EXHIBIT 3**

RICHARD DeNATALE (California Bar No. 121416)
CELIA M. JACKSON (California Bar No. 124508)
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
Email:  richard.denatale@hellerehrman.com
Email:  celia.jackson@hellerehrman.com

Attorneys for Plaintiffs
LENSCRAFTERS, INC. and EYEXAM OF
CALIFORNIA, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENSCRAFTERS, INC. and EYEXAM OF CALIFORNIA, INC.,<br><br>                           Plaintiffs,<br><br>     v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY and WESTCHESTER FIRE INSURANCE COMPANY,<br><br>                           Defendants,<br><br>AND RELATED COUNTER- AND CROSS-CLAIMS. | Case No.:  C-07-2853 SBA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL AMERICAN INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY AND WESTCHESTER FIRE INSURANCE COMPANY**<br><br>Date:  January 29, 2008<br>Time:  1:00 p.m.<br>Courtroom:  3<br>The Hon. Saundra Brown Armstrong |

1

**Table of Contents**

2

**Page**

3   I.     INTRODUCTION ........................................................................................ 1

4   II.    STATEMENT OF FACTS ........................................................................... 2

5          A.    The Snow Action And The Settlement Proposal .......................... 2

6          B.    The Events Leading To Insurers' Breach Of The Insurance Contracts ..................... 2

7          C.    The Procedural History Leading To Insurers' Motion To Dismiss ........................... 3

8   III.   THE APPLICABLE LEGAL STANDARDS ............................................... 4

9          A.    Under Federal Law, The Court Must Deny Insurers' Motions To
10               Dismiss As Long As The Complaint Potentially Sets Forth A Claim
                 For Relief ....................................................................................... 4
11
12         B.    The Federal Rules Require Only That A Complaint Provide Notice
                 To The Defendant Of The Claim At Issue ................................... 5
13
           C.    The Duty To Settle Arises From The Covenant Of Good Faith And
14               Fair Dealing Implied In Every Insurance Policy, Including Excess
                 Policies .......................................................................................... 5
15
16  IV.    LENSCRAFTERS HAS SUFFICIENTLY PLEADED A CLAIM FOR
           BREACH OF CONTRACT REGARDING INSURERS' DUTY TO
17         SETTLE ....................................................................................................... 6

18         A.    LensCrafters Has Pleaded Each Necessary Element For A Breach Of
                 Contract Claim .............................................................................. 6
19
           B.    No Special Exemptions To the Pleading Rules Apply To The Duty To
20               Settle .............................................................................................. 8

21         C.    Insurers Breached Their Duty To Settle When They Refused To
22               Approve And Fund The Snow Settlement ...................................... 9

23         D.    Insurers' Motion To Dismiss Is Based On Improper Speculation
                 About LensCrafters' Damages ....................................................... 11
24
    V.     LENSCRAFTERS HAS SUFFICIENTLY  PLEADED A CLAIM FOR
25         TORTIOUS  BREACH OF THE COVENANT OF GOOD FAITH AND
           FAIR DEALING ........................................................................................... 13
26
27  VI.    CONCLUSION ............................................................................................ 14

28

i

**Table of Authorities**

**Cases**

*Archdale v. American Int'l Specialty Lines Ins. Co.*,
   154 Cal.App.4th 449 (2007) ................................................................ 6

*Austin v. Terhune*,
   367 F.3d 1167 (9th Cir. 2004) ............................................................ 5

*Barney v. Aetna Cas. & Sur. Co.*,
   185 Cal.App.3d 966 (1986) ............................................................... 10

*Bautista v. Los Angeles County*,
   216 F.3d 837 (9th Cir. 2000) ............................................................. 5

*Bell Atlantic Corp. v. Twombley*,
   __ U.S. __, 127 S.Ct. 1955 (2007) ................................................ 4, 8

*Bodenhamer v. Superior Court*,
   192 Cal.App.3d 1472 (1987) ............................................................. 10

*Bullis v. Security Pac. Nat'l Bank*,
   21 Cal.3d 801 ..................................................................................... 7

*Calich v. Allstate Ins. Co.*,
   2004 WL 626143 (Ohio App. Ct. March 31, 2004) ......................... 11

*Camelot by the Bay Condominium Owner's Ass'n, Inc. v. Scottsdale Ins. Co.*,
   27 Cal.App.4th 33 (1994) .................................................................. 10

*Crisci v. Security Ins. Co. of New Haven, Conn.*,
   66 Cal.2d 425 (1967) ..................................................................... 6, 12

*Corsican Prods. v. Pitchess*,
   338 F.2d 441 (9th Cir. 1964) ............................................................. 4

*Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.*,
   227 Cal.App.3d 563 (1991) .......................................................... 6, 8, 9

*Dion LLC v. Infotek Wireless, Inc.*,
   Slip Copy, 2007 WL 3231738  (N.D. Cal. Oct. 30, 2007) ............... 5

*Dixon Mobil Homes, Inc. v. Walters*,
   48 Cal.App.3d 964 (1975) ................................................................. 7

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) ......................................................................... 4

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*,
   135 Cal.App.4th 958 (2006) ............................................................. 8

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ............................................................. 4

*Guebara v. Allstate Ins. Co.,*
    237 F.3d 987 (9th Cir. 2001)...................................................................................... 14

*Hamilton v. Maryland Cas. Co.,*
    27 Cal.4th 718 (2002).................................................................................... 6, 11

*Isaacson v. California Ins. Guarantee Assn.,*
    44 Cal.3d 775 (1988)......................................................................................... 11

*J.B. Aguerre, Inc. v. American Guarantee & Liab. Ins. Co.,*
    59 Cal.App.4th 6 (1997)................................................................................... 10

*Johansen v. California State Auto. Ass'n Inter-Insurance Bureau,*
    15 Cal.3d 9 (1975)........................................................................................ 5, 6

*Jordan v. Allstate Ins. Co.,*
    148 Cal.App.4th 1062 (2007)............................................................................ 6

*Karseal Corp. v. Richfield Oil Corp.,*
    221 F.2d 358, (9th Cir. 1955)............................................................................. 8

*Kelley v. British Commercial Ins. Co.,*
    221 Cal.App.2d 554 (1963)............................................................................ 6, 8

*Larraburu Bros., Inc. v. Royal Indem. Co.,*
    604 F.2d 1208 (9th Cir. 1979)................................................................. 10, 11, 12

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,*
    507 U.S. 163 (1993)........................................................................................... 5

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001)............................................................................... 5

*Love v. Fire Ins. Exch.,*
    221 Cal.App.3d 1136 (1990).............................................................................. 14

*Mercado v. Allstate Ins. Co.,*
    340 F.3d 824 (9th Cir. 2003).............................................................................. 11

*Neal v. Farmers Ins. Exchange,*
    21 Cal.3d 910 (1978)....................................................................................... 12

*Ohio Bar Liab. Ins. Co. v. Hunt,*
    152 Ohio App. 3d 224 (2003) ........................................................................... 11

*Peters v. Fair,*
    427 F.3d 1035 (6th Cir 2005).............................................................................. 5

*Phoenix Ins. Co. v. United States Fire Ins. Co.,*
    189 Cal.App.3d 1511 (1987)............................................................................... 9

*Reichert v. General Ins. Co. of Am.,*
    68 Cal.2d 822 (1968)........................................................................................ 9

iii

*Schwartz v. State Farm Fire & Cas. Co.*,
    88 Cal.App.4th 1329 (2001).................................................................................... 9

*Tan Jay Int'l, Ltd. v. Canadian Indem. Co.*,
    198 Cal.App.3d 695 (1988)................................................................................... 13

*United States v. City of Redwood City*,
    640 F.2d 963 (9th Cir. 1981)................................................................................... 4

*Valentine v. Aetna Ins. Co.*,
    564 F.2d 292 (9th Cir. 1977)................................................................................... 8

*Wyler Summit P'ship v. TBS, Inc.*,
    135 F.3d 658 (9th Cir. 1998)................................................................................... 4

**Statutes**

Cal. Civ. Code § 56 ..................................................................................................... 2

Cal. Civ. Code § 3300 ............................................................................................... 12

Cal. Civ. Code § 3333 ............................................................................................... 12

Fed. R. Civ. P. 8(a) ................................................................................................. 4, 5

Fed. R. Civ. P. 12(b)(6)............................................................................................... 4

**Other Authorities**

4 Witkin Cal, Procedure (4th ed. 1997) Pleading, § 476 ................................................ 7

iv

## I.       INTRODUCTION

Plaintiffs (together, LensCrafters) are defendants in the *Snow* action, a putative class action lawsuit that has been pending for nearly six years.  The potential class in *Snow* consists of more than 1.3 million members, each of whom seeks (among other things) a $1,000 nominal damages award against LensCrafters.  A judgment of even a fraction of this size impacts the coverage provided by the excess insurers—Markel American Insurance Company ("Markel"), United States Fire Insurance Company ("U.S. Fire") and Westchester Fire Insurance Company ("Westchester") (collectively "Insurers").

Several months ago, LensCrafters and the *Snow* plaintiffs negotiated a settlement-in-principle of the *Snow* case, contingent on approval and funding by LensCrafters' insurers.  The primary insurers—Liberty Mutual and ERSIC—have agreed that the settlement is reasonable and offered their policy limits to fund the settlement.  But additional amounts are required from the excess insurers to fund the settlement in its entirety.  As alleged in the First Amended Complaint ("FAC"), Insurers have refused to contribute, thereby breaching their duty to settle and causing ongoing harm to LensCrafters.

Yet Insurers contend that LensCrafters is powerless to seek redress for their breaches, claiming that LensCrafters' newly pleaded claims are not ripe for adjudication.  The Court should deny Insurers' motions.  The FAC states the necessary elements for claims of breach of the duty to settle and tortious breach of the covenant of good faith and fair dealing.  In their motions, Insurers try to pierce the allegations of the FAC to argue, for example, that LensCrafters has suffered no damages as a result of Insurers' failure to settle the *Snow* action, or that they have not breached any duty, or that exceptions to the general rules of pleading apply to claims for breach of the duty to settle.  But such factual issues should be the subject of discovery, and then tested through motions or trial before a jury.  Insurers may not simply quash LensCrafters' claims at the outset of this case, and thereby insulate themselves from their refusal to settle and the consequential damages they have caused to LensCrafters.

California law is clear that excess insurers owe a duty to settle.  Because, as alleged in the FAC, that duty has been breached and LensCrafters has suffered damages as a result, LensCrafters

1

has a ripe claim.  In the Second Claim for Relief, LensCrafters has pleaded a cause of action for

breach of contract for Insurers' failure to accept a reasonable settlement of the *Snow* case in

violation of the implied covenant of good faith and fair dealing.  In the Third Claim for Relief,

LensCrafters has pleaded a cause of action in tort arising out of the same events.  Both claims are

sufficiently pleaded under the notice pleading rules that apply in federal court and are ripe for

adjudication.

## II.    STATEMENT OF FACTS

### A.    The *Snow* Action And The Settlement Proposal

The *Snow* action was filed as a purported class action lawsuit in March 2002.  FAC, ¶ 27.

Plaintiffs' complaint arises from a "co-location" model used by LensCrafters, Inc. and EYEXAM

of California, Inc. in more than 90 stores located in California.  Plaintiffs seek to certify a

California-only class of consumers who had their eyes examined by an optometrist employed by

EYEXAM and then purchased eyewear from LensCrafters, Inc. on the same day.  Jackson Dec.,

¶ 3.  Plaintiffs allege, among other things, that LensCrafters disclosed their confidential medical

information in violation the California Confidentiality of Medical Information Act ("COMIA"),

Cal. Civ. Code § 56 *et seq*.  FAC, ¶ 28; Jackson Dec., ¶ 4.  COMIA provides for a nominal damages

remedy of $1,000 for each violation.  Jackson Dec., ¶ 4.

The parties to the *Snow* action have litigated that case for nearly six years.  In early 2007,

the parties began serious settlement discussions with the assistance of  the Hon. Edward A. Infante

(Ret.) and the Hon. Ronald M. Sabraw (Ret.), both of whom have acted as mediators at multiple

mediation sessions.  Jackson Dec., ¶¶ 5-7; FAC, ¶ 34.  As a result of these intensive, arms-length

negotiations, in June 2007 the parties to the *Snow* case reached a settlement-in-principle that was

expressly conditioned on LensCrafters' insurers approving and funding the settlement.  FAC, ¶ 34;

Jackson Dec., ¶ 5.

### B.    The Events Leading To Insurers' Breach Of The Insurance Contracts

On June 21, 2007, LensCrafters communicated the terms of the settlement to its insurers.

Jackson Dec., ¶ 6.  For the last several months, LensCrafters has been negotiating with the Insurers

to obtain approval and funding for the settlement.  *Id.,* ¶ 7.  The primary insurers—Liberty Mutual

and ERSIC—have agreed that the proposed settlement is reasonable and have offered to contribute their limits of liability. *Id.* But additional funds are needed from the excess insurers—U.S. Fire, Markel, and Westchester—to pay for the settlement. *Id.* To date, these Insurers have refused to accept the proposed settlement and provide the necessary funding. *See* FAC, ¶ 36; Jackson Dec., ¶ 7. The settlement has been stalled for several months, and LensCrafters continues to be embroiled in expensive and time-consuming litigation. Jackson Dec., ¶ 7.

### C. The Procedural History Leading To Insurers' Motion To Dismiss

After LensCrafters filed its original complaint, U.S. Fire moved to dismiss this action in its entirety in favor of a coverage action it had preemptively filed in New York. The Court denied U.S. Fire's motion on September 18, 2007, on grounds that U.S. Fire had engaged in "'procedural fencing'" by filing in New York and that this case was a "California case" with "New York [having] no interest in the *Snow* Action." *See* Order [Docket Nos. 25, 27] at 10-11.

In the meantime, LensCrafters moved to dismiss U.S. Fire's New York action on grounds of *forum non conveniens*. The New York court granted LensCrafters' motion, agreeing with this Court (and citing liberally to this Court's Order) that "there is no question that this New York action is clearly a tactical preemptive filing to avoid resolution of this dispute in California" and that "there is absolutely no basis for this declaratory judgment action to have been brought in New York, other than blatant forum shopping to avoid the California federal court . . . ." Jackson Dec., Ex. 1 at p. 2.

LensCrafters' initial complaint alleged a single claim for declaratory relief regarding Insurers' duties to provide coverage for the claims asserted in the *Snow* case. Subsequently, when Insurers refused LensCrafters' request that they approve and fund the *Snow* settlement and thereby breached their duty to settle, LensCrafters sought to amend its complaint to add new claims. In July 2007, LensCrafters sought insurers' consent to file a first amended complaint. U.S. Fire refused to stipulate to the filing of the FAC, thereby forcing LensCrafters to incur the expense of filing a motion for leave for amend. Jackson Dec., ¶ 8. LensCrafters filed that motion on August 6, 2007; U.S. Fire and Westchester opposed the motion. On September 28, 2007, the Court granted LensCrafters' motion for leave to amend the complaint, stating that the motion was timely and the

3

amendment would not prejudice Insurers.  LensCrafters filed the FAC on October 2, 2007.

The FAC added two new, albeit related, claims for relief, which Insurers now move to dismiss.  The Second Claim for Relief alleges breach of the Insurers' duty to indemnify LensCrafters and duty to settle the *Snow* action.  The Second Claim alleges that Insurers have a duty to accept a reasonable settlement; that the settlement reached between LensCrafters and the *Snow* plaintiffs was reasonable in light of LensCrafters' potential liability; that Insurers breached the duty to settle by refusing to accept and fund the *Snow* settlement; and that, as a result of Insurers' breach, LensCrafters has suffered, and continues to suffer, damages.  The Third Claim for Relief alleges tortious breach of the covenant of good faith and fair dealing, also related to (among other things) Insurers' failure to approve and fund the *Snow* settlement.  As we explain below, LensCrafters had sufficiently pleaded both claims.

## III.    THE APPLICABLE LEGAL STANDARDS

### A.    Under Federal Law, The Court Must Deny Insurers' Motions To Dismiss As Long As The Complaint Potentially Sets Forth A Claim For Relief

The legal standards on a motion to dismiss are well established.  To avoid dismissal under the Federal Rules of Civil Procedure, Rule 12(b)(6), a complaint must provide "only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) (quoting Fed. R. Civ. P. 8(a)).  The question is not whether the plaintiff will ultimately prevail, but whether plaintiff is entitled to put forward evidence to support the claim.  *Gilligan*, 108 F.3d at 249.  Under this standard, a complaint should not be dismissed as long as it plausibly states an entitlement to relief and unless there is "no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support [the claim]."  *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1967 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).  For this reason, "it is only the extraordinary case in which dismissal is proper."  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (citing *Corsican Prods. v. Pitchess*, 338 F.2d 441, 442 (9th Cir. 1964)).

On a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  *Wyler Summit P'ship v. TBS, Inc.*,

4

135 F.3d 658, 661 (9th Cir. 1998).  For this reason, factual challenges to a plaintiff's complaint are irrelevant and have no bearing on the sufficiency of a complaint to withstand a 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).[1]

## B.    The Federal Rules Require Only That A Complaint Provide Notice To The Defendant Of The Claim At Issue

It is well established that the federal pleading standard is "notice pleading."  Federal Rule of Civil Procedure, Rule 8(a), states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has explained that "the rule mean[s] what it sa[ys] . . . ."  *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993); *Lee,* 250 F.3d at 679.  As this court recently noted:  "In federal court, '[p]leadings need suffice only to put the opposing party on notice of the claim. . . Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief.'"  *Dion LLC v. Infotek Wireless, Inc.*, Slip Copy, 2007 WL 3231738, at *3 (N.D. Cal. Oct. 30, 2007) (quoting *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004)).  On a breach of contract claim, a plaintiff need not prove the elements of its claim prior to the evidentiary stages of the lawsuit; rather, "a pleading need only provide 'the bare outlines of [a] claim' within the federal notice pleading framework under Federal Rule of Civil Procedure 8(a)."  *Id.* (quoting *Bautista v. Los Angeles County*, 216 F.3d 837, 843 (9th Cir. 2000)).  The pleadings in this case satisfy federal pleading rules and are sufficient to put Insurers on notice of the claims.

## C.    The Duty To Settle Arises From The Covenant Of Good Faith And Fair Dealing Implied In Every Insurance Policy, Including Excess Policies

The gravamen of LensCrafters' newly pleaded claims is Insurers' duty to settle.  An insurer has a duty to accept a reasonable settlement with respect to a claim against its insured.[2]  That duty

---

[1] Westchester goes so far as to assert that its motion to dismiss should be granted with prejudice.  But where a claim is dismissed because it is not ripe for adjudication the dismissal must be without prejudice.  *See Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir 2005) (where claim was not ripe, it "should have been dismissed without prejudice, thereby allowing the plaintiff to reassert this claims, should it become ripe in the future") (citation omitted)).

[2] ["T]he only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the

5

arises from the implied covenant of good faith and fair dealing, which is inherent in every contract of insurance. *See, e.g., Jordan v. Allstate Ins. Co.,* 148 Cal.App.4th 1062, 1071 (2007) ("'A covenant of good faith and fair dealing is implied in every insurance contract'"). "[T]he implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty[.]" *Crisci v. Security Ins. Co. of New Haven, Conn.,* 66 Cal.2d 425, 429 (1967); *see also Hamilton v. Maryland Cas. Co.,* 27 Cal.4th 718, 724 (2002) ("From the covenant of good faith and fair dealing implied by law in all contracts, and from the liability insurer's duty to defend and indemnify covered claims, California courts have derived an implied duty on the part of the insurer to accept reasonable settlement demands on such claims within the policy limits."). A breach of the covenant of good faith and fair dealing "'sounds in both contract and tort.'" *Johansen,* 15 Cal.3d at 18.

Both primary **and excess** insurers have an obligation to accept a reasonable settlement: "Any insurer, whether excess or primary, in conducting settlement negotiations, is subject to an implied duty of good faith and fair dealing which requires it to consider the interests of the insured equally with its own and evaluate settlement proposals as though it alone carried the entire risk of loss." *Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.,* 227 Cal.App.3d 563, 578 (1991). Moreover, where a settlement cannot be achieved without the contribution of an excess insurer, and the excess insurer has been made aware of that fact, and therefore can control the settlement—as in the case of the *Snow* settlement—the excess insurer is "obviously under a duty to exercise good faith toward its insured in considering any offer of compromise within the limits of the policy." *Kelley v. British Commercial Ins. Co.,* 221 Cal.App.2d 554, 565 (1963).

## IV. LENSCRAFTERS HAS SUFFICIENTLY PLEADED A CLAIM FOR BREACH OF CONTRACT REGARDING INSURERS' DUTY TO SETTLE

### A. LensCrafters Has Pleaded Each Necessary Element For A Breach Of Contract Claim

Under California law, all that is required to plead a claim for breach of contract is: "a

---

ultimate judgment is likely to exceed the amount of the settlement offer." *Johansen v. California State Auto. Ass'n Inter-Insurance Bureau,* 15 Cal.3d 9, 16 (1975). "The existence of a coverage dispute, however meritorious the insurer's position, is simply not a proper consideration in deciding whether to accept an offer to settle the claim against the insured." *Archdale v. American Int'l Specialty Lines Ins. Co.,* 154 Cal.App.4th 449, 464-65 (2007).

pleading of (a) the contract; (b) plaintiff's performance or excuse for nonperformance;

(c) defendant's breach; and (d) damage to plaintiff." *See* 4 Witkin, Cal. Procedure (4th ed. 1997)

Pleading, § 476, p. 570 (internal citations omitted).[3]  As described below, LensCrafters' Second

Claim for Relief sufficiently pleads each required element:

**Pleading the contract:**  LensCrafters had pleaded the essential elements of the insurance

contracts at issue.  *See* FAC ¶¶ 20-26 (pleading the material terms of Insurers' policies); ¶ 44

(pleading the covenant of good faith and fair dealing implied in the insurance contracts).

**Pleading plaintiffs' performance of the contract:**  LensCrafters has pleaded its

performance of its duties under the contracts.  *See* FAC, ¶ 15 ("LensCrafters has complied with all

terms and conditions precedent of defendants' policies and is entitled to the benefit of insurance

provided by them.").

**Pleading breach of the contract:**  The FAC sufficiently pleads Insurers' breach:

> LensCrafters has negotiated a reasonable settlement with the plaintiffs in the *Snow* Action, contingent on approval and funding by defendants.  At a mediation on July 26, 2007, LensCrafters asked defendants to accept and fund that settlement to resolve the *Snow* Action and to limit LensCrafters' exposure to a judgment in excess of the settlement amount.  Defendants refused.  Defendants thereby breached their duty to LensCrafters by failing to indemnify LensCrafters and accept the settlement.

FAC, ¶ 44.

**Pleading damages:**  LensCrafters has sufficiently pleaded damages to overcome Insurers'

motions to dismiss.  *See* FAC, ¶ 45 ("As a direct and proximate result of defendants' acts,

LensCrafters has been damaged in an amount that is to be proved at trial and that is in excess of the

jurisdictional requirements of this Court.").  Under the notice pleading standards discussed above,

---

[3] Westchester and U.S. Fire cite exclusively to California law.  Markel includes a truncated choice of law analysis based on California's choice of law rules (Markel Memo. at 5), and then cites to both Ohio and California law.  *Id.* at 6-10.  But Markel never gets past the first step of its choice of law analysis because "[t]he first consideration is whether the laws of the different states conflict."  *Id.* at 5 (citation omitted).  Markel concludes that "Ohio and California law are in substantial agreement . . . ."  *Id.* at 10.  Based on this conclusion, it is unclear why Markel cites Ohio law, because in the absence of a conflict, this Court must apply the law of the forum.  *See Dixon Mobil Homes, Inc. v. Walters*, 48 Cal.App.3d 964, 972 (1975) ("The law of the forum will be displaced only if there is a compelling reason for doing so.") (citation omitted) *overruled on other grounds by Bullis v. Security Pac. Nat'l Bank*, 21 Cal.3d 801, 815 n.18.  Similarly, Markel's reference to New York law is misplaced.  Markel Memo. at 6 n.1.  In any event, as discussed below, the Ohio cases cited by Markel are factually distinguishable and therefore inapposite, on the same basis as the California cases cited by Markel.  *See infra* at footnote 6.

1   this general claim of damages is sufficient.  *See Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358,

2   362 (9th Cir. 1955) (damages "may be pleaded generally").[4]

3         **B.**      **No Special Exemptions To the Pleading Rules Apply To The Duty To Settle**

4         As shown above, LensCrafters has pleaded each necessary element of a cause of action for

5   breach of the duty to settle in its Second Claim for Relief.  Nonetheless, Insurers argue that certain

6   exceptions to the pleading requirements apply to this type of claim and that therefore LensCrafters'

7   claims are not ripe for adjudication.  These arguments fail.

8         U.S. Fire argues that because it is an excess insurer and was not active in the defense of the

9   underlying *Snow* action, it owes no duty of good faith toward its insured with respect to settlement.

10  U.S. Fire Memo. at 8-9.  *Kelley*, however, rejected this exact argument, calling it "untenable."  221

11  Cal.App.2d at 569; *see also Fuller-Austin Insulation Co. v. Highlands Ins. Co.,* 135 Cal.App.4th

12  958, 986 (2006) ("an excess insurer, although not contractually obligated to take an active part in

13  the defense of an insured, still owes its insured a duty of good faith when faced with an offer of

14  settlement that exhausts the underlying policy limits").  Thus, contrary to U.S. Fire's claim, an

15  excess insurer has a duty to accept a reasonable settlement within policy limits.  This is particularly

16  true where a settlement of the underlying case exceeds the limits of the primary policy and cannot

17  be achieved without the participation of the excess insurer.

18        Indeed, *Diamond Heights* pointed out the difficulties that would occur if excess insurers

19  were under no obligation to accept a reasonable settlement and therefore had "the absolute right to

20  veto arbitrarily a reasonable settlement."  227 Cal.App.3d at 580.  First, it would "force the primary

21  insurer to proceed to trial, bearing the full costs of defense."  *Id.*  Second, it would impose a

22  "burden" of continued litigation on the parties to the underlying suit.  *Id.*  Finally, it would

23  "'imperil[] the public and judicial interest in fair and reasonable settlement of lawsuits[.]'"  *Id.* at

24  581 (citing *Valentine v. Aetna Ins. Co.,* 564 F.2d 292, 297 (9th Cir. 1977)).  The *Diamond Heights*

---

26      [4] *Bell Atlantic Corp.*, __ U.S. __, 127 S.Ct. 1955, 1964-64 (2007), a case cited by U.S. Fire,

27  does not hold to the contrary.  *Bell Atlantic*'s discussion about pleading facts was in reference to the conspiracy element required to allege an antitrust claim, not to damages.  *Bell Atlantic*, 127 S. Ct. at

28  1064 and 1065 n.3 (holding that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice).  Such concerns are inapplicable to the damages element of a claim.

court refused to countenance an attempt by an excess insurer to hold the parties hostage to its

unwillingness to settle a case:

> In a case where probable liability far exceeds primary policy limits and invades excess limits, the excess insurer, if given the authority, might object to reasonable settlements simply because all costs of litigation would be borne by the primary insurer, and the amount of potential liability if the case proceeded to trial might not be substantially greater than the amount to be paid in settlement. The excess insurer would get a "free ride" at the expense of the primary insurer to the detriment of all other parties involved.

*Id.* at 582; *see also Fuller-Austin,* 135 Cal.App.4th at 738 ("It would impose an unnecessary burden

on primary insurers and parties to an underlying action to hold that an excess insurer has an

absolute right to withhold its consent to a settlement, while at the same time decline to participate in

the action.").[5] Thus, under California law, Insurers owe LensCrafters a duty to settle.

### C. Insurers Breached Their Duty To Settle When They Refused To Approve And Fund The *Snow* Settlement

Under California law, "[g]enerally speaking, a cause of action for breach of contract accrues

at the time of the breach." *Reichert v. General Ins. Co. of Am.,* 68 Cal.2d 822, 831 (1968). Here,

Insurers' breach occurred at the time they refused to accept and fund the proposed settlement in

*Snow.* At that time, the claims for breach of the duty to settle became ripe.

Again, Insurers try to invoke special pleading rules and argue that a claim for breach of the

duty to settle is not ripe until an excess judgment is entered against the insured. *See* U.S. Fire

Memo. at 10-11; Markel Memo. at 6-11; Westchester Memo. at 10-12. Under some circumstances,

a cause of action for breach of the duty to settle may accrue at a later time. For example, the cause

of action may accrue at the time an excess judgment is entered where the basis of the insured's

damages claim is the amount of the excess judgment—although even this is not settled under

---

[5] Westchester argues at length that LensCrafters must exhaust its primary coverage before Insurers have a duty to settle. Westchester Memo. at 5-7. But an excess insurer's duties under the covenant of good faith and fair dealing arise even before exhaustion of the primary policy may trigger their coverage. *See Schwartz v. State Farm Fire & Cas. Co.,* 88 Cal.App.4th 1329, 1336 (2001) (finding that the trial court had erred when it found that the insurer owed no duty to the insureds under the covenant of good faith and fair dealing until the underlying insurance had been exhausted); *Phoenix Ins. Co. v. United States Fire Ins. Co.,* 189 Cal.App.3d 1511, 1529 (1987) (holding excess insurer liable to contribute to a settlement despite insurer's claim that primary coverage had not been exhausted). In any event, the primary insurers here, Liberty and ERSIC, have agreed to fund the *Snow* settlement up to the limits of their policies.

9

California law.  *Compare J.B. Aguerre, Inc. v. American Guarantee & Liab. Ins. Co.,* 59 Cal.App.4th 6, 13 (1997) (where insurer's bad faith "lies in exposing the insured to a judgment for more money than the insurer is bound to indemnity . . . case law requires a judgment in excess of the policy limits as an element of the claim") (emphasis deleted), *with Camelot by the Bay Condominium Owner's Ass'n, Inc. v. Scottsdale Ins. Co.,* 27 Cal.App.4th 33, 48 (1994) ("[T]here is no explicit requirement for bad faith liability that an excess judgment is actually suffered by the insured, since the reasonableness analysis of settlement decisions is performed in terms of the probability or risk that such a judgment may be forthcoming in the future [citation].  However, the actual excess judgment, if any, is highly relevant in an bad faith damages determination.") *and Larraburu Bros., Inc. v. Royal Indem. Co.*, 604 F.2d 1208, 1214 (9th Cir. 1979) ("to say that a subsequent verdict within policy limits always exonerates an insurer for the consequences of an earlier failure to settle seems to us an unwarranted restriction on the insurer's duty to the insured under California law").

Regardless, where "unreasonable insurer settlement conduct caused harm different from exposure to excess liability," *J.B. Aguerre,* 59 Cal.App.4th at 13, an excess judgment is ***not*** required.  In *Bodenhamer v. Superior Court,* 192 Cal.App.3d 1472 (1987), for example, the Court of Appeal rejected ***as a matter of law*** that an excess judgment was a prerequisite of the insured's bad faith claim where the insured contended that the insurer had delayed in settling claims and thereby caused a loss of good will to the insured's business.  *Id.* at 1479.  Similarly, in *Barney v. Aetna Cas. & Sur. Co.,* 185 Cal.App.3d 966 (1986), the court allowed a claim for the insurer's breach of the covenant of good faith and fair dealing to proceed despite the absence of an excess judgment where the insured alleged that the insurer's settlement of a claim interfered with her ability to seek redress from the tortfeasor.  *Id.* at  977-78 ("The effect upon the insured and the insured's reasonable expectations is the same whether the detriment is in the form of liability in excess of policy limits, as in the more typical cases, or in the form of derogation of a collateral right, as in the instant case."); *cf. Larraburu,* 604 F.2d at 1214 ("It is the unreasonable failure to settle the claim, not simply the failure to pay all of the ultimate judgment, which is the breach of the

1  insurer's duty and causes injury.").[6]

2  Similarly, and for analogous reasons, an excess judgment is not required for a bad faith

3  claim related to the duty to settle where an insurer is willing to contribute some but not all of a

4  demanded settlement.  Under these circumstances, "the insured may conclude a favorable

5  settlement by contributing the deficit itself and, assuming the insurer's breach be proven, recover

6  the payment in a subsequent action for breach of the covenant of good faith and fair dealing."

7  *Hamilton,* 27 Cal.4th at 732 (citing *Isaacson v. California Ins. Guarantee Ass'n,* 44 Cal.3d 775, 793

8  (1988)).

9  In order for Insurers to prevail on their motions to dismiss, they must prove that ***under no***

10  ***circumstances*** can LensCrafters state a claim for breach of Insurers' duty to settle.  They cannot do

11  this.  As currently pleaded, LensCrafters' complaint pleads all the requisite elements and apprises

12  Insurers of the claims against them.  Questions of fact related to the settlement—for example,

13  whether it is reasonable and what other parties are contributing—can be explored through the

14  discovery process.  But it would be inappropriate to dismiss these claims at this stage and thereby

15  prevent LensCrafters from seeking redress for Insurers' failure to settle the *Snow* case.

16      **D.  Insurers' Motion To Dismiss Is Based On Improper Speculation About**
        **LensCrafters' Damages**
17

18  Insurers also argue that LensCrafters has not suffered any damages as a result of Insurers'

19      [6] Insurers rely almost exclusively on cases in which the insurer refused a settlement within
    policy limits, and the insured then settled the case and assigned their claims against the insurer to
20  the injured third party.  *See* U.S. Fire Memo. at 11; Westchester Memo. at 11; Markel Memo. at 8.
    In this situation, the courts were concerned about the possibility of collusion and sham settlements.
21  These courts thus focused on whether a third party may bring a claim based upon a settlement
    rather than a judgment that was in excess of policy limits.  *See, e.g., Hamilton*, 27 Cal.4th at 725;
22  *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 827 (9th Cir. 2003).  Given those factual situations, and
    the underlying policy concern, courts, unsurprisingly, have held that a settlement was insufficient
23  and that a judgment in excess of policy limits was necessary where the damages sought were the
    amount of the excess judgment.  Here, such concerns do not exist and—in any event—would be
24  factual issues that cannot be resolved at the pleading stage.
25      Markel also cites to Ohio cases for the same proposition, *see* Markel at 6-8, but these cases
    likewise involve an assignment of the claim as part of a settlement agreement, with the resulting
26  possibility for collusion and sham settlement.  *See, e.g. Calich v. Allstate Ins. Co.*, 2004 WL
    626143 (Ohio App. Ct. March 31, 2004).  The one Ohio case cited by Markel where potential
27  collusion was not an issue held that an excess judgment ***was not*** a predicate for an insured's bad
    faith action against its insurer.  *Ohio Bar Liab. Ins. Co. v. Hunt*, 152 Ohio App. 3d 224, 232 (2003).
28

1  failure to settle the *Snow* case. Insurers appear to argue that damages for breach of the duty to settle

2  are limited to the amount of any excess judgment rendered against the insured. *See* Westchester

3  Memo. at 11. But an excess judgment is not the only type of damages recoverable on a claim for

4  breach of the covenant of good faith and fair dealing. Under California law, LensCrafters is

5  entitled to be compensated for ***all consequential damages*** that flow from Insurers' breach. *See*

6  *Larraburu,* 604 F.2d at 1215 ("Damages in refusal to settle suits are not confined to the amount of

7  the excess judgment.").

8        As discussed above, an insurer's duty to settle is part of the implied covenant of good faith

9  and fair dealing inherent in every insurance contract. Claims for breach of the duty to settle sound

10  in both contract and tort, and California law allows an insured to recover both contract and tort

11  damages. The measure of damages for breach of contract under California law is "the amount

12  which will compensate the aggrieved party for ***all the detriment*** proximately caused thereby, or

13  which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300

14  (emphasis added). The measure of damages for a tort is "the amount which will compensate for ***all***

15  ***the detriment*** proximately caused thereby, whether it could have been anticipated or not." Cal. Civ.

16  Code § 3333 (emphasis added). Thus, California law explicitly allows parties to collect all

17  consequential damages flowing from either a breach of contract or a tort.

18        In accordance with these general principles, the consequential damages for an insurer's

19  breach of its duty to settle include all amounts for which an insured is ultimately liable on a covered

20  claim. *See Neal v. Farmers Ins. Exchange*, 21 Cal.3d 910, 925 (1978) (for breach of the duty to

21  settle, insured entitled to recover as compensation "damages proximately resulting from the

22  breach—such as consequent economic loss or emotional distress, for example"); *Larraburu,* 604

23  F.2d at 1215 ("An unreasonable refusal to accept a settlement offer causes the insurer to be liable

24  for consequential damages, such as mental suffering or economic loss . . . ."); *Crisci,* 66 Cal.3d at

25  432-44 (allowing insured to recover damages for mental suffering for insurer's breach of duty to

26  settle). The amount of an excess judgment may be one item of damages; but it is not the only

27  damages available when an insurer breaches its duty to settle.

28        Moreover, Insurers have cited no authority that requires an insured to wait and suffer the

12

full extent of possible damages before bringing a claim for relief.  In the duty to defend context, for example, courts have held exactly the opposite.  *See Tan Jay Int'l, Ltd. v. Canadian Indem. Co.*, 198 Cal.App.3d 695, 704-05 (1988) (noting that "an insured does not have to wait until a final judgment has been entered against him by a third party to claim that he has been damaged by the failure of his insurer to honor the duty to defend and indemnify." (citation omitted)).

In its FAC, LensCrafters is not seeking recovery for amounts of a judgment in excess of policy limits, for the obvious reason that LensCrafters has not yet suffered those damages.  But that does not mean that LensCrafters has suffered no damages.  To the contrary, LensCrafters has been damaged by Insurers' breach and continues to suffer monetary losses related to its continued involvement in the *Snow* action.  As LensCrafters has explained elsewhere, and as Insurers well know, these damages include the significant portion of the ongoing *Snow* defense fees that LensCrafters itself is paying.  *See* Jackson Dec., ¶ 9.  Because Insurers were aware of the circumstances leading to LensCrafters' choice of defense counsel and the payment arrangements, it was entirely foreseeable to them that a breach of their duty to settle would damage LensCrafters in this fashion.

Insurers' contention that these ongoing defense expenditures "were voluntarily incurred by LensCrafters" (Markel Memo. at 10; U.S. Fire Memo. at 12) begs the question about the recoverability of such costs and cannot be resolved on this motion, since the allegedly "voluntary" nature of such payments is a factual question.  Indeed, LensCrafters has no obligation to set forth any specific type of damages in the FAC; it has sufficiently alleged damages for purposes of defeating Insurers' motions to dismiss—particularly when the damages allegations are construed in the light most favorable to LensCrafters, as required for this motion.  Insurers can inquire about the nature of LensCrafters' damages during the discovery process.

## V.    LENSCRAFTERS HAS SUFFICIENTLY  PLEADED A CLAIM FOR TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Finally, Insurers argue that LensCrafters' claim for tortious breach of the covenant of good faith and fair dealing fails for the same reasons discussed above.  U.S. Fire specifically argues that a claim for tortious breach of the covenant of good faith and fair dealing cannot be sustained in the

13

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL, U.S. FIRE AND WESTCHESTER, CASE NO. C 07-2853 SBA

1   absence of a ripe breach of contract claim.  *See* U.S. Fire Memo. at 12-13.  As explained above,

2   however, LensCrafters has pleaded a ripe cause of action for breach of contract regarding Insurers'

3   duty to settle.

4        To plead the elements of a cause of action for bad faith breach of the covenant of good faith

5   and fair dealing, LensCrafters is required to allege only that "(1) benefits due under the policy were

6   withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause."

7   *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001) (citing *Love v. Fire Ins. Exch.,* 221

8   Cal.App.3d 1136, 1151 (1990)).

9        LensCrafters has properly pleaded these elements in its Third Claim for Relief.  The Third

10  Claim for Relief alleges that each of the Insurers have acted in various ways to deny LensCrafters

11  the benefits of the policies to which it is entitled.  For example, LensCrafters alleges that each

12  Insurer has "[w]rongfully and unreasonably den[ied] coverage for the *Snow* Action."  FAC, ¶¶

13  48(a), 49(a), 50(a).  LensCrafters further alleges that each Insurer has "[f]ail[ed] to accept a

14  reasonable settlement of the *Snow* Action within policy limits."  *Id.,* ¶¶ 48(c), 49(b), 50(b).

15  LensCrafters also alleges that the conduct of Insurers was unreasonable.  *See Id.,* ¶ 51 ("U.S. Fire,

16  Markel and Westchester . . . acted unreasonably in committing the wrongful acts alleged above for

17  the purpose of withholding from LensCrafters the rights and benefits to which it is entitled under

18  these defendants' policies.").  Thus, LensCrafters has sufficiently pleaded a cause of action for

19  tortious breach of the covenant of good faith and fair dealing.

20  **VI.    CONCLUSION**

21       For the reasons stated above, the Court should deny Insurers' motion to dismiss the Second

22  and Third Claims for Relief.

23  DATED:  January 8, 2008                    Respectfully submitted,

24                                            HELLER EHRMAN LLP

25                                            By  */s/ Richard DeNatale*
                                                Richard DeNatale
26

27                                            Attorneys for Plaintiffs
                                            LENSCRAFTERS, INC. and EYEXAM OF
28                                            CALIFORNIA, INC.

---

14