**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTERCOM SACRAMENTO, LLC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HOME ASSURANCE, CO.<br><br>Defendant.<br>_____/ | No. C 07-06493 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR TO STAY AND DENYING AS MOOT PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION OF ISSUES** |

**INTRODUCTION**

Now before the Court is the Motion to Dismiss Pursuant to F.R.C.P. Rule 12(b)(6), or in the Alternative, Motion to Stay, filed by Defendant American Home Assurance Company ("American Home"). Also before the Court is the Motion for Summary Adjudication of Issues filed by Plaintiffs Entercom Sacramento LLC ("Entercom Sacramento"), Entercom Communications Corp. ("Entercom Communications"), and John Geary ("Geary") (collectively "the Entercom Parties"). Having considered the parties' papers, the record in this case, relevant legal authority, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART American Home's motion and DENIES AS MOOT the Entercom Parties' motion for summary adjudication of issues.

**BACKGROUND**

On December 28, 2007, the Entercom Parties filed the Complaint in this action asserting the following claims for relief against American Home: (1) Breach of Contract; (2) Breach of

1  the Implied Covenant of Good Faith and Fair Dealing; (3) Declaratory Relief; and (4) Injunctive
2  Relief. The case arises out of an insurance dispute between the Entercom Parties and American
3  Home, with respect to coverage for claims asserted against the Entercom Parties in *Strange, et
4  al. v. Entercom Sacramento, LLC, et al.*, Case No. 07AS00377 ("the *Strange* litigation").[1]
5  (Compl. ¶¶ 10, 29-32 & Ex. 2 (*Strange* Complaint).)

Entercom Sacramento is the owner of six radio stations in Sacramento, California, including KDND, FM 107.9 ("The End"). (Compl. ¶ 1.) Entercom Communications is Entercom Sacramento's parent corporation. (*Id.* ¶ 2.) Geary is an employee, and manager, of Entercom Sacramento. (*Id.* ¶ 3.) On January 12, 2007, The End held a contest entitled "Hold Your Wee for a Wii" ("the Contest"), offering a Nintendo Wii video-game system as the grand prize. (*Id.* ¶ 30.) The premise of the Contest was that contestants would drink water, at intervals, over a period of three hours. "Any contestant who voluntarily dropped out or who went to the bathroom would be eliminated." (*Id.*) The winning contestant would be the contestant who did not drop out or go to the bathroom. (*Id.* & Ex. 2 (*Strange* Complaint ¶ 5).)

Approximately eighteen contestants participated in the Contest, including Jennifer Strange ("Ms. Strange"). (Compl., ¶ 30.) Ms. Strange was asked if she wanted to drop out of the contest, in exchange for concert tickets. Ms. Strange agreed. "Some time after driving home, as alleged in the *Strange* lawsuit, Jennifer Strange later apparently died from hyponatremia, a complicated medical condition." (*Id.* ¶ 31.) Ms. Strange's husband and children filed suit against the Entercom Parties on January 25, 2007. (*Id.*) Thereafter, the Entercom Parties notified and tendered the *Strange* lawsuit to Vigilant Insurance Company ("Chubb"), its primary insurer. (*Id.* ¶ 20, 33.) Chubb's primary policy provides coverage with a limit of $1,000,000. (*Id.* ¶ 21.) Chubb accepted the Entercom Parties' tender without a reservation of rights. (*Id.* ¶ 33.)

The Entercom Parties also tendered the *Strange* litigation to American Home. The American Home Policy provides for excess insurance with limits of $25,000,000. (*Id.* ¶¶ 23-24,

---

[1] The *Strange* litigation currently is pending in the Superior Court of the State of California, Sacramento County.

2

1  34 & Ex. 1 (American Home Policy).) That policy also provides that American Home "will pay
2  on behalf of the Insured [the Entercom Parties] those sums in excess of the Retained Limit that
3  the Insured becomes legally obligated to pay as damages by reason of liability imposed by law
4  because of Bodily Injury, ... to which this insurance applies." (Compl., Ex. 1 (American Home
5  Policy, § I.A).) The American Home Policy further provides that it applies "only if ... the
6  Bodily Injury ... is caused by an Occurrence." (*Id.* (American Home Policy, § I.B.1).) An
7  "Occurrence" is defined to mean "as respects Bodily Injury ..., an accident, including
8  continuous or repeated exposure to substantially the same general harmful conditions. All such
9  exposure to substantially the same general harmful conditions will be deemed to arise out of one
10 Occurrence." (*Id.* (American Home Policy, § IV.S.1).) American Home acknowledged the
11 Entercom Parties' tender, pursuant to a reservation of rights. (*Id.* ¶ 35.) It is undisputed that, to
12 date, American Home has neither a duty to defend nor to indemnify the Entercom Parties in the
13 *Strange* litigation. American Home has, however, exercised its right to participate in the
14 defense of the *Strange* litigation.

15 On July 12, 2007, the Stranges' counsel sent the Entercom Parties a settlement demand,
16 which provided that it would expire in thirty days (the "Settlement Demand"). (*Id.* ¶ 40.) The
17 Entercom Parties allege that American Home did not respond before the offer expired. Rather,
18 "by letter of August 17, 2007, American Home responded, suggesting for the first time that
19 American Home was not just reserving rights, but denying coverage." (*Id.* ¶¶ 45-46.)
20 Thereafter, the Entercom Parties "asked American Home to confirm (a) that American Home
21 was disclaiming coverage, and (b) that the Entercom Parties could attempt to take control of
22 settlement negotiations and seek to settle the *Strange* lawsuit on their own." (*Id.* ¶ 49.) The
23 Entercom Parties contend that "American Home responded, advising that American Home had
24 not declined coverage (which appeared contrary to American Home's position of August 17)
25 but was proceeding under a reservation of rights and that American Home would not waive any
26 provision under the policy, including the voluntary payments provision." (*Id.* ¶ 50.) The
27 Entercom Parties further allege that "thereafter, American Home again advised that it disagreed
28 with the Entercom parties' position that Ms. Strange's death was an 'occurrence' ... so as to

3

trigger coverage under the AIG Excess Policy. And, American Home refused to take any action to try and settle the *Strange*" litigation." (*Id.*)[2]

## ANALYSIS

**A.   American Home's Motion to Dismiss or Stay is Granted in Part and Denied in Part.**

    **1.   Applicable Legal Standards.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

While as a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," the Court may consider documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice.[3] *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1124 (9th Cir. 2002) (citation omitted); *see also Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d 1542, 1555 n.19 (9th Cir. 1989).

---

[2]   Although no answer has been filed, in opposition to the Entercom Parties' motion for summary adjudication, American Home submits evidence to suggest that it has not denied coverage and that it continues to participate in the *Strange* litigation and that it continues to work with the Entercom Parties to resolve the *Strange* litigation. (*See* Declaration of Michael Hipwood ("Hipwood Decl.") ¶¶ 1-8; Declaration of Leonard Romeo ("Romeo Decl.") ¶¶ 1-12.)

[3]   The parties have filed requests for judicial notice asking that the Court take judicial notice of the complaint, a motion to dismiss, and an opposition to the motion to dismiss filed in *LensCrafters Inc. v. Liberty Mutual Fire Insurance Co.*, 2008 WL 410243 (N.D. Cal. Feb. 12, 2008). Each of those requests is GRANTED.

4

**2.      The Breach of Contract Claim is Dismissed Without Prejudice.**

At the hearing, the Entercom Parties clarified that they do not contend that American Home has breached a duty to defend or that American Home has breached a duty to indemnify the Entercom Parties. Rather, the Entercom Parties allege that American Home has breached duties related to the Entercom Parties' attempts to settle the *Strange* litigation. American Home asserts that the Entercom Parties' complaint must be dismissed in its entirety because there has been no settlement or judgment in the underlying dispute and, therefore, there is no ripe controversy.

The Entercom Parties first allege that American Home has breached its contract by "[a]sserting that the death of Jennifer Strange was not an 'occurrence' ... and refusing to acknowledge and provide coverage for the Entercom Parties." (Compl., ¶ 55.a.) However, American Home is not obligated to provide coverage until the Entercom Parties incur "sums in excess of the Retained Limit that the [Entercom Parties] become legally obligated to pay as damages by reason of liability imposed by law ... ." (*Id.*, Ex. 1 (American Home Policy § I.A).) Because Entercom has not yet become legally obligated to pay any such sums, any claim for breach of contract based on a refusal to acknowledge and provide coverage, *i.e.* to indemnify the Entercom Parties, is not yet ripe.

The Entercom Parties also allege that American Home breached the contract by failing and refusing to: (1) acknowledge or respond in a timely manner to the Settlement Demand; (2) take actions to negotiate, enter into, and fund a reasonable settlement of the *Strange* litigation; and (3) cooperate with the Entercom Parties in attempting to settle the *Strange* litigation. The American Home Policy provides that "[w]hen we assume the defense of any Suit against the Insured that seeks damages covered by this policy we will: 1. investigate, negotiate and settle the Suit as we deem expedient ... ." (*Id.*, Ex. 1 (American Home Policy § III.C.1).) It is undisputed that American Home has not assumed the defense of the *Strange* litigation. Thus, under the express terms of its policy, American Home has no *express* contractual duties to settle that matter. The Court, therefore, concludes that the Entercom Parties fail to allege facts to state a claim for breach of the express terms of the American Home Policy. American Home's

5

1  motion is GRANTED IN PART on this basis, and the first claim for relief shall be dismissed
2  without prejudice.[4]

### 2. The Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Dismissed Without Prejudice.

An insurer's duty under the implied covenant of good faith and fair dealing arises from the inception of the agreement with its insured. *See Schwartz v. State Farm Fire & Casualty Co.*, 88 Cal. App. 4th 1329, 1335 (2001) ("An excess insurer's implied covenant not to injure an insured's right to receive the benefits of the insurance contract exists from the inception of the agreement with the insured."). An excess insurer's duty to settle arises "from the implied covenant of good faith and fair dealing." *LensCrafters, Inc. v. Liberty Mutual Fire Insurance Co.*, 2008 WL 410243 at *3 (N.D. Cal. Feb. 12, 2008) ("Both primary and excess insurers have an obligation to accept a reasonable settlement."); *see also Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958, 986 (2006) ("... an excess insurer, although not contractually obligated to take an active part in the defense of an insured, still owes its insured a duty of good faith when faced with a settlement that exhausts the underlying policy limits").

In *LensCrafters*, LensCrafters sued their excess carriers for declaratory relief, breach of contract (based on breaches of the implied covenant of good faith and fair dealing), and tortious breach of the implied covenant of good faith and fair dealing. LensCrafters alleged that its excess carriers had breached a duty to settle the underlying litigation by failing and refusing to fund a settlement that LensCrafters had negotiated, which exceeded the primary insurance

---

[4] The Court's ruling on the first claim for relief, is premised upon its understanding that the first claim for relief was intended to address allegations that American Home breached specific express provisions of the American Home Policy, and the Entercom Parties' opposition to the motion to dismiss reinforced the Court's understanding on this point. (*See, e.g.,* Opp. Br. at 12:6 ("the Complaint alleges that American Home breached its express and implied duties") and at 13 n.1; *see also* Compl. ¶ 59.) However, "an action for the insurer's breach of implied covenant of good faith and fair dealing sounds in both contract and tort." *Hamilton v. Maryland Cas. Co.*, 27 Cal. 4th 718, 725 (2002). Moreover, "[i]t is well established that a breach of the implied covenant of good faith is a breach of the contract." *Schwartz v. State Farm Fire & Casualty Co.*, 88 Cal. App. 4th 1329, 1339 (2001). Therefore, if the Entercom Parties' first claim for relief was intended to assert a claim for breach of contract based on breaches of the implied covenant of good faith and fair dealing, the Court's ruling on the second claim for relief supports the Court's conclusion that the first claim for relief should be dismissed without prejudice.

6

1 policies. *LensCrafters*, 2008 WL 410243 at *1. Two of the defendants moved to dismiss on the
2 basis that there had been no judgment or settlement in excess of the underlying insurance
3 policies. Relying on the California Supreme Court's decision in *Hamilton v. Maryland Cas.*
4 *Co.*, 27 Cal. 4th 718, 725 (2002), the district court agreed with the defendants and found that
5 LensCrafter's breach of contract and tortious breach of the implied covenant claims were
6 premature, because "an excess judgement or settlement is prerequisite to a ripe claim for breach
7 of the duty to settle." *LensCrafters*, 2008 WL 410243 at *4; *see also* CACI 2334 (setting forth
8 essential elements of unreasonable refusal to settle as requiring a monetary judgment in excess
9 of policy limits).

10 In this case, the Entercom Parties allege that American Home breached its duty of good
11 faith and fair dealing both by asserting that Ms. Strange's death was not an "occurrence" and by
12 refusing to provide coverage on that basis and by taking actions that violate American Home's
13 implied duties of good faith and fair dealing in connection with the Settlement Demand. The
14 alleged breaches of implied duties include, *inter alia*, failing and refusing to: (1) acknowledge
15 or respond in a timely manner to the Settlement Demand; (2) cooperate with the Entercom
16 Parties in attempting to settle the *Strange* lawsuit; (3) conduct a reasonable investigation of the
17 facts so as to determine that there is in fact coverage for the *Strange* lawsuit. (*See* Compl., ¶¶
18 59.a - 59.g.)[5]

19 The Court finds the reasoning of the *LensCrafters* case applies equally to the claims
20 asserted by the Entercom Parties in this case. Thus, having failed to allege that an excess
21 judgment or settlement has been entered, American Home's motion is GRANTED IN PART on
22 that basis. The second claim for relief is dismissed without prejudice.

23 //
24 //
25 //
26 //

---

[5] Indeed, these allegations are nearly identical to the allegations in the *LensCrafters* Complaint. (*See* Docket No. 66 ( American Home's Request for Judicial Notice Regarding Motion to Dismiss, Ex. 1).)

7

**3. The Declaratory and Injunctive Relief Claims Shall be Dismissed Without Prejudice in Part.**

    **a. The Requests Relating to the Issue of Whether Ms. Strange's Death Is an Occurrence Survive the Motion to Dismiss.**

The Entercom Parties seek a declaration that Ms. Strange's death was an "occurrence," which would lead to the conclusion that *if* they are obligated to pay damages in excess of the Chubb policy limits, whether by judgment or settlement, they would be entitled coverage under the American Home Policy (assuming no exclusions apply). The Entercom Parties allege that American Home has decided that Ms. Strange's death was not an occurrence and has denied coverage. These facts, accepted as true for purposes of the motion to dismiss, demonstrate that there is a "'substantial controversy'" between the parties "'of sufficient immediacy and reality'" over their rights and obligations under the American Home policy. *See Societe de Conditionnement en Aluminium v. Hunter Engineering*, 655 F.2d 938, 943 (9th Cir. 1981 (quoting *Maryland Cas. Co. v. Pacific Oil and Coal Co.*, 312 U.S. 270, 273 (1941)). The Court also concludes that the Entercom Parties have adequately alleged facts to state a claim for injunctive relief on this issue. American Home's motion to dismiss, therefore, is DENIED IN PART on this basis.

    **b. The Claims Regarding the Right to Settle and Waiver of Policy Provisions Are Dismissed.**

The Entercom Parties also seek a declaration (and related injunction) that they can settle the *Strange* litigation without American Home's consent and a declaration (and related injunction) that American Home cannot assert the "no voluntary payment" or "cooperation" provisions of the American Home policy as a basis for reimbursing the Entercom Parties if a settlement is reached that exceeds the primary policy limits. In essence, the Entercom Parties seek rulings that American Home cannot rely on these provisions of the American Home Policy to defend a claim by the Entercom Parties for breach of contract or breach of the implied covenant of good faith and fair dealing, or conversely, in the event that American Home were to assert a claim for breach of contract against them, that they are excused from performance. *See,*

*e.g., Jamestown Builders Inc. v. General Star Indemnity Company*, 77 Cal. App. 4th 341, 348 (1999) ("The no-voluntary-payments provision is superseded by an insurer's antecedent breach of its coverage obligation.  And the burden of proof shifts to the insurer to show that the settlement was not reasonable or was the product of collusion."); *Critz v. Farmers Ins. Group*, 230 Cal. App. 2d 788, 801 (1964), *disapproved on other grounds*, *Crisci v. Security Ins. Co. of New Haven*, 66 Cal. 2d 425 (1967) ("An insurer may be estopped to claim breach of a cooperation clause which has been induced by its own action.").

Because the Court concludes that the first two claims of the Complaint are not yet ripe, the Court finds that this aspect of the Entercom Parties' third and fourth claims for relief are not appropriate for declaratory or injunctive relief. *Cf. Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (concluding that declaratory relief was not warranted where plaintiff essentially sought declaration regarding the validity of a defense that the State might, or might not raise, in a habeas proceeding).  American Home's motion is GRANTED IN PART on this basis, and to the extent the third and fourth claims for relief rest on these allegations, those claims are dismissed without prejudice.

### 4. The Declaratory and Injunctive Relief Claims Regarding the Occurrence Issue Shall Be Stayed.

"Stay of a declaratory relief action to determine coverage is often in order when the coverage question turns on facts to be litigated in the underlying third party action '[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured.'" *David Kleis, Inc. v. Superior Court*, 37 Cal. App. 4th 1035, 1044 (1995) (quoting *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 301 (1993)) (brackets in original).  The focus of the current coverage dispute is over whether American Home has taken the position that Ms. Strange's death was not an "occurrence," which is defined under the American Home policy with respect to bodily injury, as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."  (Compl., Ex. 1, § VII.S.1.)

Although the Entercom Parties contend that there is no logical relation to the facts to be decided in this case and the facts that remain to be litigated in the *Strange* litigation, given the

9

1  nature of the claims in the *Strange* litigation, the Court is not convinced that the coverage issue
2  in this case is "logically unrelated to the issues of consequence in the underlying case." *David*
3  *Kleis*, 37 Cal. App. 4th at 1044. Thus, although American Home relies on cases in which courts
4  have granted stays requested by the insured, rather than the insurer, the Court concludes that a
5  stay is warranted in this case. *See id.* at 1048-49 (noting that if the insurer relied on the
6  definition of occurrence or an intentional act exclusion to preclude coverage, a trial of the
7  insurer's declaratory relief action could not proceed ahead of the underlying action).

## CONCLUSION

For the foregoing reasons, American Home's motion to dismiss, or in the alternative to stay, is GRANTED IN PART AND DENIED IN PART. The third and fourth claims for relief shall be stayed, and the parties shall file joint status reports with the Court every ninety (90) days addressing the status of the *Strange* litigation. If any party believes that it is appropriate to lift the stay based upon changed circumstances, either based on proceedings in the *Strange* litigation or based on further communications between the Entercom Parties and American Home, they may file an appropriate motion with the Court.

In light of these rulings, the Entercom Parties' motion for summary adjudication of issues is DENIED AS MOOT. This ruling, however, is without prejudice to renewing the motion for filing a new motion when the stay in this case is lifted.

**IT IS SO ORDERED.**

Dated: May 8, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE